UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

In re:

Diocese of Winona-Rochester,

       Debtor.

Bankruptcy Case No. 18-33707
Chapter 11 Case

**NOTICE OF HEARING AND VERIFIED MOTION OF THE DIOCESE OF WINONA-ROCHESTER FOR ORDER (1) GRANTING EXPEDITED RELIEF, (2) AUTHORIZING MAINTENANCE OF EXISTING BANK ACCOUNTS AND BUSINESS FORMS, AND (3) WAIVING THE REQUIREMENTS OF SECTION 345(B) OF THE BANKRUPTCY CODE**

TO:    The Office of the United States Trustee and all parties-in-interest as specified in Local Rule 9013-3(a)(2)

    The Diocese of Winona-Rochester (the "Diocese" or the "Debtor") moves the Court for the expedited relief requested below and gives notice of hearing:

**<u>NOTICE OF MOTION</u>**

    1.    The Court will hold a hearing on this motion at **10:00 a.m.** on **December 6, 2018**, before the Honorable Robert J. Kressel in **Courtroom 8 West, U.S. Courthouse, 300 South Fourth Street, Minneapolis, Minnesota 55415**.

    2.    Local Rule 9006-1(c) provides deadlines for response to this motion. However, given the expedited nature of this motion, the Diocese will not object to the filing and service of a response to this motion at any time prior to or at the hearing. **UNLESS A RESPONSE OPPOSING THE MOTION IS TIMELY FILED, THE COURT MAY GRANT THE RELIEF REQUESTED IN THE MOTION WITHOUT A HEARING.**

**<u>JURISDICTION</u>**

    3.    This Court has jurisdiction over this motion under 28 U.S.C. §§ 157 and 1334, Fed. R. Bankr. P. 5005, and Local Rule 1070-1. This matter is a core proceeding under 28 U.S.C.

§ 157(b). Venue is proper in this district under 28 U.S.C. §§ 1408 and 1409. The above-captioned Chapter 11 case was filed on November 30, 2018 (the "Petition Date"), and is now pending in this Court.

4.      This Motion arises under Sections 105(a), 345, 363, 1107 and 1108 of title 11 of the United States Code (the "Bankruptcy Code"). This Motion is filed under Fed. R. Bankr. P. 9013 and 9014, and Local Rules 9013-1 through -3. Expedited relief is requested under Fed. R. Bankr. P. 9006(c) and Local Rule 9006-1(e). Notice of the hearing on this motion is provided under Local Rules 9013-3 and 2002-1(b).

## RELIEF REQUESTED

5.      The Diocese seeks a waiver of the United States Trustee's requirement to close prepetition bank accounts and open new postpetition debtor-in-possession bank accounts. Complying with this requirement would be expensive, time-consuming, disruptive, and would divert the Diocese's focus on restructuring. Maintenance of the Diocese's Prepetition Bank Accounts and Investment Accounts (as defined below), will facilitate the Diocese's transition to Chapter 11 and reorganization. Maintaining the Prepetition Bank Accounts will also avoid delays in paying postpetition debts as they become due. Therefore, the Diocese should be permitted to maintain its Prepetition Bank Accounts, and, if necessary, to open new accounts and close existing accounts in the ordinary course of business.

6.      The Diocese also seeks a waiver of the requirements of Section 345(b) of the Bankruptcy Code on the grounds that the Diocese has taken appropriate steps to protect the safety and integrity of its accounts. All of the Diocese's Prepetition Bank Accounts are held at institutions on the United States Trustee's approved list. As for the Diocese's Investment Accounts, the Diocese will work with the United States Trustee to make any adjustments necessary to the investments in those accounts. The Diocese understands that its request, if

2

granted, will be subject to review by the Court on a motion from the United States Trustee or any other party in interest.

## FACTS SUPPORTING MOTION

7.      On the Petition Date, the Diocese caused its attorneys to file a voluntary petition for Chapter 11 bankruptcy relief under Title 11 of the Bankruptcy Code.   The Diocese is continuing in possession of its property and is operating and managing its business as a debtor in possession, in accordance with §§ 1107 and 1108 of the Bankruptcy Code. No request has been made for the appointment of a trustee or an examiner, and no official committee has been established.

8.      To enable the Diocese to minimize the adverse effects of the commencement of this Chapter 11 case on its operations, the Diocese has requested various types of relief in "first day" motions (collectively, the "First Day Motions"). The First Day Motions seek relief aimed at, among other things, facilitating a smooth transition to Chapter 11, maintaining employee compensation and morale, and preserving and maximizing the property available to satisfy the Diocese's creditors. All of the First Day Motions are vital to the Diocese's reorganization efforts, and expedited approval of the First Day Motions is important to the Diocese's success in this Chapter 11 case.

9.      For a description of the Diocese and its operations, the Diocese respectfully refers the Court and the parties in interest to the Declaration of Reverend Monsignor Thomas P. Melvin in Support of Chapter 11 Petition and First Day Pleadings (the "Melvin Declaration") [ECF Docket No. 4].[1]

---

[1] Capitalized terms not otherwise defined in this motion shall have the meanings set forth in the Melvin Declaration.

Detroit_15701141_9

10.     Generally, a debtor in a Chapter 11 case is required to: (a) close all existing bank accounts and open new debtor in possession bank accounts; (b) establish one debtor-in-possession account for all estate monies required for the payment of taxes, including payroll taxes; (c) maintain a separate debtor-in-possession account for cash collateral; and (d) obtain checks for all debtor in possession accounts bearing the designation "Debtor in Possession," the bankruptcy case number and the type of account. The object of these requirements is to demarcate between prepetition and postpetition claims and payments and protect against the inadvertent payment of prepetition claims by preventing banks from honoring checks drawn before the Petition Date.

11.     Before the Petition Date, the Diocese, in the ordinary course of its business, maintained certain bank demand deposit / transaction accounts for various distinct purposes (collectively, for purposes of this motion, the "Prepetition Bank Accounts"). A schedule identifying the Prepetition Bank Accounts for which the Diocese is seeking relief and the institutions at which they are held is attached as **Exhibit A**. The Prepetition Bank Accounts hold Diocese assets, including both restricted and unrestricted funds, as well as funds held for others. For those funds held by the Diocese that are restricted gifts from donors that may only be used for specific identified purposes, and for those funds held for others (e.g., funds collected from employees and other third parties for health insurance premiums, pension and other benefits, and flexible spending accounts), the Diocese acts as a custodian but has no claim to the assets itself.[2] As such, those funds are not estate assets.  Exhibit A includes a brief description of the purpose of each of the Diocese's Prepetition Bank Accounts. The Diocese pays general operating

---

[2] In addition to the Diocese's own employees, a number of Catholic parishes, schools and other entities within the Diocese which are not debtors in this case (collectively, the "Non-Debtor Catholic Entities") and their respective employees participate in the self-insurance program and the health insurance and other benefit plans administered by the Diocese.

Detroit_15701141_9

expenses, including payroll, out of its Operations account.  The Diocese's other Prepetition Bank Accounts are each used for specific purposes, including payment of workers compensation claims, health benefits, pension obligations and other benefits, and other purposes as more fully described in Exhibit A and the Diocese has separate checks for each account.  The banks at which the Prepetition Bank Accounts are held are FDIC insured.

12.    The Prepetition Bank Accounts and the processes and procedures for tracking the funds in the accounts and for transferring money in and out of the accounts are carefully designed to monitor different categories of funds, including restricted funds and funds held for others. These policies and procedures further allow the Diocese to coordinate transfers between accounts and fund the mission of the Diocese.

13.    The Prepetition Bank Accounts are familiar to the independent certified accountants who audit the Diocese's books and records each year. Changing over to new accounts would add expense and uncertainty to the efforts of the Diocese's accountants and the preparation of audited financial statements.

14.    The Diocese has established detailed procedures for monitoring claims and payments that allow the Diocese to separate and demarcate pre-Petition Date and post-Petition Date payments so that each can be treated according to the Bankruptcy Code and this Court's orders. The Diocese will work closely with the banks at which the Prepetition Bank Accounts are maintained to ensure that the banks honor only those payments that the Diocese is authorized to make.

15.    The Diocese will take steps to stop payment on all pre-Petition Date debts paid by checks which have not cleared the Diocese's Prepetition Bank Accounts, except to the extent this Court authorizes certain pre-Petition Date payments by specific order on other First Day Motions.  By separate motion, the Diocese has requested that the Court authorize the honoring of

Detroit_15701141_9

all pre-Petition Date outstanding checks.  As a matter of course, the Diocese will continue to maintain records regarding all transfers of cash so that all transactions can be ascertained, recorded and traced.   The United States Trustee's concerns of creating a clear line of demarcation between pre-Petition Date and post-Petition Date obligations can be satisfied here without the necessity of closing the Prepetition Bank Accounts. Subject to prohibition against honoring pre-Petition Date checks without specific authorization of this Court, the Diocese requests that the Prepetition Bank Accounts be deemed debtor in possession accounts and that the Diocese be authorized to maintain and continue the use of these accounts in the same manner and with the same account numbers, styles and forms as those employed pre-Petition Date.

16.     If the relief requested herein is granted, and except as disclosed above, the Diocese will not pay, and each of the banks where the Prepetition Bank Accounts are maintained will be directed not to pay, any checks drawn on the Prepetition Bank Accounts pre- Petition Date other than as specifically authorized by this Court.

17.     All of the Diocese's Prepetition Bank Accounts are maintained at Wells Fargo Bank, except for one account at Merchants Bank that has a balance of less than $15,000 which is used by Bishop Quinn for charitable purposes.  Both Wells Fargo Bank and Merchants Bank are on the United States Trustee's list of authorized depositories for Chapter 11 cases in Minnesota. The Diocese requests that the requirements of Section 345(b) of the Bankruptcy Code be waived in this case given the nature of the institutions used by the Diocese to hold its Prepetition Bank Accounts and the steps taken by the Diocese to protect the safety and integrity of the Prepetition Bank Accounts.

18.     The Diocese also requests that it be able to continue to use its business forms, which are used in the ordinary course of business, without alteration or change. By virtue of the nature and scope of the businesses in which the Diocese is engaged and the number of suppliers

6

with whom the Diocese transacts business, it is important for the Diocese to continue using the business forms without alteration or change. To prevent unnecessary delay, confusion, and accrual of further expense to its estates, the Diocese requests that the Court waive any requirements of adding a "Debtor-in-Possession" legend or number to the business forms other than checks. The Diocese will begin using the "Debtor- in-Possession" stamp or legend for all checks as soon as possible. The continued use of existing business forms employed in the ordinary course of a debtor's prepetition business has been approved in a number of other bankruptcy cases.

19.     The Diocese also holds or manages certain accounts that are used for investing (the "Investment Accounts"). The Investment Accounts relating to this motion are described on **Exhibit B**.  Several of these accounts hold donor restricted funds which are not estate assets. The investments held at Christian Brothers Investment Services are invested in diversified portfolios or marketable equity and fixed income securities, as well as limited marketability investments. The Diocese initiated discussions with the United States Trustee prior to the Petition Date with respect to these accounts.  These discussions are continuing and the Diocese anticipates making certain changes in those accounts promptly following filing, where applicable, to meet United States Trustee and Section 345(b) requirements.  The Diocese seeks only temporary relief with regard to the Investment Accounts at this time to allow the Diocese sufficient time to make those adjustments.  The Diocese has requested that it not be required to withdraw or reinvest funds in the Investment Accounts that are endowed, quasi-endowed or restricted (i.e., the accounts ending in 1001 and 1004 on Exhibit B).  The Diocese understands that the United States Trustee has no objection to this request.

## **EXPEDITED RELIEF**

Detroit_15701141_9

20.     The Diocese requests expedited relief in this motion and requests an expedited hearing. Granting this motion on an expedited basis will minimize the disruptions to the Diocese's accounting system and allow the Diocese to continue to make and generate timely accounting information. The Diocese submits that it has complied with the requirements of Local Rule 9006-l(e) by providing the notice specified below.

21.     In accordance with Local Rule 9013-2, this motion is verified and accompanied by a memorandum of law, proposed order, and proof of service.

22.     Under Local rule 9013-2(c), the Diocese gives notice that it may, if necessary, call Andrew D. Brannon, Chief Finance and Administrative Officer of the Diocese of Winona-Rochester, whose business address is 55 West Sanborn Street, P.O. Box 588, Winona, Minnesota 55987, to testify regarding the facts set out in this motion.

## SERVICE OF MOTION

23.     Notice of this motion has been given to the parties identified on, and in the manner set forth in, the separately-filed certificate of service relating to the First Day Motions. This includes the parties specified in Local Rule 9013-3, all financial institutions with an interest in the accounts referenced in the First Day Motions, the attorneys representing alleged survivors of abuse, and all attorneys who have identified themselves as counsel for the parishes or other Non- Debtor Catholic Entities. In light of the nature of the relief requested, the Diocese submits that no further notice is required.

Detroit_15701141_9

## REQUEST FOR RELIEF

WHEREFORE, the Diocese requests entry of an Order:

(a)      Granting expedited relief;

(b)      Authorizing the Diocese in the reasonable exercise of its business judgment, to designate, maintain, and continue to use, with the same account numbers, all of the active demand deposit and transaction bank accounts in existence on the Petition Date, including without limitation the Prepetition Bank Accounts;

(c)      Authorizing the Diocese, notwithstanding the requirements of 11 U.S.C. § 345(b), to continue using its bank accounts, including the Prepetition Bank Accounts;

(d)      Authorizing the Diocese to temporarily maintain its Investment Accounts and to enter into a process of withdrawing its current investments in those accounts, where applicable, and to reinvest the proceeds thereof in an orderly and expeditious manner into obligations issued by the U.S. Government or fully guaranteed as to principal and interest by the U.S. Government within 30 days of the date of this order, as may be specified and approved by the United States Trustee, and ordering that the Diocese is not required to withdraw or reinvest funds in the Investment Accounts that are endowed, quasi-endowed or restricted;

(e)      Authorizing the Diocese to use, in their present form, checks and other documents related to the Prepetition Bank Accounts and authorizing the Diocese to treat the Prepetition Bank Accounts for all purposes as accounts of the Diocese as "debtor in possession", and to use a stamp on the checks to indicate debtor in possession status;

(f)      Authorizing and directing each and every bank at which any Prepetition Bank Account is maintained to continue to service and administer such Prepetition Bank Account as an account of the Diocese as debtor in possession without interruption and in the usual and ordinary course;

(g)      Authorizing and directing each and every bank at which any Prepetition Bank Account is maintained to receive, process, honor, and pay any and all checks and drafts drawn on the Prepetition Bank Account after the Petition Date by the holders or makers thereof; provided, however, that such banks may not honor and pay any check drawn or used by the Diocese before the Petition Date for which the Diocese has placed a stop payment in writing;

(h)      Authorizing each and every bank at which any Prepetition Bank Account is maintained to debit the Diocese's accounts in the ordinary course of business without need for further order of this court for: (i) all checks,

Detroit_15701141_9

items, and other payment orders drawn on the Diocese's accounts which are cashed at the respective banks' counters or exchanged for cashier's checks by the payees thereof prior to the banks' receipt of notice of the filing of the petition; (ii) all checks, automated clearing house entries, and other items deposited or credited to one of the Prepetition Bank Accounts prior to the filing of the petition which have been dishonored, reversed, or returned unpaid for any reason, together with any fees and costs in connection therewith, to the same extent the Diocese was responsible for such items prior to filing of the petition; and (iii) all undisputed prepetition amounts outstanding as of the date hereof, if any, owed to such banks as service charges for the maintenance of the Prepetition Bank Accounts;

(i)     Authorizing each and every bank at which any Prepetition Bank Account is maintained to rely on the representations of the Diocese with respect to whether any check, item, or other payment order drawn or issued by the Diocese prior to filing of the petition should be honored in accordance with this or any other order of this court, and such banks shall not have any liability to any party for relying on such representations by the Diocese as provided for herein; and

(j)     Granting such other relief as the Court deems proper.

Dated: November 30, 2018

RESTOVICH BRAUN & ASSOCIATES

/e/Christopher W. Coon
Thomas R. Braun (#350631)
Christopher W. Coon (#390083)
117 East Center Street
Rochester, MN 55904
(507) 216-8652
thomas@restovichlaw.com
christopher@restovichlaw.com

10

BODMAN PLC

/e/Robert J. Diehl, Jr.
Robert J. Diehl, Jr. (P31264)
Brian R. Trumbauer (P57747)
Jaimee L. Witten (P70068)
6th Floor at Ford Field
1901 St. Antoine Street
Detroit, Michigan 48226
(313) 259-7777
rdiehl@bodmanlaw.com
btrumbauer@bodmanlaw.com
jwitten@bodmanlaw.com
*(Pro Hac Vice admissions pending)*

*Proposed Attorneys for the Diocese of Winona-Rochester*

11

## VERIFICATION

I, Andrew D. Brannon, am the Chief Finance and Administrative Officer of the Diocese of Winona-Rochester.   Based upon my personal information and belief, I do declare under penalty of perjury that the facts contained in preceding Notice of Hearing and Verified Motion of the Diocese of Winona-Rochester for Order (1) Granting Expedited Relief, (2) Authorizing Maintenance of Existing Bank Accounts and Business Forms, and (3) Waiving the Requirements of Section 345(b) of the Bankruptcy Code are true and correct to the best of my knowledge, information, and belief.

Dated: _____November 30_____, 2018      _Andrew D. Brannon_____
                                              Andrew D. Brannon

### EXHIBIT A

## Demand Deposit/Transaction Accounts

| Bank Name | Account Title per Bank Statement | Account title per DOW Financials | Account # | Description |
|---|---|---|---|---|
| Wells Fargo | Diocese of Winona-Rochester | Checking – Wells Fargo | xxxxx1041 | Operations |
| Wells Fargo | Diocese of Winona-Rochester | Checking – Wells Fargo – Workers' Compensation | xxxxx9393 | Funds held for others – workers' compensation[1] |
| Wells Fargo | Diocese of Winona-Rochester | Checking – Wells Fargo - Benefits | xxxxx8950 | Funds held for others – employee benefits[2] |
| Wells Fargo | Diocese of Winona-Rochester | Checking – Wells Fargo - Special Collections | xxxxx3182 | Funds held for others – special collections[3] |
| Wells Fargo | Diocese of Winona-Rochester | Checking – Wells Fargo - Self Insurance | xxxxx9164 | Funds held for others – self insurance[4] |
| Wells Fargo | Diocese of Winona-Rochester | Checking – Wells Fargo - Restricted Funds | xxxxx0158 | Funds held for others – Catholic Ministries Appeal restricted funds[5] |
| Wells Fargo | Diocese of Winona-Rochester | Checking – Wells Fargo - Restricted Funds | xxxxx0166 | Funds held for others – other restricted funds[6] |
| Merchants Bank | Diocese of Winona, John M. Quinn | Checking – Merchants Bank – Bishop Quinn | xxxxx1346 | Bishop's discretionary charitable account |

---

[1] Account is used to deposit premiums collected from the Diocese and participating Non-Debtor Catholic Entities and to pay workers' compensation claims and expenses as more fully described in the Diocese's separate motion for an order authorizing maintenance of protected self-insurance program.

[2] Account is used for the Diocese's and the Non-Debtor Catholic Entities' share of (as well as employee contributions toward) various benefits, including health and dental insurance premiums, pension and other retirement plan contributions, and flexible health benefits.

[3] Account is used for collections from parishes for special appeals, such as hurricane and other natural disaster relief efforts, missionary work in impoverished areas, and other special campaigns coordinated by the United States Conference of Catholic Bishops or similar organizations.

[4] Account is used to deposit premiums collected from the Diocese and participating Non-Debtor Catholic Entities and to pay property and liability insurance claims and expenses as more fully described in the Diocese's separate motion for an order authorizing maintenance of protected self-insurance program. The workers' compensation portion of the premiums is initially deposited in this account and then transferred to the separate workers' compensation account xxxxx9393.

[5] Account is used for funds received from the Catholic Foundation of Southern Minnesota to be used for the Catholic Ministries Appeal. Funds in this account are disbursed to pay for particular ministries, such as Family Life, Youth Ministry, Vocations and the Office of Lay Formation. Funds in this account are sometimes transferred to the Operations account and then disbursed to pay expenses associated with their specific identified purpose.

[6] Account is used for other funds that are restricted gifts from donors that may only be used for specific identified purposes. Funds in this account are sometimes transferred to the Operations account and then disbursed to pay expenses associated with their specific identified purpose.

# EXHIBIT B

# Investment Accounts

| Institution Name | Account Title per Statement | Account title per DOW Financials | Account # | Description |
|---|---|---|---|---|
| Merchants Bank | Diocese of Winona | CD Merchants Bank – Minn WC | xxxxx0375 | CD posted as security f/b/o State of Minnesota Department of Commerce (for worker's comp.) |
| Christian Brothers Investment Services | Diocese of Winona-Rochester, General Account | CBIS Stocks and Bonds | xxxxx1001 | Endowed (i.e., permanently restricted), quasi-endowed (i.e. temporarily restricted) and restricted funds |
| Christian Brothers Investment Services | Diocese of Winona-McHugo Endowment Fund | CBIS McHugo Portfolio | xxxxx1004 | Permanently restricted McHugo Endowment Fund |
| Christian Brothers Investment Services | Diocese of Winona-Rochester, General Account | CBIS Stocks and Bonds | xxxxx1005 | Unrestricted funds |

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| In re: | Bankruptcy Case No. 18-33707 |
| | Chapter 11 Case |
| Diocese of Winona-Rochester, | |
| Debtor. | |

**MEMORANDUM IN SUPPORT OF VERIFIED MOTION OF THE DIOCESE OF WINONA-ROCHESTER FOR ORDER (1) GRANTING EXPEDITED RELIEF, (2) AUTHORIZING MAINTENANCE OF EXISTING BANK ACCOUNTS AND BUSINESS FORMS AND (3) WAIVING THE REQUIREMENTS OF SECTION 345(B) OF THE BANKRUPTCY CODE**

## INTRODUCTION

The Diocese submits this memorandum of law in support of its accompanying verified motion for the relief set forth herein. Terms defined in the verified motion shall have the same meaning in this memorandum.

## FACTS

The facts relevant to this memorandum are set forth in detail in the verified motion. As indicated in the verified motion, the Diocese has an immediate need to maintain its Prepetition Bank Accounts and continue to use its prepetition business forms in order to ensure an orderly transition to Chapter 11.

## DISCUSSION

**I.     DEBTOR'S REQUEST FOR EXPEDITED RELIEF SHOULD BE GRANTED**

The Diocese's request for expedited relief should be granted. Cause exists to reduce notice of the hearing on this motion. The relief sought herein is designed to provide for the Diocese's smooth transition to Chapter 11 and to minimize disruptions to the Diocese's multi-faceted operations. Moreover, if the Court does not grant expedited relief, the Diocese will be forced into an untenable situation: either maintain the same bank accounts and disregard the

Detroit_15701141_9

United States Trustee's operating guidelines or open new bank accounts rendering this motion moot. Given the critical need to continue the operations and ministry of the Diocese without greater upheaval, this Court should reduce the notice of hearing on this motion.

## II.   THE DIOCESE SHOULD BE AUTHORIZED TO MAINTAIN ITS EXISTING PREPETITION BANK ACCOUNTS AND BUSINESS FORMS

### A.   The Diocese Should Be Granted Authority To Maintain The Prepetition Bank Accounts

Bankruptcy courts have the authority to waive the strict enforcement of bank account closing requirements otherwise imposed under the guidelines adopted by the Office of the United States Trustee. Such relief is routinely granted, especially in large Chapter 11 cases. This Court has regularly waived the requirement that a debtor-in-possession close its bank accounts and replaced it with alternative procedures providing the same protections. See, e.g., In re Antioch Company, LLC, et al., Case No. 13-41898 (Bankruptcy D. Minn. April 19, 2013); In re Duke and King Acquisition Corp., Case No. 10-38652, ECF No. 45 (Bankr. D. Minn. Dec. 9, 2010); In re Intrepid U.S.A. Inc., Case No. 04-40416 (Bankr. D. Minn. Mar. 24, 2004). The same relief has been routinely granted in diocesan bankruptcy cases in Minnesota and elsewhere around the country. See, e.g., In re Archdiocese of Saint Paul and Minneapolis, Case No. 15-30125 (Bankr. D. Minn. Jan. 20, 2015), ECF No. 52; In re Diocese of Duluth, Case No. 15-50792 (Bankr. D. Minn. Dec. 10, 2015), ECF No. 18; In re Diocese of New Ulm, Case No. 17-30601 (Bankr. D. Minn. Mar. 7, 2017), ECF No. 28; In re Diocese of Milwaukee, Case No. 11-20059-svk, ECF No. 27 (Bankr. E.D. Wis. Jan. 7, 2011) (authorizing, but not directing, the debtor to continue use of bank accounts and business forms). In general, bankruptcy courts often waive new bank account requirements and permit debtors to maintain their existing bank accounts and cash management systems, treating such a request as a relatively "simple matter". See, e.g., In re Baldwin-United Corp., 79 B.R. 321, 327 (Bankr. S.D. Ohio 1987).

2

As set forth in the motion, continued use of the Prepetition Bank Accounts and existing business forms is important for the Diocese's transition to Chapter 11 and the maintenance of relationships with Schools, Parish Corporations, and various other Non-Debtor Catholic Entities that operate in the Region served by the Diocese. Requiring the Diocese to open new bank accounts at this early juncture would be administratively difficult, expensive, and disruptive to operations. Consequently, maintaining the Prepetition Bank Accounts is also in the best interests of all creditors and parties-in-interest.

If this motion is granted, the Diocese will not pay, and will direct its banks not to pay, any prepetition checks, except as allowed by order of this Court.

**B.      Cause Exists for Waiving the Investment and Deposit Guidelines of Section 345**

The Diocese believes that its use of the Prepetition Bank Accounts substantially conforms with the approved practices identified in Section 345 of the Bankruptcy Code and that all deposits in the Prepetition Bank Accounts are safe, prudent, and with institutions approved by the United States Trustee's Office. Nonetheless, out of an abundance of caution, to the extent that such deposits do not conform with the approved practices identified in section 345 of the Bankruptcy Code, the Diocese seeks a waiver of such requirements.

Section 345(a) of the Bankruptcy Code authorizes deposits or investments of money in a manner that will "yield the maximum reasonable net return on such money, taking into account the safety of such deposit or investment." 11 U.S.C. § 345(a). For deposits or investments that are not "insured or guaranteed by the United States or by a department, agency or instrumentality of the United States or backed by the full faith and credit of the United States," section 345(b) of the Bankruptcy Code provides that the estate must require from the entity with which the money is deposited or invested a bond in favor of the United States secured by the undertaking of an adequate corporate surety. See id. § 345(b).

3

A court may, however, relieve a debtor-in-possession of the restrictions imposed by section 345(b) of the Bankruptcy Code for "cause." See In re Service Merchandise Co., Inc., 240 B.R. 894, 896-97 (Bankr. M.D. Tenn. 1999) (finding that cause existed to waive requirements of section 345(b) for large sophisticated debtors that had complex cash management system and internal investment monitoring mechanisms, and that failure to waive such requirements would "needlessly handcuff" the debtors' reorganization efforts). To the extent necessary, the Diocese believes that "cause" exists to waive the investment and deposit restrictions under section 345(b) of the Bankruptcy Code. Similar relief has been granted in other diocese bankruptcy cases. See, e.g., In re Archdiocese of Saint Paul and Minneapolis, Case No. 15-30125 (Bankr. D. Minn. Jan. 20, 2015), ECF No. 52; In re Diocese of Duluth, Case No. 15-50792 (Bankr. D. Minn. Dec. 10, 2015), ECF No. 18; In re Catholic Diocese of Wilmington, Inc., Case No. 09-13560-CSS, ECF No. 42 (Bankr. D. Del. Oct. 22, 2009) (order granting waiver of deposit guidelines of section 345); In re Diocese of Davenport, Case No. 06-02229-lmj11, ECF No. 22 (Bankr. S.D. Iowa Oct. 16, 2006) (temporarily waiving section 345 requirements); see also In re Roman Catholic Church of the Diocese of Tucson, Case No. 4:04-bk-04721-BMW, ECF No. 101 (Bankr. D. Ariz. Oct. 25, 2004) (order holding that language waiving section 345(b) will be dropped from order because "it is not needed").

The Prepetition Bank Accounts are maintained at Wells Fargo Bank and Merchants Bank. See **Exhibit A** to the motion. The Diocese has been informed that each of these institutions is on the approved list kept by the United States Trustee's Office for depository institutions housing debtor in possession accounts. As such, the Diocese submits that cause exists to waive the requirements of section 345(b) as to those Prepetition Bank Accounts.

With respect to the Investment Accounts, the Diocese will work with the United States Trustee to make any necessary adjustments to its investment practices and accounts to arrive at a

Detroit_15701141_9

mutually-agreeable resolution for where and how to invest the funds in those accounts. In the case that the Diocese may be required to move investments into different approved vehicles, the Diocese respectfully requests temporary relief from the section 345(b) requirements to allow sufficient time to make such changes in a prudent manner. The Diocese seeks temporary relief of 30 days following the Petition Date to make any such required changes.

### C.   The Diocese Should Be Granted Authority To Continue Its Accounting Policies And Practices

The Diocese also seeks authority to continue its accounting policies and practices. The existing practices and policies allow the Diocese to accurately determine the amount and location of all of the funds it holds, and whether those funds are the Diocese's or are held for others. The policies further allow the Diocese to coordinate transfers between accounts, fund the mission of the Diocese, and account for restricted funds and funds held for others. The Diocese will work closely with the banks at which the Prepetition Bank Accounts are maintained to ensure that the banks honor only those payments that the Diocese is authorized to make.

The policies and practices are also familiar to the Diocese's employees as well as the public auditors. Preserving continuity will help in the reorganization process and will avoid distractions and mistakes that could be associated with substantial revisions in practices.

### D.   The Diocese Should Be Granted Authority To Use Existing Business Forms

Allowing the Diocese to continue to use its business forms (including checks, letterhead, purchase orders, and invoices) will minimize expense to the estate. With regard to correspondence, business forms and similar items, parties doing business with the Diocese should likely be aware of its status as debtor-in-possession as a result of the size and notoriety of this Chapter 11 case, general press coverage and the publication notice for this Chapter 11 case. The Diocese further requests that it be authorized to use its existing stock of checks, manually modified to note the Diocese's status as debtor-in-possession. With respect to checks,

5

replacement of the Diocese's check stock could take several weeks. It is unrealistic to expect that the Diocese postpone purchases or defer payments pending the stationer's delivery of check stock. A requirement that the Diocese change its checks and business forms would be expensive and burdensome to the estate and disruptive to the reorganization.

Other courts in diocesan bankruptcy cases have permitted continued use of checks and business forms with the debtor-in-possession designation manually applied to the checks and forms. See, e.g., In re The Archdiocese of Saint Paul and Minneapolis, Case No. 15-30125, ECF No. 52 (Bankr. D. Minn. Jan. 21, 2015); In re Catholic Diocese of Wilmington, Inc., Case No. 09-13560-CSS, ECF No. 42 (Bankr. D. Del. Oct. 22, 2009) (order granting continued use of business forms); In re Diocese of Davenport, Case No. 06-02229-lmj11, ECF No. 22 (Bankr. S.D. Iowa Oct. 16, 2006) (same); In re Roman Catholic Church of the Diocese of Tucson, Case No. 4:04-bk-04721-BMW, ECF No. 117 (Bankr. D. Ariz. Nov. 5, 2004) (same). This court has similarly allowed such practices in other large Chapter 11 cases in this district. See, e.g., In re The Antioch Company, LLC, Case No. 13-41898, ECF No. 51 (Bankr. D. Minn. Apr. 19, 2013) (order granting continued use of business forms).

Detroit_15701141_9

## CONCLUSION

For the foregoing reasons, this Court should grant the motion.

Dated: November 30, 2018

RESTOVICH BRAUN & ASSOCIATES

/e/Christopher W. Coon
Thomas R. Braun (#350631)
Christopher W. Coon (#390083)
117 East Center Street
Rochester, MN 55904
(507) 216-8652
thomas@restovichlaw.com
christopher@restovichlaw.com

BODMAN PLC

/e/Robert J. Diehl, Jr.
Robert J. Diehl, Jr. (P31264)
Brian R. Trumbauer (P57747)
Jaimee L. Witten (P70068)
6th Floor at Ford Field
1901 St. Antoine Street
Detroit, Michigan 48226
(313) 259-7777
rdiehl@bodmanlaw.com
btrumbauer@bodmanlaw.com
jwitten@bodmanlaw.com
*(Pro Hac Vice admissions pending)*

*Proposed Attorneys for the Diocese of
Winona-Rochester*

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

In re:                                          Bankruptcy Case No. 18-33707
                                                Chapter 11 Case
Diocese of Winona-Rochester,

         Debtor.

**ORDER GRANTING EXPEDITED RELIEF, AND (1) AUTHORIZING
MAINTENANCE OF EXISTING BANK ACCOUNTS AND BUSINESS FORMS
AND (2) WAIVING THE REQUIREMENTS OF 11 U.S.C. § 345(B)**

The case came before the court on the motion of the Diocese of Winona-Rochester for an

order granting expedited relief, authorizing maintenance of existing bank accounts and business

forms, and waiving the requirements of section 345(b) of the Bankruptcy Code. Appearances

were noted on the record.

Based on the motion, the arguments of counsel, and all of the files, records and

proceedings,

**IT IS ORDERED:**

1.      The Diocese's motion for expedited relief is granted.

2.      The Diocese is authorized, in the reasonable exercise of its business judgment, to

designate, maintain and continue to use, with the same account numbers, all the active demand

deposit and transaction bank accounts in existence on the petition date, including without

limitation those identified on Exhibit A to the motion (the "Prepetition Bank Accounts").

3.      Notwithstanding the requirements of 11 U.S.C. § 345(b), the Diocese will be

allowed to continue using its bank accounts, including the Prepetition Bank Accounts.

4.      To the extent that such accounts are subject to 11 U.S.C. § 345(b), the Diocese is

authorized to temporarily maintain the investment accounts identified on Exhibit B to the motion

(the "Investment Accounts") and to enter into a process of withdrawing its current investments in

those accounts, where applicable, and to reinvest the proceeds thereof in an orderly and expeditious manner into obligations issued by the U.S. Government or fully guaranteed as to principal and interest by the U.S. Government within 30 days of the date of this order, as may be specified and approved by the United States Trustee.  The Diocese is not required to withdraw or reinvest funds in the Investment Accounts that are endowed, quasi-endowed or restricted.

5.     The Diocese is authorized to use, in its present form, checks and other documents related to the Prepetition Bank Accounts. The Diocese is authorized to treat the Prepetition Bank Accounts for all purposes as accounts of the Diocese as "debtor in possession."  The Diocese may use a stamp on the checks to indicate debtor in possession status.

6.     Each and every bank at which any Prepetition Bank Account is maintained is authorized and directed to continue to service and administer such Prepetition Bank Account as an account of the Diocese as debtor in possession without interruption and in the usual and ordinary course.

7.     Each and every bank at which any Prepetition Bank Account is maintained is authorized and directed to receive, process, honor, and pay any and all checks and drafts drawn on the Prepetition Bank Account after the petition date by the holders or makers thereof; provided, however, that such banks may not honor and pay any check drawn or used by the Diocese before the petition date for which the Diocese has placed a stop payment in writing.

8.     Each and every bank at which any Prepetition Bank Account is maintained is further authorized to debit the Diocese's accounts in the ordinary course of business without need for further order of this court for: (i) all checks, items, and other payment orders drawn on the Diocese's accounts which are cashed that the respective banks' counters or exchanged for cashier's checks by the payees thereof prior to the banks' receipt of notice of the filing of the petition; (ii) all checks, automated clearing house entries, and other items deposited or credited to

2

Detroit_15701141_9

one of the Prepetition Bank Accounts prior to the filing of the petition which have been dishonored, reversed, or returned unpaid for any reason, together with any fees and costs in connection therewith, to the same extent the Diocese was responsible for such items prior to filing of the petition; and (iii) all undisputed prepetition amounts outstanding as of the date hereof, if any, owed to such banks as service charges for the maintenance of the Prepetition Bank Accounts.

9.      Each and every bank at which any Prepetition Bank Account is maintained may rely on the representations of the Diocese with respect to whether any check, item, or other payment order drawn or issued by the Diocese prior to filing of the petition should be honored under this or any other order of this court, and such banks shall not have any liability to any party for relying on such representations by the Diocese as provided for herein.

10.     Notwithstanding the applicability of Bankruptcy Rule 6004(h), or any other applicable rule, the terms and conditions of this order shall be immediately effective and enforceable upon its entry.

Dated:

_____
United States Bankruptcy Judge