# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MINNESOTA

In re:

Diocese of Winona-Rochester,

          Debtor.

Case No. 18-33707

Chapter 11

## JOINT CHAPTER 11 PLAN OF REORGANIZATION OF
## THE DIOCESE OF WINONA-ROCHESTER

**RESTOVICH BRAUN & ASSOCIATES** Thomas R. Braun (#350631)
Christopher W. Coon (#390083)
117 East Center Street
Rochester, MN 55904
(507) 216-8652
thomas@restovichlaw.com
christopher@restovichlaw.com

**BODMAN PLC**
Robert J. Diehl, Jr. (P31264)
Brian R. Trumbauer (P57747)
Jaimee L. Witten (P70068)
6th Floor at Ford Field
1901 St. Antoine Street
Detroit, Michigan 48226
(313) 259-7777
rdiehl@bodmanlaw.com
btrumbauer@bodmanlaw.com
jwitten@bodmanlaw.com

**ATTORNEYS FOR THE DIOCESE OF
WINONA-ROCHESTER**

**STINSON, LLP**
Robert T. Kugler (#194116)
Edwin H. Caldie (#388930)
Andrew J. Glasnovich (#398366)
50 South Sixth Street, Suite 2600
Minneapolis, MN 55402
robert.kugler@stinson.com
ed.caldie@stinson.com
drew.glasnovich@stinson.com

Telephone: 612-335-1500
Facsimile: 612-335-1657

**ATTORNEYS FOR THE OFFICIAL COMMITTEE
OF UNSECURED CREDITORS FOR THE
DIOCESE OF WINONA-ROCHESTER**

Dated:  February 9, 2021

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................................ V

ARTICLE I DEFINITIONS AND INTERPRETATION ............................................................. 1
    **1.1**     **DEFINED TERMS** ................................................................................ 1
    **1.2**     **INTERPRETATION** ......................................................................... 13
    **1.3**     **TIME PERIODS** ............................................................................... 14
    **1.4**     **EXHIBITS AND SCHEDULES** ...................................................... 15

ARTICLE II TREATMENT OF UNCLASSIFIED CLAIMS ..................................................... 15
    **2.1**     **ADMINISTRATIVE CLAIMS** ...................................................... 15
    **2.2**     **STATUTORY FEES** ........................................................................ 16
    **2.3**     **PRIORITY TAX CLAIMS** ............................................................. 16

ARTICLE III CLASSIFICATION OF CLAIMS ....................................................................... 17
    **3.1**     **SUMMARY** ...................................................................................... 17
    **3.2**     **CLASSIFICATION AND VOTING** ............................................... 17

ARTICLE IV TREATMENT OF CLASSIFIED CLAIMS ......................................................... 17
    **4.1**     **PRIORITY CLAIMS (CLASS 1)** ................................................... 17
    **4.2**     **GOVERNMENTAL UNIT CLAIMS (CLASS 2)** ........................... 18
    **4.3**     **TORT CLAIMS OTHER THAN IMPAIRED UNKNOWN TORT CLAIMS (CLASS 3)** ........................................................................ 18
    **4.4**     **UNIMPAIRED UNKNOWN TORT CLAIMS (CLASS 4A)** ........... 20
    **4.5**     **IMPAIRED UNKNOWN TORT CLAIMS (CLASS 4B)** ................ 20
    **4.6**     **GENERAL UNSECURED CLAIMS (CLASS 5)** ............................ 22
    **4.7**     **UNIMPAIRED ABUSE RELATED CONTINGENT CLAIMS (CLASS 6A)** ...................................................................................... 22
    **4.8**     **IMPAIRED ABUSE RELATED CONTINGENT CLAIMS (CLASS 6B)**     22
    **4.9**     **MINNESOTA DEPARTMENT OF COMMERCE (CLASS 7)** ...... 23
    **4.10**     **COMMUNITY BANK OF MANKATO (CLASS 8)** ........................ 23
    **4.11**     **NON-ABUSE RELATED CONTINGENT CLAIMS (CLASS 9)** .... 23

ARTICLE V MEANS OF IMPLEMENTATION OF THE PLAN ............................................. 24
    **5.1**     **TRUST FORMATION AND FUNDING** .......................................... 24
    **5.2**     **PAYMENT OF PROFESSIONAL FEES** ......................................... 25
    **5.3**     **PAYMENTS EFFECTIVE UPON TENDER** ................................... 26

ARTICLE VI TRUST ................................................................................................................. 26
    **6.1**     **ESTABLISHMENT OF TRUST** ...................................................... 26
    **6.2**     **PURPOSE, FORMATION AND ASSETS** ....................................... 26
    **6.3**     **ALLOCATIONS WITHIN AND DISTRIBUTIONS AND PAYMENTS FROM THE TRUST** ................................................... 26
    **6.4**     **TAX MATTERS** ............................................................................... 27

- i -

**6.5**     **APPOINTMENT OF THE TRUSTEE**................................................27
**6.6**     **RIGHTS AND RESPONSIBILITIES OF TRUSTEE**................28
**6.7**     **TRANSFERRED INSURANCE INTERESTS**..............................29
**6.8**     **SPECIAL DISTRIBUTION CONDITIONS**....................................32
**6.9**     **INVESTMENT POWERS; PERMITTED CASH EXPENDITURES**..........33
**6.10**    **REGISTRY OF BENEFICIAL INTERESTS**...................................33
**6.11**    **NON-TRANSFERABILITY OF INTERESTS**................................33
**6.12**    **TERMINATION**....................................................................................33
**6.13**    **IMMUNITY; LIABILITY; INDEMNIFICATION**.........................33
**6.14**    **TREATMENT OF TORT CLAIMS**...............................................34

ARTICLE VII SETTLING INSURERS.....................................................................41
**7.1**     **INSURANCE SETTLEMENT AGREEMENTS**..............................41
**7.2**     **SALE FREE AND CLEAR OF INTERESTS OF SETTLING
            INSURER POLICIES**.........................................................................41
**7.3**     **RESOLUTION OF CLAIMS INVOLVING SETTLING INSURERS**..........41
**7.4**     **THE SETTLING INSURERS' PAYMENTS**...................................42
**7.5**     **JUDGMENT REDUCTION**...............................................................42
**7.6**     **FURTHER ASSURANCES; NON-MATERIAL MODIFICATIONS**..........43
**7.7**     **INDEMNIFICATION OBLIGATIONS**...........................................43
**7.8**     **WAIVER/ CONSENT/ FEES**............................................................43
**7.9**     **DEBTOR WAIVER AND RELEASE OF CLAIMS**.......................44
**7.10**    **SUPPLEMENTAL SETTLING INSURER INJUNCTION**...........44

ARTICLE VIII.....................................................................................................45

NON-SETTLING INSURERS.................................................................................45
**8.1**     **PRESERVATION OF RIGHTS AND OBLIGATIONS**.................45
**8.2**     **ESTIMATIONS/ASSESSMENTS ARE NOT BINDING**...............46
**8.3**     **RIGHTS UNDER INSURANCE SETTLEMENT AGREEMENTS**..........47
**8.4**     **THE PLAN IS NEUTRAL AS TO NON-SETTLING INSURER
            POLICIES**............................................................................................47
**8.5**     **THE DIOCESE'S OBLIGATIONS SURVIVE**..............................47
**8.6**     **TRUST POWERS WITH RESPECT TO TORT CLAIMS AND
            NON-SETTLING INSURERS**.............................................................48

ARTICLE IX INSURANCE POLICIES...................................................................48
**9.1**     **CONTINUATION OF INSURANCE POLICIES**............................48
**9.2**     **THE PLAN IS NEUTRAL AS TO NON-IMPLICATED
            INSURANCE POLICIES**...................................................................49

ARTICLE X PROCEDURES FOR GENERAL CLAIMS ADMINISTRATION.......................49
**10.1**    **RESERVATION OF RIGHTS TO OBJECT TO NON-TORT
            CLAIMS**..............................................................................................49
**10.2**    **OBJECTIONS TO NON-TORT CLAIMS**......................................49
**10.3**    **DETERMINATION OF CLAIMS**...................................................50
**10.4**    **NO DISTRIBUTIONS PENDING ALLOWANCE**........................50

- ii -

**10.5    CLAIM ESTIMATION** ........................................................................50

ARTICLE XI DISTRIBUTIONS UNDER THE PLAN ........................................51
**11.1    PAYMENT DATE** ...............................................................................51
**11.2    UNDELIVERABLE DISTRIBUTIONS** ...........................................51
**11.3    SETOFFS** ...........................................................................................51
**11.4    NO INTEREST ON CLAIMS** ...........................................................51
**11.5    WITHHOLDING TAXES** ..................................................................51

ARTICLE XII EFFECTIVENESS OF THE PLAN ..............................................52
**12.1    CONDITIONS TO OCCURRENCE OF EFFECTIVE DATE** ......52
**12.2    NOTICE OF EFFECTIVE DATE** .....................................................52
**12.3    EFFECT OF NON-OCCURRENCE OF CONDITIONS** ................52

ARTICLE XIII EFFECTS OF CONFIRMATION ................................................52
**13.1    DISSOLUTION OF UCC** ..................................................................52
**13.2    DISCHARGE AND INJUNCTION** ...................................................53
**13.3    CHANNELING INJUNCTION** .........................................................53
**13.4    EXCULPATION; LIMITATION OF LIABILITY** ...........................55
**13.5    TIMING** .............................................................................................55
**13.6    NO BAR ON CERTAIN CLAIMS** ...................................................55

ARTICLE XIV INCORPORATION OF CHILD PROTECTION PROTOCOLS ......55
**14.1    CHILD PROTECTION PROTOCOLS** ............................................55

ARTICLE XV THE REORGANIZED DEBTOR.....................................................55
**15.1    CONTINUED CORPORATE EXISTENCE** .....................................55
**15.2    VESTING OF ASSETS** ......................................................................56
**15.3    IDENTITY OF OFFICERS OF REORGANIZED DEBTOR** .........56
**15.4    FURTHER AUTHORIZATION** ........................................................56

ARTICLE XVI MISCELLANEOUS PROVISIONS.................................................56
**16.1    RETENTION OF JURISDICTION** ..................................................56
**16.2    ASSUMPTION OF EXECUTORY CONTRACTS**............................58
**16.3    INDEMNIFICATION OF MEMBERS, MANAGERS, OFFICERS,
        AND EMPLOYEES** ............................................................................58
**16.4    DEFENSE AND INDEMNITY FOR COVERED NON-TORT
        CLAIMS** .............................................................................................59
**16.5    RESERVATION OF RIGHTS** ...........................................................59
**16.6    NON-APPEALABLE ORDER** ...........................................................59
**16.7    AMENDMENTS AND MODIFICATIONS** .......................................59
**16.8    U.S. TRUSTEE REPORTS** ................................................................60
**16.9    NO WAIVER** ......................................................................................60
**16.10  TAX EXEMPTION** ............................................................................60
**16.11  NON-SEVERABILITY** .......................................................................60
**16.12  REVOCATION** ...................................................................................60
**16.13  CONTROLLING DOCUMENTS** ......................................................60

- iii -

**16.14  GOVERNING LAW** ..........................................................................................61
**16.15  NOTICES** ....................................................................................................61
**16.16  FILING OF ADDITIONAL DOCUMENTS** ..............................................61
**16.17  POWERS OF OFFICERS** ............................................................................62
**16.18  DIRECTION TO A PARTY** .........................................................................62
**16.19  SUCCESSORS AND ASSIGNS** ...................................................................62
**16.20  CERTAIN ACTIONS** ...................................................................................62
**16.21  FINAL DECREE** ..........................................................................................62
**16.22  PLAN AS SETTLEMENT COMMUNICATION** ......................................62
**16.23  OTHER RIGHTS** .........................................................................................62

ARTICLE XVII BANKRUPTCY RULE 9019 REQUEST ........................................63

ARTICLE XVIII CONFIRMATION REQUEST ......................................................63

## EXHIBITS AND SCHEDULES

EXHIBIT A:      UNKNOWN CLAIMS REPRESENTATIVE'S REPORT AND
                RECOMMENDATION
EXHIBIT B:      NON-SETTLING INSURERS
EXHIBIT C:      NON-SETTLING INSURER POLICIES
EXHIBIT D:      TRUST AGREEMENT AND TRUST DISTRIBUTION PROTOCOL
EXHIBIT E:      TORT CLAIM RELEASE
EXHIBIT F:      IMPAIRED UNKNOWN TORT CLAIM RELEASE
EXHIBIT G:      INADVERTENTLY TITLED REAL PROPERTY
EXHIBIT H:      LIST OF CURRENT PARISHES
EXHIBIT I:      KNOWN DIOCESE ENTITY INSURANCE POLICIES
EXHIBIT J:      OFFICERS AND DIRECTORS OF REORGANIZED DEBTOR
EXHIBIT K:      CHILD PROTECTION PROTOCOLS
EXHIBIT K(1):   APPENDIX A
EXHIBIT L:      OTHER INSURED ENTITIES
EXHIBIT M:      LIST OF CATHOLIC ENTITIES
EXHIBIT N:      SETTLING INSURER POLICIES

CORE/3515029.0002/164850489.1
Bodman_17458003_4

# INTRODUCTION

The Official Committee of Unsecured Creditors and the Diocese of Winona-Rochester, the debtor and debtor in possession in the above-captioned Chapter 11 case, propose this Joint Chapter 11 Plan of Reorganization (the "Plan") pursuant to the provisions of the Bankruptcy Code.

All creditors are encouraged to consult the disclosure statement for the Chapter 11 Plan of Reorganization (the "Disclosure Statement"), before voting to accept or reject this Plan. Among other information, the Disclosure Statement contains discussions of the Diocese of Winona-Rochester, events prior to and during this Chapter 11 case, and a summary and analysis of the Plan. No solicitation materials, other than the Disclosure Statement, have been authorized by the Bankruptcy Court for use in soliciting acceptances or rejections of the Plan.

CORE/3515029.0002/164850489.1
Bodman_17458003_4

**ARTICLE I**
**DEFINITIONS AND INTERPRETATION**

    **1.1**    **DEFINED TERMS.** For the purposes of the Plan, except as expressly provided, all capitalized terms not otherwise defined herein have the meanings ascribed to them below:

1.    "Abuse" means (i) any actual or alleged act of sexual conduct, misconduct, abuse, or molestation, including actual or alleged "sexual abuse" as that phrase is defined in Minnesota Statutes Section 541.073(1); (ii) indecent assault or battery, rape, lascivious behavior, undue familiarity, pedophilia, ephebophilia, or sexually-related physical, psychological, or emotional harm; (iii) contacts or interactions of a sexual nature; or (iv) assault, battery, corporal punishment, or other act of physical, psychological, or emotional abuse, humiliation, or intimidation.

2.    "Administrative Claim" means a Claim for costs and expenses of administration that is allowable and entitled to priority under Sections 503, 507(a)(2), or 507(b) of the Bankruptcy Code, including any post-petition tax Claims, any actual and necessary expenses of preserving the Estate, any actual and necessary expenses of operating the business of the Debtor, all Professional Claims, and any fees or charges assessed against the Estate under 28 U.S.C. § 1930.

3.    "Allowed Professional Claim" means a Professional Claim for which the Bankruptcy Court has entered an Order, which has become a Non-Appealable Order allowing the relevant Fee Application.

4.    "Approval Order" means an order of the Bankruptcy Court approving one or more Insurance Settlement Agreements.

5.    "Assets" of the Diocese or the Estate means, collectively, any and all property of the Diocese or the Estate, respectively, of every kind and character, wherever located, whether real or personal, tangible or intangible, and specifically including cash (including the residual balance of any reserves established under the Plan, but not the Trust) and Causes of Action.

6.    "Ballot" means the ballot, the form of which has been approved by the Bankruptcy Court, accompanying the disclosure statement provided to each holder of a Claim entitled to vote to accept or reject the Plan.

7.    "Bankruptcy Code" means the Bankruptcy Reform Act of 1978, as amended and codified in Title 11 of the United States Code.

8.    "Bankruptcy Court" means the United States Bankruptcy Court for the District of Minnesota.

9.    "Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure as currently promulgated.

CORE/3515029.0002/164850489.1
Bodman_17458003_4

10.      "Canon Law" means the Code of Canon Law of the Roman Catholic Church, as codified in 1983 and as may hereafter be amended, and all binding universal and particular laws of the Roman Catholic Church.

11.      "Catholic Entities" means the Diocesan Parishes, the Catholic schools, and the Catholic cemeteries located within the Diocese, including those listed on Exhibit M, and other non-Diocesan Catholic entities located within the Diocese that are listed on Exhibit M.

12.      "Cause of Action" or "Causes of Action" means, except as provided otherwise in the Plan, the Confirmation Order, or any document, instrument, release, or other agreement entered into in connection with the Plan, all Claims, actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, controversies, variances, trespasses, damages, judgments, third-party Claims, counterclaims, and cross claims of the Diocese or its Estate, the Committees, or the Trust (as successor to the Diocese or its Estate), including an action that is or may be pending on the Effective Date or instituted by the Reorganized Debtor after the Effective Date against any Person based on law or equity (in each case, in respect of a Cause of Action that arose before the Effective Date), including under the Bankruptcy Code, whether direct, indirect, derivative, or otherwise and whether asserted or unasserted, known or unknown, any action brought pursuant to Sections 522, 541–45, 547–51, and 553 of the Bankruptcy Code; provided, however, that any affirmative defense or cross-claim asserted with respect to a Claim shall not be deemed a Cause of Action to the extent that it seeks to disallow or reduce, or is offset against, such Claim.

13.      "Channeled Claim(s)" means any released Tort Claim, Contribution Claim, Medicare Claim, Extra-Contractual Claim, Class 6B Claim or other released Claim against any of the Protected Parties or the Settling Insurers to the extent such released Claim arises from the same injury or damages asserted as a Tort Claim against the Protected Parties or Settling Insurers, that directly or indirectly arises out of, relates to, or is in connection with such Tort Claim or other Claim covered by the Channeling Injunction and Supplemental Settling Insurer Injunction in Articles VII and XIII; provided, however, that Channeled Claims shall not include any (i) Claim against an individual who perpetrated an act of Abuse that forms the basis of a Tort Claim with respect to that Tort Claim; (ii) Claim against any religious order, diocese or archdiocese (other than the Diocese itself); (iii) Class 4A Claim, or (iv) Class 6A Claim.

14.      "Channeling Injunction" means the injunction imposed pursuant to Section 13.3 of the Plan.

15.      "Child Protection Protocols" means the document entitled "Child Protection Protocols" and the related "Appendix A" included as Exhibits K and K(1).

- 2 -

16.     "Claim" means any past, present or (to the extent it arises prior to the Effective Date) future Claim, demand, action, request, cause of action, suit, proceeding or liability of any kind or nature whatsoever, whether at law or equity, known or unknown, actual or alleged, asserted or not asserted, suspected or not suspected, anticipated or unanticipated, accrued or not accrued, fixed or contingent, which has been or may be asserted by or on behalf of any Person, whether seeking damages (including compensatory, punitive or exemplary damages) or equitable, mandatory, injunctive, or any other type of relief, including cross-claims, counterclaims, third-party Claims, suits, lawsuits, administrative proceedings, notices of liability or potential liability, arbitrations, actions, rights, causes of action or orders, and any other Claim within the definition of "Claim" in Section 101(5) of the Bankruptcy Code.

17.     "Claims Filing Date" means April 8, 2019.

18.     "Confirmation Date" means the date on which the Bankruptcy Court enters the Confirmation Order.

19.     "Confirmation Order" means the order entered by the Bankruptcy Court confirming the Plan pursuant to Section 1129 of the Bankruptcy Code which becomes a Non-Appealable Order.

20.     "Contribution Claim" means any Claim, most commonly expressed in terms of contribution, indemnity, equitable indemnity, subrogation, or equitable subrogation, or reimbursement, or any other indirect or derivative recovery, by a Non-Settling Insurer against a Settling Insurer, for the payment of money where such Non-Settling Insurer contends that it has paid more than its equitable or proportionate share of a Tort Claim asserted against any Protected Party.

21.     "Covered Non-Tort Claim" means any Claim, other than Tort Claims, Unimpaired Unknown Tort Claims, Contribution Claims, Indirect Claims, or Medicare Claims, for which the Diocese, a Catholic Entity or Other Insured Entity would otherwise have coverage under a Settling Insurer Policy but for the sale, transfer, or release by the Debtor, Catholic Entity, or Other Insured Entity of such Settling Insurer Policy in connection with an Insurance Settlement Agreement.

22.     "Debtor" means the Diocese.

23.     "Diocesan Parishes" means all past and present parishes of or in the Diocese and includes all the parishes identified on Exhibit H.

24.     "Diocese" and "Diocesan" refers to the Diocese of Winona-Rochester, which is the diocesan corporation formed pursuant to Minnesota Statutes Section 315.16 that is the public juridic person of the Roman Catholic Diocese of Winona-Rochester, as now constituted or as it may have been

constituted, and the Estate (pursuant to Section 541 of the Bankruptcy Code).

25.     "Diocese Entity Insurance Policies" mean the insurance policies that are listed on Exhibit I.

26.     "Disputed" when used with respect to a Claim against the Diocese or property of the Diocese, means a Claim:  (i) designated as disputed, contingent, or unliquidated in the Debtor's Schedules; (ii) which is the subject of an objection, appeal, or motion to estimate that has been or will be timely filed by a party in interest and which objection, appeal, or motion has not been determined by a Non-Appealable Order; or (iii) which during the period prior to the deadline fixed by the Plan or the Bankruptcy Court for objecting to such Claim, is in excess of the amount scheduled as other than disputed, unliquidated, or contingent. The processes for handling "Disputed Claims" do not apply to Class 3 or Class 4B Claims.  The process for Class 3 and 4B Claims will be addressed in the Trust Agreement.  In the event that any part of a Claim is Disputed, such Claim in its entirety shall be deemed to constitute a Disputed Claim for purposes of distribution under the Plan unless the Debtor or the Reorganized Debtor, as applicable, and the holder thereof agree otherwise. To the extent the term "Disputed" is used in the Plan with respect to a specified class of Claims or an unclassified category of Claims (i.e., "Disputed [class designation/unclassified Claim category] Claim"), the resulting phrase shall mean a Disputed Claim of the specified class or unclassified category of Claims.

27.     "Distribution Plan Claimants" are Tort Claimants who elect to receive a distribution in the amount determined by the Tort Claims Reviewer pursuant to the Trust Distribution Plan and who have released all their Tort Claims against the Settling Insurers and the Protected Parties as set forth in Exhibit E or Exhibit F, as applicable.

28.      "Distribution Plan Claims" are Tort Claims asserted by Distribution Plan Claimants.

29.     "District Court" means the United States District Court for the District of Minnesota.

30.     "Effective Date" means the date upon which the conditions in Article XII of the Plan have been satisfied.

31.     "Estate" means the estate created in this Chapter 11 case pursuant to Section 541 of the Bankruptcy Code.

32.     "Exculpated Parties" means collectively, (i) the Diocese, the Estate, and the UCC; (ii) the respective officers, directors, employees, members, attorneys, financial advisors, members of subcommittees of the board of directors, volunteers, and members of consultative bodies and councils formed under

- 4 -

Canon Law of the persons identified in the preceding clause including with respect to their service or participation in an outside board on which they serve at the request of the Diocese or the Bishop, in their capacity as such; (iii) the Settling Insurers with respect to their Settling Insurer Policies; and (iv) professionals of a Person identified in the preceding clause (i) through (iii).

33. "Extra-Contractual Claims" means any Claim against the Settling Insurers seeking any type of relief in connection with any alleged obligations of the Settling Insurers to the Protected Parties before the Effective Date (including compensatory, exemplary, or punitive damages, or attorneys' fees, interest, costs or any other type of relief) alleging any of the following: bad faith; failure to provide insurance coverage under any Settling Insurer Policy; failure or refusal to compromise and settle any Claim insured under any Settling Insurer Policy; failure to act in good faith; violation of any covenant or duty of good faith and fair dealing; violation of any state insurance codes, state surplus lines statutes or similar codes or statutes; violation of any unfair claims practices act or similar statute, regulation or code; any type of misconduct or any other act or omission of any type for which the claimant seeks relief other than coverage or benefits under an insurance policy. The term "Extra-Contractual Claims" includes all Claims relating to the Settling Insurers' (i) handling of any request for insurance coverage for any Claim under the Settling Insurer Policies; (ii) conduct relating to the negotiation of the Insurance Settlement Agreements; and (iii) conduct relating to the settlement of any coverage Claim concerning the Settling Insurer Policies.

34. "Fee Application" means an application filed with the Bankruptcy Court in accordance with the Bankruptcy Code and Bankruptcy Rules for payment of a Professional Claim.

35. "Final Decree" means the decree contemplated under Bankruptcy Rule 3022.

36. "Impaired Unknown Tort Claim" means any Tort Claim that arose prior to July 1, 2002 that was neither filed, nor deemed filed by the Claims Filing Date, and is held by (i) an individual who has a Tort Claim that was barred by the statute of limitations as of the Claims Filing Date but is no longer barred by the applicable statute of limitations for any reason as of the Effective Date, including the enactment of legislation that revises previously time-barred Tort Claims; (ii) an individual who was incapable of knowing of the existence of his or her Tort Claim as of the Effective Date for any reason, including memory repression or memory suppression; or (iii) any other individual or class of individuals the Unknown Tort Claims Representative can identify that would have a Tort Claim on or prior to the Effective Date.

CORE/3515029.0002/164850489.1
Bodman_17458003_4

37.     "Impaired Unknown Tort Claimant" means the holder of an Impaired Unknown Tort Claim, the estate of a deceased individual who held an Impaired Unknown Tort Claim, or the personal executor or personal representative of the estate of a deceased individual who held an Impaired Unknown Tort Claim, as the case may be.

38.     "Impaired Unknown Tort Claim Reserve Fund" means the reserve established for the benefit of Impaired Unknown Tort Claimants pursuant to Section 6.3(b) of the Plan.

39.      "Inadvertently Titled Real Property" means that certain real property in which Debtor inadvertently holds bare legal title with no equitable or possessory interest, which is described on the attached Exhibit G.

40.      "Indirect Claim" means a Claim asserted by any Person that is not a Non-Settling Insurer for contribution, indemnity, equitable indemnity, subrogation, or equitable subrogation, or reimbursement, or any other indirect or derivative recovery, on account of or with respect to any Tort Claim against any Protected Party.

41.     "Insurance Coverage Adversary Proceeding" means the Adversary Proceeding against United States Fire Insurance Company and others, removed by the Diocese from the State of Minnesota, County of Winona, Third Judicial District Court, to Minnesota Federal District Court and referred to the Bankruptcy Court as Adv. Proceeding No. 18-03094.

42.     "Insurance Litigation" means any actual or potential litigation as to any recoveries from any Non-Settling Insurer or any rights under any Non-Settling Insurer Policies.

43.     "Insurance Settlement Agreements" means the settlement agreements among the Diocese and the other Protected Parties and the Settling Insurers, which are included as Exhibit(s) _____ to the Disclosure Statement.

44.     "Insurance Settlement Amount" means the funds payable by a Settling Insurer pursuant to an Insurance Settlement Agreement.

45.     "Interest" means all liens, Claims, encumbrances, interests, and other rights of any nature, whether at law or in equity, including any rights of contribution, indemnity, defense, subrogation, or similar relief.

46.     "Lien" means any mortgage, lien, pledge, security interest or other charge or encumbrance or security device of any kind in, upon, or affecting any Asset of the Debtor as contemplated by Section 101(37) of the Bankruptcy Code.

47.     "Litigation Claimants" are Tort Claimants who elect to litigate their Tort Claims after the Effective Date for purposes of determining the Non-

- 6 -

Settling Insurers' liability, if any, for such Tort Claims, including those Tort Claimants alleging Abuse during any period from July 1, 1967 to July 1, 1978.

48.     "Litigation Claims" are Tort Claims asserted by Litigation Claimants.

49.     "MAO" means Medicare Advantage Organizations under parts C & D of the MMSEA.

50.     "Medicare Claims" means any and all Claims relating to Tort Claims by the Centers for Medicare & Medicaid Services of the United States Department of Health and Human Services and/or any other agent or successor Person charged with responsibility for monitoring, assessing, or receiving reports made under MMSEA and pursuing Claims under MSPA, including Claims for reimbursement of payments made to Tort Claimants who recover or receive any distribution from the Trust and Claims relating to reporting obligations.

51.     "Medicare Trust Fund" means a U.S. Treasury-held trust fund account from which Medicare is funded or from which Medicare disbursements are paid, including the Hospital Insurance Trust Fund and the Supplementary Medical Insurance (SMI) Trust Fund.

52.     "MMSEA" means § 111 of the Medicare, Medicaid, and SCHIP Extension Act of 2007 (P.L.110-173), which imposes reporting obligations on those Persons with payment obligations under the MSPA.

53.     "MSPA" means 42 U.S.C. § 1395y et seq., or any other similar statute or regulation, and any related rules, regulations, or guidance issued in connection therewith or amendments thereto.

54.     "Non-Appealable Order" means an order, judgment, or other decree (including any modification or amendment thereof) that remains in effect and is final and has not been reversed, withdrawn, vacated, or stayed, and as to which the time to appeal or seek review, rehearing, or writ of certiorari has expired and as to which no appeal, petition for certiorari, or other proceedings for reargument or rehearing shall then be pending or as to which, if such an appeal, writ of certiorari, review, reargument, or rehearing has been timely sought, then no order, judgment, or other decree is a Non-Appealable Order until (a) such appeal, certiorari, review, reargument, or rehearing has been denied or dismissed and the time to take any further appeal or petition for certiorari, review, reargument, or rehearing has expired; or (b) such order has been affirmed by the highest court to or in which such order was appealed, reviewed, reargued, or reheard, or that granted certiorari, and the time to take any further appeal or petition for certiorari, review, reargument, or rehearing has expired; provided, however, that the possibility that a motion under Rule 59 or Rule 60 of the Federal

- 7 -

Rules of Civil Procedure or any analogous rule under the Bankruptcy Rules may be filed with respect to such order shall not cause such order not to be a "Non-Appealable Order."

55.      "Non-Implicated Insurer" means Catholic Mutual Relief Society of America.

56.      "Non-Implicated Insurance Policy(ies")) means any known or unknown contracts, binders, certificates, or policies of insurance that the Non-Implicated Insurer issued, subscribed in any interest in, or has underwritten any risk in, in effect on or before the Effective Date, and that were issued to, allegedly issued to, or for the benefit of, or that otherwise actually, allegedly, or potentially insure, the Diocese, any Diocesan Parish or any other Catholic Entity or any of their predecessors in interest, successors, or assigns, and that actually, allegedly or could potentially afford coverage with respect to any Unimpaired Unknown Tort Claim, but as to which there are no Unimpaired Unknown Tort Claims for the applicable coverage periods that have been asserted as of the date of this Plan.

57.      "Non-Settling Insurer Policy(ies)" means any known or unknown contracts, binders, certificates, or policies of insurance that any Non-Settling Insurer issued, subscribed in any interest in, or has underwritten any risk in, in effect on or before the Effective Date, and that were issued to, allegedly issued to, or for the benefit of, or that otherwise actually, allegedly, or potentially insure, the Diocese or any Diocesan Parish or any of their predecessors in interest, successors, or assigns, and that actually, allegedly or could potentially afford coverage with respect to any Tort Claim.

58.      "Non-Settling Insurer(s)" means any and all Persons (including all their respective affiliates, predecessors, successors and assigns) that are not "Settling Insurers" and that have, or are alleged to have, extended insurance coverage for Tort Claims to the Diocese or any Diocesan Parish, or have issued, subscribed in any interest in, assumed any liability for, or underwritten any risk in, any Non-Settling Insurer Policy. The "Non-Settling Insurers" include, but are not limited to, those Persons listed on Exhibit B.

59.      "Other Insured Entity(ies)" means those Persons listed on Exhibit L that are insured or covered or allegedly insured or covered under a Settling Insurer Policy that was issued or allegedly issued to the Diocese, but only with respect to any Tort Claim based on alleged Abuse that occurred during the effective periods of that Settling Insurer Policy and that would be covered or alleged to be covered under that Settling Insurer Policy but for an Insurance Settlement Agreement. Notwithstanding the foregoing, "Other Insured Entities" does not include the Diocese or the Diocesan Parishes. An individual who perpetrated an act of Abuse that forms the basis of a Tort

- 8 -

Claim is not an Other Insured Entity. No religious order, archdiocese or diocese is an Other Insured Entity.

60.    "Person" means any individual or entity, including any corporation, limited liability company, partnership, general partnership, limited partnership, limited liability partnership, limited liability limited partnership, proprietorship, association, joint stock company, joint venture, estate, trust, trustee, personal executor or personal representative, unincorporated association, or other entity, including any federal, international, foreign, state, or local governmental entity, body, or quasi-governmental entity or political subdivision or any agency or instrumentality thereof and any other individual or entity within the definition of (i) "person" in Section 101(41) of the Bankruptcy Code; or (ii) "entity" in Section 101(15) of the Bankruptcy Code.

61.    "Petition Date" means November 30, 2018, the date on which the Diocese commenced the Chapter 11 case.

62.    "Plan" means this joint Chapter 11 plan of reorganization, either in its present form or as it may be altered, amended, or modified from time to time in accordance with the provisions of the Bankruptcy Code and the Bankruptcy Rules.

63.    "Plan Proponents" means the Diocese and the UCC.

64.    "Priority Tax Claim" means a Claim of a governmental unit of the kind specified in Section 507(a)(8) of the Bankruptcy Code.

65.    "Pro Rata" means, with respect to any distribution on account of any allowed Claim in any class, the ratio of the amount of such allowed Claim to the sum of (i) all allowed Claims in such class and (ii) the aggregate maximum of all Claims in such class that are not yet allowed Claims.

66.    "Professional" means any professional employed or to be compensated pursuant to §§ 327, 328, 330, 331, 503(b), or 1103 of the Bankruptcy Code.

67.    "Professional Claim" means a Claim for compensation for services and/or reimbursement of expenses pursuant to §§ 327, 328, 330, 331, or 503(b) of the Bankruptcy Code in connection with an application made to the Bankruptcy Court in the Chapter 11 case.

68.    "Proof of Claim" means a proof of Claim filed in the Chapter 11 case pursuant to § 501 of the Bankruptcy Code and/or pursuant to any order of the Bankruptcy Court, together with supporting documents.

69.    "Protected Party" means any of (i) the Diocese, (ii) the Reorganized Debtor, (iii) the Diocesan Parishes; (iv) the Catholic Entities, (v) the Other Insured Entities (but, as set forth in the definition of "Other Insured Entities," such

- 9 -

"Other Insured Entities" are Protected Parties only as to certain Tort Claims); (vi) each of the foregoing Persons' respective past, present and future parents, subsidiaries, affiliates, holding companies, merged companies, related companies, divisions and acquired companies; (vii) each of the foregoing Persons' respective predecessors, successors and assigns; (viii) solely to the extent of and in their capacity as such, each of the foregoing Persons' respective past and present employees, officers, directors, shareholders, principals, teachers, staff, members, boards, administrators, priests, deacons, brothers, sisters, nuns, other clergy or persons bound by monastic vows, volunteers; and (ix) agents, attorneys and representatives, in their capacity as such, of the Persons identified in the foregoing subsections (i)-(viii). Nothing in the foregoing is intended to suggest that such Persons are "employees" or agents of the Diocese, or subject to its control. An individual who perpetrated an act of abuse that forms the basis of a Tort Claim or an Unimpaired Unknown Tort Claim is not a Protected Party. No religious order, archdiocese or diocese, other than the Diocese itself, is a Protected Party.

70.     "Reorganization Assets" means, collectively, all Assets of the Debtor and the Estate. For the avoidance of doubt, the Reorganization Assets do not include the Trust Assets.

71.     "Reorganized Debtor" means the Diocese, on and after the Effective Date. Unless otherwise expressly stated or the context otherwise requires, references to the "Diocese" and the "Reorganized Debtor" throughout various provisions of the Plan are an effort to anticipate whether an event may occur before or after the Effective Date. In this regard, and generally for purposes of the Plan, any written agreement signed after the Petition Date made by the Diocese as part of the Plan before the Effective Date (unless otherwise provided) will survive the Confirmation Date and the Effective Date and will bind the Reorganized Debtor and every other party to such agreement (including, but not limited to, the provisions of the Plan if confirmed).

72.     "Settling Insurer Policies" means  a) all policies or certificates of insurance listed on Exhibit N; and b) any and all other known and unknown contracts, binders, certificates, or policies of insurance, including all of the insurance policies mentioned or referred to in any Insurance Settlement Agreement, and which (i) were issued by a Settling Insurer; (ii) were in effect on or before the Effective Date; (iii) were issued to, allegedly issued to, or for the benefit of, or otherwise actually, allegedly, or potentially insure, the Diocese or any of its predecessors in interest, successors, or assigns; and (iv) actually, allegedly, or could potentially afford coverage with respect to any Tort Claim. If, however, a contract, binder, certificate, or policy of insurance that is not identified on Exhibit N and was not issued to or allegedly issued to the Diocese insures or covers both the Diocese and and any other Person, such contract, binder, certificate, or policy of insurance, as applicable, is a

- 10 -

"Settling Insurer Policy" to the extent it insures or covers the Diocese and the Diocesan Parishes but not to the extent it insures or covers any other Person.

73.    "Settling Insurers" means the Persons listed on Exhibit N whose Insurance Settlement Agreements are approved by the Approval Orders and such orders become Non-Appealable Orders. Solely in connection with insurance under any Settling Insurer Policies, Settling Insurers also includes each of their past, present and future parents, subsidiaries, affiliates, divisions, reinsurers, and retrocessionaires, including Persons released pursuant to the Insurance Settlement Agreements; each of the foregoing Persons' respective past, present and future parents, subsidiaries, affiliates, holding companies, merged companies, related companies, divisions and acquired companies, including the Persons released pursuant to the respective Insurance Settlement Agreements; each of the foregoing Persons' respective past, present and future directors, officers, shareholders, employees, subrogees, partners, principals, agents, attorneys, joint ventures, joint venturers, representatives, and Claims handling administrators; and each of the foregoing Persons' respective predecessors, successors, assignors, and assigns, whether known or unknown, and all Persons acting on behalf of, by, through or in concert with them, except to the extent, if any, such Person's actual or alleged rights, duties, obligations, or liabilities arise out of or relate to their status as, or conduct, acts or omissions on behalf of, a Non-Settling Insurer. Any Non-Settling Insurer who enters into a final and binding Insurance Settlement Agreement with the Trust after the Effective Date is also a Settling Insurer, except to the extent, if any, such Person's actual or alleged rights, duties, obligations or liabilities arise out of or relate to their status as, or conduct, acts or omissions on behalf of, a Non-Settling Insurer.

74.    "Supplemental Plan Documents" means, collectively, the documents included (or to be included) in the supplemental appendix to the Plan and filed with the Bankruptcy Court at least 14 days prior to the confirmation hearing.

75.    "Supplemental Settling Insurer Injunction" means the injunction imposed pursuant to Section 7.9 of the Plan.

76.    "Tort Claim" means any Claim (other than an Unimpaired Unknown Tort Claim) against any of the Protected Parties or any of the Settling Insurers that arises out of, relates to, results from, or is in connection with, in whole or in part, directly or indirectly, Abuse that took place in whole or in part prior to the Effective Date, including any such Claim that seeks monetary damages or any other relief, under any theory of liability, including vicarious liability; *respondeat superior*; any fraud-based theory, including fraud in the inducement; any negligence-based or employment-based theory, including negligent hiring, supervision, retention or

- 11 -

misrepresentation; any other theory based on misrepresentation, concealment, or unfair practice; contribution; indemnity; public or private nuisance; or any other theory, including any theory based on public policy or any acts or failures to act by any of the Protected Parties, any of the Settling Insurers or any other Person for whom any of the Protected Parties are allegedly responsible, including any such Claim asserted against any of the Protected Parties in connection with this Chapter 11 case. Tort Claim includes any Impaired Unknown Tort Claim.

77.    "Tort Claimant" means the holder of a Tort Claim.

78.    "Tort Claims Reviewer" means the Person, including the designee of such Person, who will assess Class 3 and Class 4B Claims under the Trust Distribution Plan.

79.    "Transferred Insurance Interests" means the following rights and interests of the Protected Parties in Non-Settling Insurer Policies in respect of actual or potential coverage for any Class 3 Claim or Class 4B Claim: (1) the proceeds of such Non-Settling Insurer Policies and all claims for such proceeds, including the claims filed by the Diocese in the insolvency proceedings of Northwestern National Insurance Company of Milwaukee, Wisconsin, Stronghold Insurance Co. Ltd. and CX Reinsurance Company Ltd.; and (2) all claims and causes of action that currently exist or may arise in the future against Non-Settling Insurers based on their conduct concerning insurance coverage for, or defense or settlement of, any Class 3 Claim or Class 4B Claim, including but not limited to all claims and causes of action for breach of the Non-Settling Insurer Policies, vexatious refusal, bad faith, wrongful failure to settle, and for any other similar claim or cause of action, including any and all such claims or causes of action providing for penalties, extra-contractual damages, punitive damages and attorneys' fees and costs.

80.    "Trust" means the trust created for the benefit of certain Tort Claimants in accordance with the Plan and Confirmation Order and the Trust Agreement.

81.    "Trust Agreement" or "Trust Documents" shall mean the trust agreement establishing the Trust, as it may be amended, together with such additional documents as may be executed in connection with the Trust Agreement.

82.    "Trust Assets" means the cash, Transferred Insurance Interests and other assets and rights to be transferred to the Trust under Article V of the Plan.

83.    "Trust Distribution Plan" means the Trust Distribution Plan established under the Trust Agreement.

84.    "Trustee" means the Person appointed as Trustee of the Trust in accordance with the terms of the Plan, the Confirmation Order, and the Trust

- 12 -

Agreement, or any successor appointed in accordance with the terms of the Plan, Confirmation Order, and the Trust Agreement.

85.     "UCC" means the Official Committee of Unsecured Creditors appointed in this Chapter 11 case, as such committee may be constituted from time to time.

86.     "Unimpaired" means, with respect to a class of Claims, that such class is not impaired.

87.     "Unimpaired Unknown Tort Claim" means any Claim against any of the Protected Parties or the Non-Implicated Insurer that arises out of, relates to, results from, or is in connection with, in whole or in part, directly or indirectly, Abuse that took place in whole or in part prior to the Effective Date but after June 30, 2002, including any such Claim that seeks monetary damages or any other relief, under any theory of liability, including vicarious liability; *respondeat superior*; any fraud-based theory, including fraud in the inducement; any negligence-based or employment-based theory, including negligent hiring, supervision, retention or misrepresentation; any other theory based on misrepresentation, concealment, or unfair practice; contribution; indemnity; public or private nuisance; or any other theory, including any theory based on public policy or any acts or failures to act by any of the Protected Parties, the Non-Implicated Insurer or any other Person for whom any of the Protected Parties are allegedly responsible, including any such Claim asserted against any of the Protected Parties in connection with this Chapter 11 case, which Claim was neither filed, nor deemed filed by the Claims Filing Date.

88.     "Unimpaired Unknown Tort Claimant" means the holder of an Unimpaired Unknown Tort Claim.

89.     "Unknown Claims Representative" means Judge Michael R. Hogan in accordance with the Bankruptcy Court's order dated _____, and any successor or such other person appointed by the Bankruptcy Court or otherwise.

90.     "Unsecured Claims" means Claims which are not secured by any property of the Debtor's Estate and which are not part of any other class defined in this Plan.

91.     "U.S. Trustee" means the Office of the United States Trustee for Region 12, which includes the District of Minnesota.

**1.2     INTERPRETATION**. For purposes of the Plan:

(a)     any term that is not defined herein, but that is used in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as applicable;

- 13 -

**(b)**      the terms "including" or "include(s)" are intended to be illustrative and not exhaustive, and shall be construed as "including, but not limited to" or "include(s), but is not limited to";

**(c)**      whenever the context requires, terms shall include the plural as well as the singular number, and the masculine gender shall include the feminine and the feminine gender shall include the masculine;

**(d)**      the rules of construction set forth in Section 102 of the Bankruptcy Code and in the Bankruptcy Rules shall apply;

**(e)**      unless the context should otherwise require, all references to documents to be filed shall refer to filing with the Bankruptcy Court in accordance with the Bankruptcy Code and Bankruptcy Rules;

**(f)**      any reference in the Plan to a contract, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions;

**(g)**      any reference in the Plan to an existing document or exhibit filed or to be filed means such document or exhibit, as it may have been or may be amended, modified or supplemented;

**(h)**      unless otherwise specified, all references in the Plan to "Articles," "Sections," "Schedules" and "Exhibits" are references to Articles, Sections, Schedules and Exhibits of or to the Plan;

**(i)**      the words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan;

**(j)**      captions and headings to Articles and Sections are inserted for ease of reference only and shall not be considered a part of the Plan or otherwise affect the interpretation of the Plan; and

**(k)**      the Plan supersedes all prior drafts of the Plan, and all prior negotiations, agreements, and understandings with respect to the Plan, evidence of which shall not affect the interpretation of any provision of the Plan.

**1.3      TIME PERIODS**. In computing any period of time prescribed or allowed by the Plan, unless otherwise expressly provided, the provisions of Bankruptcy Rule 9006(a) shall apply. Enlargement of any period of time prescribed or allowed by the Plan shall be governed by the provisions of Bankruptcy Rule 9006(b).

CORE/3515029.0002/164850489.1
Bodman_17458003_4

**1.4      EXHIBITS AND SCHEDULES**.

(a)      All Exhibits and Schedules to the Plan (including any Supplemental Plan Documents) (with the Plan, the "Plan Documents") are hereby incorporated by reference and made part of the Plan as if set forth fully herein.

(b)      The Exhibits to the Plan include the following:

| | |
|---|---|
| Exhibit A: | Unknown Claims Representative's Report and Recommendation |
| Exhibit B: | Non-Settling Insurers |
| Exhibit C: | Non-Settling Insurer Policies |
| Exhibit D: | Trust Agreement and Trust Distribution Protocol |
| Exhibit E: | Tort Claim Release |
| Exhibit F: | Impaired Unknown Tort Claim Release |
| Exhibit G: | Inadvertently Titled Real Property |
| Exhibit H: | List of Current Parishes |
| Exhibit I: | Known Diocese Entity Insurance Policies |
| Exhibit J: | Officers and Directors of Reorganized Debtor |
| Exhibit K: | Child Protection Protocols |
| Exhibit K(1): | Appendix A |
| Exhibit L: | Other Insured Entities |
| Exhibit M: | List of Catholic Entities |
| Exhibit N: | Settling Insurer Policies |

**ARTICLE II
TREATMENT OF UNCLASSIFIED CLAIMS**

**2.1      ADMINISTRATIVE CLAIMS**. As provided in Section 1123(a)(1) of the Bankruptcy Code, Administrative Claims including Professional Claims, and Priority Tax Claims shall not be classified for the purposes of voting or receiving distributions under the Plan. Rather, all such Claims shall be treated separately as unclassified Claims on the terms set forth in this Article.

(a)      **Treatment**. Each holder of an allowed Administrative Claim, excluding Professional Claims, against the Diocese shall receive, in full satisfaction, settlement, release, and extinguishment of such Claim, an amount from the Reorganized Debtor equal to the allowed amount of such Administrative Claim, unless the holder agrees in writing to other treatment of such Claim. Each holder of an Allowed Professional Claim shall receive, in full satisfaction, settlement, release, and extinguishment of such Claim, an amount from the Reorganized Debtor equal to the allowed amount of such Professional Claim, unless the holder agrees in writing to other treatment of such Claim and subject to the provisions of Section 5.2 of this Plan.

(b)      **Administrative Filing Deadline**.

1.   Except as otherwise set forth in this Plan, requests for allowance and payment of Administrative Claims, excluding Professional Claims, must be filed and

- 15 -

served no later than thirty (30) days after a notice of the Effective Date is filed with the Bankruptcy Court (the "Administrative Claims Filing Deadline"). Administrative Claims holders, excluding Professional Claims, that do not file a request for payment by the Administrative Claims Filing Deadline shall be forever barred from asserting such Claims against the Diocese, the Reorganized Debtor, any Settling Insurer (to the extent applicable), the Trust, or any of their property.

2.  All objections to the allowance of Administrative Claims (excluding Professional Claims) must be served and filed by any parties-in-interest no later than fourteen (14) days after the Administrative Claim Filing Deadline (the "Administrative Claim Objection Deadline"). If no objection to the applicable Administrative Claim is filed on or before the Administrative Claim Objection Deadline, such Administrative Claim will be deemed allowed. For the avoidance of doubt, the Administrative Claim Objection Deadline established by this subparagraph shall control over any contrary deadline set forth in any requests for payment of Administrative Claims.

(c)  **Professional Claim Filing Deadline**.

All Professionals or other Persons holding a Professional Claim for services rendered on or before the Effective Date (including, among other things, any compensation requested by any Professional or any other Person for making a substantial contribution in the Chapter 11 case) shall file and serve an application for final allowance of compensation and reimbursement of expenses accruing from the Petition Date to the Effective Date, no later than thirty (30) days after a notice of the Effective Date is filed (the "Professional Claim Filing Deadline").

2.2  **STATUTORY FEES**. All fees due and payable pursuant to 28 U.S.C. § 1930 and not paid prior to the Effective Date shall be paid by the Reorganized Debtor as soon as practicable after the Effective Date. After the Effective Date, the Trust shall pay quarterly fees to the U.S. Trustee until the Chapter 11 case is closed, but in no event shall the payments made to the Trust made pursuant to Article IV, V, or VI by any Person other than the Debtor be considered "disbursements" under 28 U.S.C. § 1930, nor shall any payment made by the Trust to any Person be considered a disbursement under 28 U.S.C. § 1930. The Reorganized Debtor shall file post-Confirmation Date quarterly reports in conformance with the U.S. Trustee guidelines. The U.S. Trustee shall not be required to file a request for payment of its quarterly fees, which will be deemed Administrative Claims against the Debtor and its Estate. The Reorganized Debtor shall remain responsible for any reporting and pre-Effective Date unpaid fees.

2.3  **PRIORITY TAX CLAIMS**. With respect to each allowed Priority Tax Claim not paid prior to the Effective Date, the Reorganized Debtor shall (i) pay such Claim in cash as soon as practicable after the Effective Date from its ongoing operations, or (ii) provide such other treatment agreed to by the holder of such allowed Priority Tax Claim and the Diocese or Reorganized Debtor, as applicable, in writing, provided such treatment is no less favorable to the Diocese than the treatment set forth in clause (i) of this sentence.

- 16 -

# ARTICLE III
## CLASSIFICATION OF CLAIMS

**3.1     SUMMARY**. The categories of Claims listed below classify Claims (except for Administrative Claims and Priority Tax Claims) for all purposes, including voting, confirmation of the Plan, and distribution pursuant to the Plan.

| CLASS | DESCRIPTION | IMPAIRMENT | VOTING |
|---|---|---|---|
| 1 | Priority Claim | Unimpaired | No |
| 2 | Governmental Unit Claims | Unimpaired | No |
| 3 | Tort Claims Other Than Impaired Unknown Tort Claims | Impaired | Yes |
| 4A | Unimpaired Unknown Tort Claims | Unimpaired | No |
| 4B | Impaired Unknown Tort Claims | Impaired | Yes |
| 5 | General Unsecured Claims | Impaired | Yes |
| 6A | Unimpaired Abuse Related Contingent Claims | Unimpaired | No |
| 6B | Impaired Abuse Related Contingent Claims | Impaired | Yes |
| 7 | Secured Claim of Minnesota Department of Commerce | Unimpaired | No |
| 8 | Secured Claim of Community Bank of Mankato | Unimpaired | No |
| 9 | Non-Abuse Related Contingent Claims | Impaired | Yes |

**3.2     CLASSIFICATION AND VOTING.**

The Claims against the Debtor shall be classified as specified above (other than Administrative Claims and Priority Tax Claims, which shall be unclassified and treated in accordance with Article II). Consistent with Section 1122 of the Bankruptcy Code, a Claim is classified by the Plan in a particular class only to the extent the Claim is within the description of the class, and a Claim is classified in a different class to the extent it is within the description of that different class.

# ARTICLE IV
## TREATMENT OF CLASSIFIED CLAIMS

**4.1     PRIORITY CLAIMS (CLASS 1).**

**(a)     Definition**. A Class 1 Claim means an allowed Claim described in, and entitled to priority under Sections 507(a) and 503(b)(9) of the Bankruptcy Code other than an Administrative Claim or a Priority Tax Claim.

**(b)     Treatment**. Unless the holder of an allowed Class 1 Claim and the Diocese or the Reorganized Debtor (as applicable) agree to a different treatment, the Reorganized Debtor shall pay each such allowed Class 1 Claim in full, in cash, without interest, from

- 17 -

ongoing operations on the later of the Effective Date (or as soon thereafter as is practicable) and the date a Class 1 Claim becomes an allowed Claim (or as soon thereafter as is practicable).

**4.2    GOVERNMENTAL UNIT CLAIMS (CLASS 2).**

    **(a)    Definition**. A "Class 2 Claim" means an allowed Claim of Governmental Units not otherwise included in Article II or Section 4.1 above.

    **(b)    Treatment**. Unless the holder of an allowed Class 2 Claim and the Diocese or the Reorganized Debtor (as applicable) agree to a different treatment, the Reorganized Debtor shall pay each such allowed Class 2 Claim in full, in cash, without interest, from ongoing operations on the later of the Effective Date (or as soon thereafter as is practicable) and the date a Class 2 Claim becomes an allowed Claim (or as soon thereafter as is practicable).

**4.3    TORT CLAIMS OTHER THAN IMPAIRED UNKNOWN TORT CLAIMS (CLASS 3).**

    **(a)    Definition**. A Class 3 Claim means a Tort Claim other than an Impaired Unknown Tort Claim ("Class 3 Claim").  A "Class 3 Claimant" shall mean a holder of a Class 3 Claim.

    **Summary**. The Plan creates a Trust to fund payments to Class 3 Claimants entitled to such payments under the Plan, Trust Agreement, and Trust Distribution Plan. The Trust shall be funded as provided in Articles IV ,V, and VI, including by contributions from the Diocese and others and the assignment of the Transferred Insurance Interests. The Trust shall make distributions to the Class 3 claimants, as provided by this Plan, the Trust Agreement, and the Trust Distribution Plan, which shall represent the sole recovery available to Class 3 claimants in respect to any obligation owed by Settling Insurers. Distribution from the Trust, however, does not preclude or affect claims or recoveries by Class 3 claimants against the Non-Settling Insurers.

    No Class 3 Claimant shall receive any payment on any award unless and until such Class 3 Claimant has executed the Release attached as <u>Exhibit E</u> to this Plan. Each Class 3 Claimant must execute a release of all claims against the Settling Insurers and must release all claims against the Diocese, the Reorganized Debtor, and any other Protected Party that do not implicate insurance coverage under Non-Settling Insurer Policies. To preserve coverage under Non-Settling Insurer Policies, Class 3 claimants specifically reserve, and do not release, any and all claims that they may have against the Diocese, the Reorganized Debtor, or any other Protected Party that implicate coverage under Non-Settling Insurer Policies, but recourse is limited to the proceeds of Non-Settling Insurer Policies and all other damages (including extra-contractual damages), awards, judgments in excess of policy limits, penalties, punitive damages and attorney's fees and costs that may be recoverable against any Non-Settling Insurers because of their conduct concerning insurance coverage for, or defense or settlement of, any Tort Claim, and any such judgments or awards will be handled in accordance with Sections 6.14(i) and (j). The Class

- 18 -

3 Claims will not be released or enjoined as against the Diocese, the Reorganized Debtor, or any other Protected Party for any Abuse that may be covered under Non-Settling Insurer Policies until such claims are settled with the Diocese, the Reorganized Debtor, any other Protected Party and such Non-Settling Insurer or are fully adjudicated, resolved, and subject to Final Order.

Any release of Class 3 Claims, in whole or in part, will be pursuant to the principles set forth in *Pierringer v. Hoger*, 124 N.W.2d 106 (Wis. 1963) and *Frey v. Snelgrove*, 269 N.W.2d 918 (Minn. 1978). The Claimants will expressly reserve their rights against other Persons, including joint tortfeasors, who will remain severally liable on any Class 3 Claims. Any Person that is or was alleged to be a joint tortfeasor with any of the Protected Parties in connection with the Abuse that forms the basis of a Class 3 Claim shall not be liable for any Protected Party's share of causal liability or fault. In no event may a Class 3 Claimant collect on that portion of any judgment or obtain any reallocation of any judgment based on the causal fault or share of liability of any Protected Parties. Any Person that is or was alleged to be a joint tortfeasor with any of the Protected Parties in connection with the Abuse that forms the basis of a Class 3 Claim shall be provided by the Trustee with a copy of the executed Release upon reasonable request and provision of an appropriate, executed confidentiality agreement and shall not be liable for any Protected Parties' share of liability or fault. The Trust shall be obligated to provide copies of the Class 3 Claimants' releases and certifications to any of the Protected Parties or Settling Insurers upon request provided that such Protected Parties or Settling Insurers have signed a confidentiality agreement encompassing such information.

The Trust shall fund the defense of the Diocese, the Reorganized Debtor, and any other Protected Party as against any Litigation Claims brought by Class 3 Claimants, but only to the extent that the Diocese, the Reorganized Debtor, or any other Protected Party, as applicable, is not defended or otherwise reimbursed for its defense expenses on an advance basis by any Insurer. The Trust shall advance funding to the Diocese, the Reorganized Debtor, or any other Protected Party, as applicable, with respect to any judgments or settlements of any Litigation Claims brought by Class 3 claimants, but only to the extent that such judgments or settlements are not funded by any Insurer. The Trust shall pursue recoveries against any Non-Settling Insurers in respect of the Transferred Insurance Interests.

The Non-Settling Insurers remain fully liable for their obligations related in any way to the Class 3 Claims, and their obligations are not reduced by the fact that the Diocese is in bankruptcy or by the amount of distributions Class 3 claimants receive, or are entitled to receive, based on the Trust Distribution Plan. For the avoidance of doubt, determinations by the Tort Claims Reviewer and/or any distributions entitled to be received from the Trust shall not constitute a determination of any Protected Party's liability or damages for Class 3 Claims. The Trust may continue efforts to obtain recoveries from Non-Settling Insurers related to the Class 3 Claims. Any such recoveries by the Trust from Non-Settling Insurers will likewise become Trust Assets to be distributed pursuant to the Trust Distribution Plan. To bar any argument by the Non-Settling Insurers that any provision of this Plan, including the assignment and transfer of the Transferred Insurance Interests to the Trust, results in a

forfeiture of coverage, this Plan preserves the Non-Settling Insurers' rights to the extent required under their respective Non-Settling Insurer Policies and applicable law.

    **(b)**    **Treatment**.  Responsibility for preserving and managing Trust Assets and distributing Trust Assets to Class 3 Claimants shall be assigned to, assumed and treated by the Trust as further provided in Article __, the Trust Agreement, and the Trust Distribution Plan. Class 3 Claims shall be paid in accordance with the provisions of the Trust and Trust Distribution Plan.

    **(c)**    **Stipulated Judgments.** Certain Class 3 Claimants have entered into, or may enter into, agreements with the Diocese, the Reorganized Debtor, or any other Protected Party for settlement of a Tort Claim allocated by applicable non-bankruptcy law, including but not limited to settlements consistent with *Miller v. Shugart*, 316 N.W.2d 729 (Minn. 1982) or *Drake v. Ryan*, 514 N.W.2d 785 (Minn. 1994). If a Class 3 Claimant enters into such an agreement with the Diocese, the Reorganized Debtor, or any other Protected Party, the Trust will pursue any judgment against the Non-Settling Insurer on behalf of the Class 3 Claimant. Any recoveries by the Trust from Non-Settling Insurers will become Trust Assets to be distributed pursuant to the Trust Distribution Plan.

## 4.4    UNIMPAIRED UNKNOWN TORT CLAIMS (CLASS 4A).

    **(a)**    **Definition**. A Class 4A Claim means an Unimpaired Unknown Tort Claim ("Class 4A Claim"). A "Class 4A Claimant" shall mean a holder of a Class 4A Claim.

    **(b)**    **Treatment**. As of the date of this Plan, the Debtor is not aware of the existence of any Class 4A Claims.  The Reorganized Debtor will be responsible for defending any Class 4A Claim that is asserted and for payment of any amount determined to be owed on a Class 4A Claim upon settlement or adjudication of such Class 4A Claim. The Trust will not be responsible for paying Class 4A Claims and will not have a role in the settlement or adjudication of Class 4A Claims.

## 4.5    IMPAIRED UNKNOWN TORT CLAIMS (CLASS 4B).

    **(a)**    **Definition**. A Class 4B Claim means an Impaired Unknown Tort Claim ("Class 4B Claim"). A "Class 4B Claimant" shall mean a holder of a Class 4B Claim.

    **(b)**    **Treatment**. The Plan creates a Trust to administer payments to Class 4B Claimants entitled to such payments under the Plan, Trust Agreement, and Trust Distribution Plan. The Trust shall be funded as provided in Articles IV, V, and VI, including from post-confirmation payments from the Reorganized Debtor and third parties. The Trust shall make distributions to the Class 4B Claimants, as provided by this Plan, the Trust Agreement, and the Trust Distribution Plan, which shall represent the sole recovery available to Class 4B Claimants in respect to any obligation owed by Settling Insurers. Distribution from the Trust, however, does not preclude or affect claims or recoveries by Class 4B claimants against the Non-Settling Insurers.

    No Class 4B Claimant shall receive any payment on any award unless and until such Class 4B Claimant has executed the Release attached as <u>Exhibit F</u> to this Plan. Each

CORE/3515029.0002/164850489.1
Bodman_17458003_4

Class 4B Claimant must execute a release of all claims against the Settling Insurers and must release all claims against the Diocese, the Reorganized Debtor, and any other Protected Party that do not implicate insurance coverage under Non-Settling Insurer Policies. To preserve coverage under Non-Settling Insurer Policies, Class 4B claimants specifically reserve, and do not release, any and all claims that they may have against the Diocese, Reorganized Debtor, or any other Protected Party that implicate coverage under Non-Settling Insurer Policies, but recourse is limited to the proceeds of Non-Settling Insurer Policies and all other damages (including extra-contractual damages), awards, judgments in excess of policy limits, penalties, punitive damages and attorney's fees and costs that may be recoverable against any Non-Settling Insurers because of their conduct concerning insurance coverage for, or defense or settlement of, any Tort Claim, and any such judgments or awards will be handled in accordance with Sections 6.14(i) and (j). The Class 4B Claims will not be released or enjoined as against the Diocese, the Reorganized Debtor, or any other Protected Party for any Abuse that may be covered under Non-Settling Insurer Policies until such claims are settled with the Diocese, the Reorganized Debtor, or any other Protected Party, as applicable, and such Non-Settling Insurer or are fully adjudicated, resolved and subject to Final Order.

The Trust shall fund the defense of the Diocese, the Reorganized Debtor, and any other Protected Party as against any Litigation Claims brought by Class 4B Claimants, but only to the extent that the Diocese, the Reorganized Debtor, or any other Protected Party, as applicable, is not defended or otherwise reimbursed for its defense expenses on an advance basis by any Insurer. The Trust shall advance funding to the Diocese, the Reorganized Debtor, or any other Protected Party, as applicable, with respect to any judgments or settlements of any Litigation Claims brought by Class 4B claimants, but only to the extent that such judgments or settlements are not funded by any Insurer. The Trust shall pursue recoveries against any Non-Settling Insurers in respect of the Transferred Insurance Interests.

The Non-Settling Insurers remain fully liable for their obligations related in any way to the Class 4B Claims. Any release of Class 4B Claims, in whole or in part, will be pursuant to the principles set forth in *Pierringer v. Hoger*, 124 N.W.2d 106 (Wis. 1963) and *Frey v. Snelgrove*, 269 N.W.2d 918 (Minn. 1978). The Class 4B Claimants will expressly reserve their rights against other Persons, including joint tortfeasors, who will remain severally liable on any Class 4B Claims. Nothing in this Article requires any Impaired Unknown Tort Claimant to release any Claims against any joint tortfeasor who is not a Protected Party or a Settling Insurer and such Claims are reserved. But in no event may a Class 4B Claimant collect on that portion of any judgment or obtain reallocation of any judgment based on the causal fault or share of liability of any Protected Party.

Responsibility for preserving and managing Trust Assets and distributing Trust Assets to Class 4B Claimants shall be assigned to, assumed, and treated by the Trust as further provided in Article V, the Trust Agreement, and the Trust Distribution Plan. Class 4B Claims shall be paid in accordance with the provisions of the Trust and Trust Distribution Plan. Class 4B Claimants shall provide sufficient information to allow the Tort Claims Reviewer to make an evaluation of the Class 4B Claim pursuant to the factors in the Trust Distribution Plan.

**4.6     GENERAL UNSECURED CLAIMS (CLASS 5)**.

**(a)     Definition**. A Class 5 Claim means (1) any Claim arising out of the rejection of any executory contract, or (2) any Unsecured Claim that is not included in another class under the Plan and is not listed as disputed, contingent or unliquidated on the Debtor's schedules filed in connection with this Chapter 11 case ("Debtor's Schedules") or as to which the holder of such Claim timely filed a Claim.

**(b)     Treatment**. Each holder of a Class 5 Claims shall receive, directly from the Reorganized Debtor, payment in full of such allowed Class 5 Claim, without interest, within 30 days following the Effective Date.

**4.7     UNIMPAIRED ABUSE RELATED CONTINGENT CLAIMS (CLASS 6A)**.

**(a)     Class 6A Definition**. A Class 6A Claim means (i) any Claim for contribution, indemnity or reimbursement arising out of the Diocese's liability to pay or defend any Class 4A Claim, and (ii) the Claim of any insurers or other Persons who are subrogated to the Claims identified in Section 4.7(a) clause (i).

**(b)     Class 6A Treatment**. As of the date of this Plan, the Debtor is not aware of the existence of any Class 6A Claims.  The Reorganized Debtor will be responsible for defending any Class 6A Claim that is asserted and for payment of any amount determined to be owed on a Class 6A Claim upon settlement or adjudication of such Class 6A Claim. The Trust will not be responsible for paying Class 6A Claims and will not have a role in the settlement or adjudication of Class 6A Claims.

**4.8     IMPAIRED ABUSE RELATED CONTINGENT CLAIMS (CLASS 6B)**.

**(a)     Class 6B Definition**. A Class 6B Claim means (i) any Claim for contribution, indemnity or reimbursement against the Diocese arising out of the Diocese's liability to pay or defend any released Class 3 Claim or Class 4B Claim, and (ii) the Claim of any insurers or other Persons who are subrogated to the Claims identified in Section 4.8(a) clause (i).

**(b)     Class 6B Treatment**. Claims in Class 6B shall be disallowed in accordance with Section 502(e)(1) of the Bankruptcy Code, and Class 6B Claims will receive no distribution under the Plan and will be channeled to the Trust. The treatment of Class 6B Claims shall include the release and certification procedures contemplated under Sections 4.3 and 4.5 above. The Plan does not allow Tort Claimants to collect that portion of any judgment or obtain reallocation of any judgment based on the causal fault or share of liability of any Protected Party. Any Person that is or was alleged to be a joint tortfeasor with any of the Protected Parties in connection with a Tort Claim shall not be liable for any Protected Party's share of liability or fault.

**(c)     **The Trust shall fund the defense of the Diocese, the Reorganized Debtor, and any other Protected Party as against any Class 6B Claims, but only to the extent that the Diocese, the Reorganized Debtor, or any other Protected Party, as applicable, is not defended or otherwise reimbursed for its defense expenses on an advance basis by any

- 22 -

Insurer. The Trust shall advance funding to the Diocese, the Reorganized Debtor, or any other Protected Party, as applicable, with respect to any judgments or settlements of any Class 6B Claims, but only to the extent that such judgments or settlements are not funded by any Insurer. The Trust shall pursue recoveries against any Non-Settling Insurers in respect of the Transferred Insurance Interests.

**4.9    MINNESOTA DEPARTMENT OF COMMERCE (CLASS 7).**

(a)    **Class 7 Definition**. A Class 7 Claim means the claim of the Minnesota Department of Commerce against cash collateral posted at Merchants Bank that secures the Debtor's obligation for potential workers' compensation liability.

(b)    **Class 7 Treatment**. The cash collateral securing the Class 7 Claim shall vest in the Reorganized Debtor and shall continue to secure the Class 7 Claim. The security interest of the holder of the Class 7 Claim shall remain undisturbed and the holder of such claim may exercise any and all rights and remedies against the collateral posted at Merchants Bank that secures the Debtor's obligation for potential workers' compensation liability.

**4.10    COMMUNITY BANK OF MANKATO (CLASS 8).**

(a)    **Class 8 Definition**. A Class 8 Claim means the claim of the Community Bank of Mankato under that certain mortgage and security agreement encumbering the real property known as 1502 Warren Street, Mankato, Minnesota.

(b)    **Class 8 Treatment**. The collateral securing the Class 8 Claim shall vest in the Reorganized Debtor, provided, however, that the Reorganized Debtor may transfer legal title to such collateral (subject to the mortgage and security agreement) to the equitable owner as set forth in Section 15.2 below, but in any case the collateral shall continue to secure the Class 8 Claim. The mortgage and security interest of the holder of the Class 8 Claim shall remain undisturbed and the holder of such claim may exercise any and all rights and remedies against the collateral referenced in such mortgage and security agreement, available to the holder.

**4.11    NON-ABUSE RELATED CONTINGENT CLAIMS (CLASS 9).**

(a)    **Class 9 Definition**. A Class 9 Claim means (i) any Claim for contribution, indemnity, or reimbursement other than: a Class 6A Claim, a Class 6B Claim, a Covered Non-Tort Claim, or a Claim for contribution, indemnity or reimbursement for any non-released Tort Claim, (ii) any Claim related to a self-insured fund, group insurance fund, tax deferred plan such as a 403(b) plan, or other retirement-related Claim, concerning such claims identified in Section 4.11(a) clause (i); and (iii) the Claim of any insurers or other Persons who are subrogated to the Claims identified in Section 4.11(a) clause (i).

(b)    **Class 9 Treatment**. Claims in Class 9 shall be allowed or disallowed in accordance with Section 502(e)(1) of the Bankruptcy Code, and Class 9 Claims will receive no distribution under the Plan.

CORE/3515029.0002/164850489.1
Bodman_17458003_4

## ARTICLE V
## MEANS OF IMPLEMENTATION OF THE PLAN

5.1    **TRUST FORMATION AND FUNDING**.

(a)    **Purpose, Formation, and Assets**. The Trust shall be established for the purpose of receiving, liquidating, and distributing Trust Assets in accordance with this Plan and the Trust Distribution Plan. The proposed Trust Agreement is attached hereto as Exhibit D.

(b)    **Funding**.

1.    **Summary**. This Plan will be funded from the sources and in the manner set forth in this Section. In addition to the contributions described herein, the Catholic Entities and Other Insured Entities will waive certain Claims against the Diocese and Settling Insurers, including Indirect Claims and the contribution and indemnity Claims referenced in Section 4.8.

2.    **Contributions**. Cash and other assets with an expected value of $_____ (the "Settlement Amount") will be paid or transferred, as applicable, to the Trust Account as provided in the Plan and as described herein.

(i)    **Debtor Cash Contribution**. The Debtor will transfer (a) $13,560,000, less (A) Professional Claims (including fees and expenses of Insurance Archaeology Group), mediation fees and expenses (including the fees and expenses of John Vukelich and Paul Van Osselaer), and U.S. Trustee quarterly fees, in each case to the extent paid after February 29, 2020, and (B) counseling expenses for Tort Claimants (whether paid before or after the Petition Date) (collectively, the "Permitted Deductions"), to the Trust Account within two business days after the later of (x) the date that the Confirmation Order has become a Non-Appealable Order, or (y) the date of payment of the amount required by Section 5.1(b)(2)(ii) below, plus (b) $7,940,000 as soon as practical after the sale or other monetization of certain assets of the Diocese, as well as a contribution from certain non-Diocesan entity resources, but in no event more than 12 months after the date the Confirmation Order becomes a Non-Appealable Order (the "Debtor Cash Contribution"). In the event there are Permitted Deductions paid after the payment of the amount required under subparagraph 2(i)(a) above, then the Debtor may deduct any remaining Permitted Deductions from the $7,940,000 payment. The Debtor Cash Contribution will be primarily comprised of funds from the following sources:

1.    non-restricted cash accounts held by the Diocese;

2.    an account established to hold the proceeds derived from the sale of Diocese properties during the course of this Chapter 11 case; and

- 24 -

3.    the contributions of third parties, including proceeds from the Debtor's sale of certain real property, available cash savings, a substantial loan, with the balance coming from the Debtor's parishioners via contributions from the various Parishes, missions, and programs within the Diocese.

(ii)    **Settling Insurer Contributions**. Each Settling Insurer shall pay to the Trust the sums set forth in their respective Insurance Settlement Agreement (the "Insurance Settlement Amounts") within the time set forth in their respective Insurance Settlement Agreements. In addition, all rights to receive payment of the Insurance Settlement Amounts under the Insurance Settlement Agreements shall be assigned to the Trust. The total amount that will be paid to the Trust by the Settling Insurers is $6,500,000 (the "Settling Insurer Contributions").

(3)    **Additional Trust Assets: All Rights and Recoveries Against Non-Settling Insurers.** In addition to the funds transferred to the Trust, the Transferred Insurance Interests of the Diocese are automatically and without further act or deed assigned and transferred to the Trust on the Effective Date.  In addition, the Interests of the other Protected Parties in the Transferred Insurance Interests are automatically and without further act or deed assigned and transferred to the Trust on the Effective Date. The foregoing assignment and transfer shall not be construed as an assignment and transfer of the Non-Settling Insurer Policies.

(c)    **Vesting**. On the Effective Date, all Trust Assets shall vest in the Trust, and the Diocese and other Protected Parties shall be deemed for all purposes to have transferred all of their respective Interests in the Trust Assets to the Trust. On the Effective Date, or as soon as practicable thereafter, the Reorganized Debtor, any other Protected Party, and Settling Insurers, as applicable, shall take all actions reasonably necessary to transfer any Trust Assets to the Trust. Upon the transfer of control of Trust Assets in accordance with this paragraph, the Diocese, the other Protected Parties and the Settling Insurers shall have no further interest in or with respect to the Trust Assets except as otherwise explicitly provided in this Plan.

**5.2**    **PAYMENT OF PROFESSIONAL FEES**. The Reorganized Debtor shall pay all unpaid Allowed Professional Claims accruing through _____, 2020, (i) within seven (7) days after the later of the Effective Date or the Bankruptcy Court's order on such Claims, or (ii) upon such terms as may exist pursuant to Order of the Bankruptcy Court or an agreement between such holder of an Allowed Professional Claim and the Debtor, and shall pay costs and expenses of publication of the notices of insurance settlement and plan confirmation within seven (7) days after the Effective Date. For the period of _____, 2020 through the Effective Date, the Debtor will be responsible only for paying unpaid Allowed Professional Claims for the Debtor's Professionals. The Committee's Professionals will be paid by the Trust for unpaid Allowed Professional Claims accruing during the period of _____, 2020 through the Effective Date.

- 25 -

**5.3** **PAYMENTS EFFECTIVE UPON TENDER**. Whenever the Plan requires payment to be made to a creditor, such payment will be deemed made and effective upon tender thereof by the Trustee, the Debtor, or the Reorganized Debtor to the creditor to whom payment is due. If any creditor refuses a tender, the amount tendered and refused will be held by the Trust, the Debtor, or the Reorganized Debtor for the benefit of that creditor pending final adjudication of the dispute. However, when and if the dispute is finally adjudicated and the creditor receives the funds previously tendered and refused, the creditor will be obliged to apply the funds in accordance with the Plan as of the date of the tender; and while the dispute is pending and after adjudication thereof, the creditor will not have the right to claim interest or other charges or to exercise any other rights which would be enforceable by the creditor, if the Trust, the Debtor, or the Reorganized Debtor failed to pay the tendered payment.

<strong>ARTICLE VI</strong><br><u><strong>TRUST</strong></u>

**6.1** **ESTABLISHMENT OF TRUST**. On or before the Confirmation Date, the Trust shall be established in accordance with the Trust Documents. The Trust is intended to qualify as a "Designated" or "Qualified Settlement Fund" pursuant to Section 468B of the Internal Revenue Code and the Treasury Regulations promulgated thereunder. The Debtor is the "transferor" within the meaning of Treasury Regulation Section 1.468B-1(d)(1). The Trustee shall be classified as the "administrator" within the meaning of Treasury Regulation Section 1.468B-2(k)(3). The Trust Documents, including the Trust Agreement, are incorporated herein by reference.

**6.2** **PURPOSE, FORMATION AND ASSETS.** The Trust shall be established for the purposes described in this paragraph. The Trust shall receive the transfer and assignment of assets as provided in Articles IV and V, including the Debtor Cash Contribution, Settling Insurer Contributions, and the Transferred Insurance Interests, of which the Trust is, and shall be deemed to be, the sole assignee. The Trust shall make distributions to the Class 3 and Class 4B claimants, as provided by this Plan, the Trust Agreement, and the Trust Distribution Plan. The Trust shall pursue recoveries against any Non-Settling Insurers in respect of the Transferred Insurance Interests. The Trust shall fund the defense of the Diocese, the Reorganized Debtor, and any other Protected Party as against any Litigation Claims brought by Class 3 and Class 4B claimants, but only to the extent that the Diocese, the Reorganized Debtor, or any other Protected Party are not defended or otherwise reimbursed for their defense expenses by any Non-Settling Insurer. The Trust shall advance funding to the Diocese, the Reorganized Debtor, and any other Protected Party, as applicable, with respect to any judgments or settlements of any Litigation Claims brought by Class 3 and Class 4B claimants, but only to the extent that such judgments or settlements are not funded by any Insurer. The Trust shall fund the costs and expenses in executing these functions, all such functions to be executed in accordance with this Plan, the Trust Agreement, and the Trust Distribution Plan, with the aim of preserving, managing, and maximizing Trust Assets to pay Class 3 and Class 4B claimants and with no objective to continue or engage in the conduct of a trade or business. The proposed Trust Agreement is attached to this Plan as <u>Exhibit D</u>.

**6.3** **ALLOCATIONS WITHIN AND DISTRIBUTIONS AND PAYMENTS FROM THE TRUST**.

- 26 -

(a)     **General Corpus**. The following distributions and payments will be made from the general corpus of the trust:

1.  **Distributions**. Distributions on Class 3 Claims and Class 4B Claims as determined by the Tort Claims Reviewer in accordance with this Plan, the Trust Agreement, and the Trust Distribution Plan.

2.  **Tort Claims Reviewer**. The Trustee shall retain the Tort Claims Reviewer. Fees payable to the Tort Claims Reviewer for review of Class 3 and Class 4B Claims shall be paid from the Trust.

3.  **Trust Administrative Fees**. All fees, costs, and expenses of administering the Trust as provided in the Plan and the Trust Agreement shall be paid by the Trust, including: (i) as reasonably necessary to meet current liabilities and to maintain the value of the respective Assets of the Trust; (ii) to pay reasonable administrative expenses (including any taxes imposed on the Trust and any professional fees); and (iii) to satisfy other liabilities incurred by the Trust in accordance with the Plan or the Trust Agreement.

4.  **Indemnity**. The Trust's obligations, if any, to defend, indemnify, or hold harmless any Person expressly set out in the Plan shall be made from the corpus of the Trust.

(b)     **IMPAIRED UNKNOWN TORT CLAIM RESERVE FUND**. The Trust shall establish an Impaired Unknown Tort Claim Reserve Fund for the benefit of Class 4B Claimants, as detailed in § __ of the Trust Agreement, in the amount of _____. The Trust shall maintain the Impaired Unknown Tort Claim Reserve Fund until the later of (i) the date that the Impaired Unknown Tort Claim Reserve Fund has been exhausted or (ii) the occurrence of the sixth (6th) anniversary of the Effective Date.  Neither the Diocese, the Reorganized Debtor nor any other Protected Party shall have any obligation to make any contribution to the Trust to establish an Impaired Unknown Tort Claim Reserve Fund in excess of those contributions specified in Article V, Section 5.1(b) as the Debtor's Cash Contribution and Transferred Insurance Interests.

**6.4     TAX MATTERS**. The Trust shall not be deemed to be the same legal entity as the Diocese, but only the assignee of certain assets of the Diocese and a representative of the Estate for delineated purposes within the meaning of Section 1123(b)(3) of the Bankruptcy Code. The Trust is expected to be tax exempt. The Trustee shall file such income tax and other returns and documents as are required to comply with the applicable provisions of the Internal Revenue Code of 1986, 26 U.S.C. §§ 1 et seq., as may be amended, and the regulations promulgated thereunder, 31 C.F.R. §§ 900 et seq., and Minnesota law and the regulations promulgated thereunder, and shall pay from the Trust all taxes, assessments, and levies upon the Trust, if any.

**6.5     APPOINTMENT OF THE TRUSTEE**. The initial Trustee has been identified in <u>Exhibit D</u> to this Plan. The Trustee shall commence serving as the Trustee on the Confirmation Date; provided, however, that the Trustee shall be permitted to act in accordance with the terms of the Trust Agreement from such earlier date, as authorized by the Diocese and the UCC, and shall

- 27 -

be entitled to seek compensation in accordance with the terms of the Trust Agreement and the Plan.

### 6.6  RIGHTS AND RESPONSIBILITIES OF TRUSTEE.

(a)  The Trustee shall be deemed the Estate's representative in accordance with Section 1123 of the Bankruptcy Code and shall have all the rights, powers, authority, responsibilities, and benefits specified in the Plan and the Trust Agreement, including (to the extent necessary to enforce those rights, powers, authority, responsibilities, and benefits only) the powers of a trustee under Sections 704, 108 and 1106 of the Bankruptcy Code and Bankruptcy Rule 2004 (including commencing, prosecuting or settling Causes of Action, enforcing contracts, and asserting Claims, defenses, offsets and privileges). If there is any inconsistency or ambiguity between the Confirmation Order and the Trust Agreement with respect to the Trustee's authority to act, the provisions of the Confirmation Order shall control. Among other things, the Trustee:  (1) shall liquidate and convert to cash the Trust Assets, make timely distributions and not unduly prolong the duration of the Trust; (2) may request an expedited determination of taxes of the Trust under Section 505(b) of the Bankruptcy Code for all returns filed for, or on behalf of, the Trust for all taxable periods through the dissolution of the Trust; and (3) may retain professionals, including legal counsel, accountants, financial advisors, auditors, and other agents on behalf of the Trust, and at the Trust's sole expense, as reasonably necessary and to carry out the obligations of the Trustee hereunder and under the Trust Agreement.

(b)  Notwithstanding the foregoing, the Diocese, the Reorganized Debtor, and the Trust acting for itself and on behalf the Estate, shall be deemed to have waived, effective upon the Effective Date:

1.  Any and all Claims under Sections 547, 548, 549 and 550 of the Bankruptcy Code for the recovery of any sums paid to any Person who provided goods and services to the Diocese in the ordinary course of business prior to the Effective Date;

2.  Any and all Claims and Causes of Action: (i) seeking the substantive consolidation of the Diocese and any other Person or an order deeming any such Person and the Diocese to be an "alter-ego" of the other or any other similar Claim or Cause of Action; (ii) to avoid, set aside or recover any payment or other transfer made to any Person under Sections 547, 548, 549, and 550 of the Bankruptcy Code; and (iii) any proceeding to avoid or set aside any interest of a Person in property under Section 544 of the Bankruptcy Code.

The Confirmation Order shall state that, absent permission of the Bankruptcy Court, no judicial, administrative, arbitral, or other action or proceeding shall be commenced in any forum other than the Bankruptcy Court against the Trustee in its official capacity, with respect to its status, duties, powers, acts, or omissions as Trustee.

- 28 -

**6.7     TRANSFERRED INSURANCE INTERESTS**.

      **(a)     Enforcement of Transferred Insurance Interests Against Non-Settling Insurers.**

1.     As set forth in Article V, the Transferred Insurance Interests are assigned and transferred to the Trust. The Trust shall be entitled to all policy proceeds due by virtue of a judgment or settlement of a Class 3 Claim or a Class 4B Claim. The Trust shall also have the right to pursue judgment against Non-Settling Insurers to determine the amount of coverage available for Protected Parties' liability for Tort Claims. The foregoing transfer shall not be construed to entitle any Person to insurance coverage other than those Persons entitled to such coverage from Non-Settling Insurers. The Trust shall be fully authorized to act in its own name, or in the name of any Protected Party, to enforce any right, title, or interest of any Protected Party in the Transferred Insurance Interests. No limitations on recovery from Non-Settling Insurers shall be imposed by virtue of the fact that the Diocese is in bankruptcy or by any distribution from the Trust to any Tort Claimant. The transfer of the Transferred Insurance Interests shall not affect any Non-Settling Insurer's duty to defend, but to the extent that a failure to defend or a separate agreement between the Diocese, the Reorganized Debtor, or any other Protected Party and any Non-Settling Insurer gives rise to a monetary obligation or policy proceeds to reimburse defense costs in lieu of a duty to defend, the Trust shall be entitled to the benefit of such monetary obligation or policy proceeds. Any recovery by the Trust on an action against a Non-Settling Insurer for a determination of coverage for Protected Parties' liability for Tort Claims shall become a Trust Asset and shall be distributed as provided in this Plan, the Trust Agreement, and the Trust Distribution Plan. The Trust's recourse to the Diocese and the other Protected Parties shall be limited to the Transferred Insurance Interests and any other rights or interests expressly granted to the Trust under this Plan, including any indemnification obligations of the Reorganized Debtor for Covered Non-Tort Claims under section 16.4, or as otherwise provided by the Plan. The Trust shall have no liability for Covered Non-Tort Claims and holders of Covered Non-Tort Claims shall have no recourse to the Trust with respect to such Claims.

2.     The Trust shall have full access to coverage issued by the Non-Settling Insurers to the greatest extent permitted by applicable non-bankruptcy law, in the same manner and to the same extent as the Protected Parties prior to the confirmation of the Plan and the transfer of the Transferred Insurance Interests to the Trust, subject to the assertion of any coverage defenses except any defense (a) regarding the assignment and transfer of the Transferred Insurance Interests; (b) effected by operation of law because of confirmation of this Plan; or (c) based on res judicata or collateral estoppel related to facts determined by the Bankruptcy Court.

      The assignment and transfer of the Transferred Insurance Interests to the Trust does not affect the Diocese's, the Reorganized Debtor's, other Protected

- 29 -

Parties', or any Non-Settling Insurer's right to contest the Diocese's, or any other insured's, liability or the amount of damages in respect of any Tort Claims. Notwithstanding the assignment and transfer of the Transferred Insurance Interests, the Diocese, the Reorganized Debtor, and any other Protected Party shall not be relieved of any obligations or duties under any Non-Settling Insurer Policy (including without limitation any duty to cooperate) and shall continue to honor such duties and obligations as required by such applicable Non-Settling Insurer Policies and applicable law. The transfer and assignment of the Transferred Insurance Interests does not affect any insurers' rights, obligations, or duties under applicable Non-Settling Insurer Policies or applicable law. If the Trust brings an action against a Non-Settling Insurer to assert any claim or to determine the Non-Settling Insurer's obligation to provide coverage for any Tort Claim, the Non-Settling Insurer may raise any defense to coverage as if the action had been brought by the Diocese, the Reorganized Debtor, or any other Protected Party.

3. The Bankruptcy Court shall determine at the Confirmation Hearing (i) whether the assignment of the Transferred Insurance Interests provided for in this Section is valid, and (ii) whether such transfer or the discharge and injunctions set forth in Sections 13.2 and 13.3, or any other term of the Plan, void, defeat, or impair the insurance coverage issued by the Non-Settling Insurers. If a party in interest (which, for this purpose, shall include the Non-Settling Insurers) fails to timely file an objection to the proposed assignment and transfer of the Transferred Insurance Interests to the Trust or other terms of the Plan related to the Non-Settling Insurer Policies by the date set to file such objections, that party in interest shall be deemed to have irrevocably consented to the assignment of Transferred Insurance Interests and other Plan terms related to such Non-Settling Insurer Policies and will be forever barred from asserting that the assignment of the Transferred Insurance Interests or other Plan terms affect the ability of the Trust or Tort Claimants to pursue the Non-Settling Insurers, or any of them, for insurance coverage.

4. In the event that the Bankruptcy Court enters a Final Order determining that the assignment of the Transferred Insurance Interests is valid and does not defeat or impair coverage under the Non-Settling Insurer Policies, following the Effective Date, the Trust shall assume responsibility for, and be bound by, only such obligations of the Diocese and other Protected Parties under the Non-Settling Insurer Policies as are necessary to enforce the Transferred Insurance Interests; provided, however, that the Protected Parties shall not be relieved of any obligations the Protected Parties may have under Non-Settling Insurer Policies.

5. The Reorganized Debtor will cooperate and assist the Trust in enforcing any right or prosecuting any claim based on the Transferred Insurance Interests. This cooperation includes, but is not limited to, providing access to documents and electronic information and providing clergy, employees, agents, and volunteers to testify in depositions and at trial.

CORE/3515029.0002/164850489.1
Bodman_17458003_4

(b)    **Appointment of Trustee as Estate Representative to Enforce Insurance Interests and Obtain Insurance Recoveries.**

1. If the Bankruptcy Court does not enter a Final Order approving the assignment and transfer of the Transferred Insurance Interests to the Trust, then the assignment shall not occur and pursuant to the provisions of Section 1123(b)(3)(B) of the Bankruptcy Code, the Trustee is hereby appointed as the representative of the Diocese's Estate for the purpose of retaining and enforcing all of the Diocese's and the Estate's Interests against the Non-Settling Insurers with respect to the Tort Claims. Any recoveries on such Interests by the Trustee will be paid to the Trust. The determination of whether the appointment of the Trustee as the Diocese's and the Estate's representative provided for in this Section 6.7(a)(6) is valid, and does not defeat or impair the insurance coverage Non-Settling Insurers are responsible for under Non-Settling Insurer Policies, shall be made by the Bankruptcy Court at the confirmation hearing. If a party in interest (which, for this purpose, shall include the Non-Settling Insurers) fails to timely file an objection to the proposed appointment by the deadline for filing objections to confirmation of this Plan, that party in interest shall be deemed to have irrevocably consented to the appointment and will be forever barred from asserting that the appointment in any way affects the ability of the Trustee to pursue Non-Settling Insurers, or any of them, for insurance coverage. In the event that the Bankruptcy Court determines that the appointment is valid and does not defeat or impair coverage Non-Settling Insurers are responsible for under Non-Settling Insurer Policies, then, following the Effective Date, the Trustee shall assume responsibility for, and be bound by, only such obligations of the Diocese and other Protected Parties under Non-Settling Insurer Policies as are necessary to act as the representative of the Diocese and the Estate for the purpose of retaining and enforcing their Interests, if any, against the Non-Settling Insurers; provided, however, that the Trustee's appointment shall not relieve the Diocese, the Reorganized Debtor or the other Protected Parties from any obligation that such entities may have under the Non-Settling Insurer Policies. Nothing contained in this Section 6.7(b)(1) shall affect the rights and remedies of a Person who is not a Protected Party but is an insured or additional insured with the Diocese or is asserting rights under a Non-Settling Insurer Policy.

2. In the event that a Final Order is entered holding that: (a) the assignment of the Transferred Insurance Interests, or (b) the appointment of the Trustee as the Diocese's and the Estate's representative are invalid or would defeat or impair the insurance coverage issued by the Non-Settling Insurers, then the assignment and/or appointment, as the case may be, will be deemed not to have been made, and the Diocese, the Reorganized Debtor, and each of the Protected Parties will retain their Interests under each Settling Insurer and Non-Settling Insurer Policy.

(i)    At the request of the Trust, the Reorganized Debtor and the other Protected Parties will assert their Interests against a Non-Settling

- 31 -

Insurer, including, but not limited to, by filing a lawsuit for recovery of policy proceeds. All recoveries by the Reorganized Debtor and the other Protected Parties will be paid to the Trust. The Reorganized Debtor and the other Protected Parties will select and retain counsel to pursue their Interests against Non-Settling Insurers pursuant to this Section 6.7(a)(7), subject to the Trustee's approval, which approval shall not be unreasonably withheld.

(ii)     The Trust shall pay the reasonable attorneys' fees, costs and expenses that are incurred by the Reorganized Debtor and the other Protected Parties in pursuing, pursuant to this Section 6.7(a)(7), its Interests against Non-Settling Insurers.

(iii)     The Trust shall, in addition to reasonable attorneys' fees, costs and expenses provided for in this Section 6.7(a)(7), reimburse the Reorganized Debtor and each of the Protected Parties for any reasonable out of pocket costs and expenses it incurs as a direct consequence of pursuing its Interests against Non-Settling Insurers, but will not compensate the Reorganized Debtor or any other Protected Party for any time any of its employees expend. Upon receipt by the Reorganized Debtor or other Protected Party, all recoveries received by the Reorganized Debtor or other Protected Party from Non-Settling Insurers shall be deemed to be held in trust for the benefit of the Trust and shall be remitted by the Reorganized Debtor or other Protected Party to the Trust as soon as practicable following the Reorganized Debtor's or other Protected Party's receipt of such recoveries.

### 6.8     SPECIAL DISTRIBUTION CONDITIONS.

(a)     With respect to Class 3, the Trust shall maintain sufficient funds to pay any potential reimbursements to Medicare and shall complete the following "Medicare Procedures": (i) the Trustee shall determine whether each Tort Claimant with a Date of Injury after December 5, 1980 is eligible to receive, is receiving, or has received Medicare benefits ("Medicare Eligible"); (ii) upon request, the Trust shall provide to a Settling Insurer or the Diocese information sufficient to allow them to perform their own SSA queries to the extent they wish to do so; (iii) in the event that one or more Tort Claimants with Dates of Injury after December 5, 1980 is/are identified as Medicare Eligible, the Trust shall complete a query to the CMS for each such Tort Claimant to determine whether any payment ("Conditional Payment") made pursuant to Section 1395y(b)(2)(B) of the MSPA has been made to or on behalf of that Tort Claimant arising from or relating to treatment for Abuse; (iv) if any Conditional Payment has been made to or on behalf of that Tort Claimant, the Trustee shall, within the time period called for by the MSPA, reimburse the appropriate Medicare Trust Fund for the appropriate amount, and submit the required information for that Tort Claimant to the appropriate agency of the United States government.

(b)     Compliance with the provisions of this Section 6.8 shall be a material obligation of the Trust in favor of the Settling Insurers under any settlement agreements

- 32 -

between any of those Settling Insurers and the Diocese, which authorizes funding to the Trust.

(c) The Trust shall defend, indemnify and hold harmless the Protected Parties and the Settling Insurers from any Medicare Claims, and any Claims related to the Trust's obligations under this Section.

**6.9 INVESTMENT POWERS; PERMITTED CASH EXPENDITURES**. All funds held by the Trust shall be invested in cash or short-term highly liquid investments that are readily convertible to known amounts of cash as more particularly described in the Trust Agreement. The Trustee may expend the cash of the Trust.

**6.10 REGISTRY OF BENEFICIAL INTERESTS**. To evidence the beneficial interest in the Trust of each holder of such an interest, the Trustee shall maintain a registry of beneficiaries.

**6.11 NON-TRANSFERABILITY OF INTERESTS**. Any transfer of an interest in the Trust shall not be effective until and unless the Trustee receives written notice of such transfer.

**6.12 TERMINATION**. The Trust shall terminate after its liquidation, administration, and distribution of the Trust Assets in accordance with the Plan and its full performance of all other duties and functions set forth herein or in the Trust Agreement. The Trust shall terminate no later than the sixth (6th) anniversary of the Effective Date.

**6.13 IMMUNITY; LIABILITY; INDEMNIFICATION**.

(a) Neither the Reorganized Debtor or its respective members, designees, or professionals, nor the Trustee or any duly designated agent or representative of the Trustee, nor their respective employees, shall be liable for the acts or omissions of any other member, designee, agent, or representative of such Trustee, except that the Trustee shall be liable for his/her/its specific acts or omissions resulting from such Trustee's misconduct, gross negligence, fraud, or breach of the fiduciary duty of loyalty. The Trustee may, in connection with the performance of his/her/its functions and in his/her/its sole and absolute discretion, consult with his/her/its attorneys, accountants, financial advisors, and agents, and shall not be liable for any act taken, omitted to be taken, or suffered to be done in accordance with advice or opinions rendered by such Persons. Notwithstanding such authority, the Trustee shall not be under any obligation to consult with his/her/its attorneys, accountants, financial advisors, or agents, and his/her/its determination not to do so shall not result in the imposition of liability on the Trustee unless such determination is based on the Trustee's recklessness, gross negligence, willful misconduct, or fraud.

(b) No recourse shall ever be had, directly or indirectly, against the Trustee personally, or against any employee, contractor, agent, attorney, accountant, or other professional retained in accordance with the terms of the Trust Agreement or the Plan by the Trustee, by legal or equitable proceedings or by virtue of any statute or otherwise, nor upon any promise, contract, instrument, undertaking, obligation, covenant or Trust Agreement whatsoever executed by the Trustee in implementation of the Trust Agreement or this Plan, it being expressly understood and agreed that all such liabilities, covenants, and Trust Agreements of the Trust whether in writing or otherwise, shall be enforceable

- 33 -

only against and be satisfied only out of the Trust Assets or such part thereof as shall under the term of any such Trust Agreement be liable therefore or shall be evidence only of a right of payment out of the Trust Assets. Notwithstanding the foregoing, the Trustee may be held liable for his/her/its recklessness, gross negligence, willful misconduct, knowing and material violation of law, or fraud; and if liability on such grounds is established, recourse may be had directly against the Trustee. The Trust shall not be covered by a bond.

**(c)**       The Trust shall defend, indemnify, and hold harmless the Trustee, his/her/its officers, directors, agents, representatives, and employees to the fullest extent that a corporation or trust organized under the laws of Minnesota is entitled to indemnify and defend its directors, trustees, officers, and employees against any and all liabilities, expenses, Claims, damages or losses incurred by them in the performance of their duties hereunder.

1.   Additionally, the Reorganized Debtor, and each of its respective agents, who was or is a party, or is threatened to be made a party to any threatened or pending judicial, administrative, or arbitrative action, by reason of any act or omission of the Trust or Trustee or respective agents, with respect to: (i) the Chapter 11 case and any act or omission undertaken by them prior to the commencement thereof, (ii) the assessment or liquidation of any Class 3 and Class 4B Claims, (iii) the administration of the Trust and the implementation of the Trust Distribution Plan, or (iv) any and all activities in connection with the Trust Agreement, shall be indemnified and defended by the Trust, to the same extent that a corporation or trust organized under the laws of Minnesota is from time to time entitled to indemnify and defend its own officers, directors, trustees, and employees, against reasonable expenses, costs and fees (including attorneys' fees and costs), judgments, awards, amounts paid in settlement and liabilities of all kinds incurred by the Debtor or Reorganized Debtor, and their respective professionals, officers, and directors, in connection with or resulting from such action, suit or proceeding, provided that, with respect to amounts paid in settlement, the Trust has approved such amounts in advance, such approval not to be unreasonably withheld.

2.   Reasonable expenses, costs, and fees (including attorneys' fees and costs) incurred by or on behalf of a Trustee, the Debtor, the Reorganized Debtor, and their respective agents in connection with any action, suit, or proceeding, whether civil, administrative, or arbitrative, from which they are entitled to be indemnified by the Trust, shall be paid by the Trust in advance of the final disposition thereof upon receipt of an undertaking, by or on behalf of such Trustee, the Debtor, the Reorganized Debtor, and their respective agents, to repay such amount in the event that it shall be determined ultimately by Non-Appealable Order that such Trustee, the Debtor, the Reorganized Debtor, and their respective professionals, officers, and directors is not entitled to be indemnified by the Trust.

**6.14    TREATMENT OF TORT CLAIMS**.

- 34 -

(a)    **TRUST LIABILITY**. On the Effective Date, the Trust shall automatically and without further act or deed assume: (i) all liability, if any, of the Protected Parties and Settling Insurers in respect of Channeled Claims, subject to section 16.4; (ii) the responsibility for preserving, managing and distributing Trust Assets pursuant to the Trust Distribution Plan; and (iii) the right to pursue the Transferred Insurance Interests.  The Trust does not assume any liabilities of the Diocese or Reorganized Debtor, in whole or in part, in regards to any Tort Claims that are not released, nor does it assume liabilities of the Settling Insurers with respect to any potential claims of Non-Settling Insurers, including claims for contribution, subrogation or indemnity.

(b)    **ASSESSMENT OF TORT CLAIMS**.

1.  Each Tort Claim will be assessed by the Tort Claims Reviewer in accordance with the Trust Distribution Plan to determine whether the Tort Claimant is entitled to a distribution under the Trust. The Diocese or the Reorganized Debtor shall reasonably cooperate with the Tort Claims Reviewer and the Trustee as requested by the Tort Claims Reviewer or the Trustee in connection with any inquiries by either in the administration of the Trust Distribution Plan, but shall not be required to act in any way that violates any duty to cooperate with a Non-Settling Insurer. Under no circumstance shall the Tort Claims Reviewer's review of a Class 3 or Class 4B Claim or a determination regarding a distribution thereon have any effect on the rights of a Non-Settling Insurer.

2.  Each Tort Claimant may elect, in lieu of assessment by the Tort Claims Reviewer, to have his Tort Claim treated pursuant to the convenience Claim process as provided by the Trust Distribution Plan ("Convenience Claim").

(c)    **ELECTION.** No later than thirty (30) days after a Tort Claimant is notified of the amount of the award under the Trust Distribution Plan, the Tort Claimant shall elect in writing one of the following treatment alternatives:

1.  Receiving a payment from the Trust in the amount determined by the Tort Claims Reviewer pursuant to the Trust Distribution Plan ("Distribution Plan Claim"). A Tort Claimant who elects to receive a distribution for a Distribution Plan Claim (a "Distribution Plan Claimant") must execute the release of all his or her Tort Claims against the Settling Insurers and the Protected Parties as set forth in Exhibit E or Exhibit F, as applicable, and waives his right to pursue a direct action under Minn. Stat. § 60A.08, subd. 6 or other applicable law against any Non-Settling Insurer; or

2.  Treatment of the Tort Claim as a Litigation Claim. A Tort Claimant electing treatment as a litigation claim ("Litigation Clamant") will have rights, to the extent set forth in the Trust Distribution Plan, to initial and future distributions from the Trust. Each Litigation Claimant also retains the right to: (i) pursue his or her Tort Claim for its full amount according to proof in order to determine the liability of any Protected Party for purposes of recovering against any Non-Settling Insurer that is or may be liable on the Tort Claim and (ii) proceed in a

- 35 -

direct action against any Non-Settling Insurer to the extent allowed by applicable law, including Minn. Stat. § 60A.08, subd. 6 (each a "Litigation Claim"). A Litigation Claimant's recovery on a Litigation Claim is limited as provided herein. The Settling Insurers shall not be obligated to defend or indemnify any Person in connection with a Litigation Claim and the Settling Insurers shall not have any other duties or obligations to any Person in connection with a Litigation Claim. Under no circumstances will a Tort Claimant or any other Person be able to recover any amount from a Settling Insurer in connection with a Litigation Claim.

**(d)    MODIFICATION OF TREATMENT ELECTION.**

1.  If a Tort Claimant does not make one of the elections in Section 5.2(c), the Tort Claimant will be treated as a Litigation Claimant.

2.  Upon written notice to the Trustee, subject to the Trustee's sole and absolute discretion, a Tort Claimant may rescind the election to be treated as a Litigation Claimant in favor of being treated as a Distribution Plan Claimant. Notwithstanding the foregoing, the Trustee shall consent to a Tort Claimant's rescission if such written notice of rescission is given prior to entry of an order of dismissal or a final judgment on the Litigation Claim in favor of a Protected Party.

3.  No later than ten (10) days after the Effective Date, a Tort Claimant may rescind the election to be treated as a Distribution Plan Claimant in favor of being treated as a Litigation Claimant.

**(e)    Legal Effect of Estimation of Claims and Distributions under Trust Distribution Plan.** The Tort Claims Reviewer's determinations are for estimation purposes only and shall not be a finding or fixing of the fact or liability or the amount payable for any Tort Claim with any binding legal effect, other than for distribution purposes by the Trust pursuant to the Trust Distribution Plan. The determination of qualification, estimation of claims, and payment of distributions is not an admission of liability by any Protected Party or the Trust with respect to any Tort Claims and has no res judicata or collateral estoppel effect on any Protected Party, the Trust, or any Non-Settling Insurer. Any payments by the Trust to Tort Claimants in connection with their Tort Claims is not a release of the Debtor nor an accord or novation of the Debtor's liability on account of the Class 3 and Class 4B Claims. The Trust's act of making a distribution is immaterial to, and shall not be construed as, a determination or admission of the Diocese's, the Reorganized Debtor's, or any other Protected Party's liability for, or damages with respect to, any Class 3 or Class 4B Claim. The determination of qualification, estimation of claims, and payment of distributions is not a settlement, release, accord, or novation of Class 3 or Class 4B Claims and cannot be used by any third party as a defense to any alleged joint liability. The determination of qualification, estimation of claims, and payment of partial distributions does not impair a Litigation Claimant's rights to obtain a judgment, including a judgment based on joint and several liability, against a Protected Party or any Non-Settling Insurer or other Person, for purposes of establishing the Protected Party's liability on the Tort

- 36 -

Claim, but any such judgment awarded to a Litigation Claimant will be reduced by the amount of distributions already paid by the Trust to such Litigation Claimant on his or her Tort Claim(s). Neither the Tort Claims Reviewer's review of a Tort Claim and determination of qualification, nor the Trust's estimation of claims or payment of distributions shall (1) constitute a trial, an adjudication on the merits, or evidence of liability or damages in any litigation with the Protected Parties, Non-Settling Insurers, or any other Person, or (2) constitute, or be deemed, a determination of the reasonableness of the amount of any Tort Claim, either individually or in the aggregate with other Tort Claims, in any coverage litigation with any Non-Settling Insurers. The Trust's estimation of claims and payment of distributions does not constitute a triggering event for liability under any Non-Settling Insurer Policy nor does it create an admission of the fact of liability or the extent of damages on behalf of the Protected Parties.

**(f)**     **RELEASE AND DISCHARGE OF TORT CLAIMS.** No Tort Claimant shall receive any payment on any award unless and until such Tort Claimant has executed the Release attached as <u>Exhibit E</u> or <u>Exhibit F</u> to this Plan, as applicable. Each Tort Claimant must execute a release of all claims against the Settling Insurers and must release all claims against the Diocese, the Reorganized Debtor, and the other Protected Parties that do not implicate insurance coverage under Non-Settling Insurer Policies. To preserve coverage under Non-Settling Insurer Policies, Tort Claimants specifically reserve, and do not release, any and all claims that they may have against the Protected Parties that implicate coverage under Non-Settling Insurer Policies, but recourse is limited to the proceeds of Non-Settling Insurer Policies and all other damages (including extra-contractual damages), awards, judgments in excess of policy limits, penalties, punitive damages and attorney's fees and costs that may be recoverable against any Non-Settling Insurers because of their conduct concerning insurance coverage for, or defense or settlement of, any Tort Claim, and any such judgments or awards will be handled in accordance with Sections 6.14(i) and (j).

**(g)**     The Tort Claims will not be released or enjoined as against the Protected Parties for any Abuse that may be covered under Non-Settling Insurer Policies until such claims are settled with the Protected Parties and their Non-Settling Insurers, or are fully adjudicated, resolved, and subject to Final Order, unless the Tort Claimant elects to proceed as a Distribution Plan Claimant.

With respect to all other Claims, except as otherwise provided in the Plan, the Debtor's liability on account of such Claims shall be discharged pursuant to the provisions of 1141(d). The Tort Claimants' release, in whole or in part, of their Class 3 or Class 4B Claims will be pursuant to the principles set forth in *Pierringer v. Hoger*, 124 N.W.2d 106 (Wis. 1963) and *Frey v. Snelgrove*, 269 N.W.2d 918 (Minn. 1978). The Class 3 and Class 4B Claimants will expressly reserve their rights against other Persons (other than Protected Parties), including joint tortfeasors, who will remain severally liable on any Class 3 and Class 4B Claims. Any Person (other than a Protected Party) that is, or was alleged to be a joint tortfeasor with any of the Protected Parties in connection with the Abuse that forms the basis of a Tort Claim shall not be liable for any Protected Party's share of causal liability or fault.

- 37 -

(h)    **TRUST RIGHTS AGAINST NON-SETTLING INSURERS**. The Trust retains the right to pursue Non-Settling Insurers for the Diocese's, the Reorganized Debtor's, and any other Protected Party's liability to Tort Claimants regardless of whether the Tort Claimants elect treatment as Distribution Plan Claimants or Litigation Claimants.

(i)    **DISTRIBUTIONS TO TORT CLAIMANTS**.  A Tort Claimant electing to be treated as a Distribution Plan Claimant, and who the Tort Claims Reviewer determines to be entitled to a distribution, will receive a distribution from the Trust in the amount(s) and at the time(s) provided for in the Trust Distribution Plan. Any payment on a Tort Claim constitutes payment for damages on account of personal physical injuries or sickness arising from an occurrence, within the meaning of Section 104(a)(2) of the Internal Revenue Code of 1986, as amended. For the avoidance of doubt, Tort Claimants' recovery on their Class 3 and Class 4B Claims shall be limited to the distributions they are entitled to, if any, from the Trust under the Trust Distribution Plan, and they shall not be entitled to collect personally or otherwise any additional amounts whatsoever on their Tort Claims from any Protected Party or any Protected Party's assets, or from any Settling Insurers or Settling Insurers' assets, even if they are denied a distribution pursuant to the Trust Distribution Plan. For the avoidance of doubt, the Unknown Tort Claims Reserve Fund shall be the sole source of payment to Class 4B Claimants on account of Class 4B Claims. Tort Claimants' recovery on their Class 4B Claims shall be limited to the distributions they are entitled to, if any, under the Trust Distribution Plan.

(j)    **LITIGATION CLAIMS**. If necessary in the Trustee's discretion, the Trustee may establish a reserve for payment of a claim held by a Litigation Claimant in the amount that would have been awarded to the Litigation Claimant if such Claimant had elected to proceed under the Trust Distribution Plan. The creation and existence of this reserve is not a settlement, release, accord or novation of the Litigation Claims and cannot be used by any third party as a defense to any alleged joint liability with any Protected Party. For avoidance of doubt, the creation and existence of this reserve does not affect, diminish or impair a Litigation Claimant's rights to collect a judgment, including a judgment based on joint and several liability, against any Non-Settling Insurer or Person that is not a Protected Party, except as expressly provided herein. The Trustee may establish one reserve for all of the Litigation Claims but no Litigation Claimant shall have any interest in any portion of the reserve in excess of the amount determined for that Litigation Claimant under the Trust Distribution Plan, and then only in the event that the Litigation Claimant prevails on his Litigation Claim. Neither the Trust's payment of, or reserving monies on account of, the Tort Claims nor the Tort Claims Reviewer's review of a Tort Claim, shall: (1) constitute a trial, an adjudication on the merits, or evidence of liability or damages in any litigation with the Protected Parties, Non-Settling Insurers, or any other Person, or (2) constitute, or be deemed, a determination of the reasonableness of the amount of any Tort Claim, either individually or in the aggregate with other Tort Claims, in any coverage litigation with any Non-Settling Insurers.

1.    In the event that a Litigation Claimant obtains a judgment against any Protected Party and no Non-Settling Insurer is implicated by the Litigation Claim, the judgment will be satisfied by the Trust in the amount of such judgment against

- 38 -

such Protected Party, up to the amount of any reserve set for that Litigation Claimant's Litigation Claim plus an additional $1,000.

2.   In the event that any Non-Settling Insurer is implicated by the Litigation Claim, and either a settlement is achieved with such Non-Settling Insurer(s) as to such Litigation Claim or the Litigation Claimant obtains a judgment against a Protected Party and either the Trust or the Litigation Claimant obtains a recovery from any such Non-Settling Insurer(s) as to such judgment, then such recovery shall be turned over to the Trust for handling pursuant to this Plan. Such recovery shall first go to reimburse the Trust or the Litigation Claimant, as the case may be, for all costs (including attorneys' fees) incurred in connection with pursuing the recovery against the Non-Settling Insurer(s) relating to the Litigation Claim, so long as such amounts are reasonable and were agreed to in advance by the Trust. Any amount remaining shall be distributed in a manner consistent with the Trust Distribution Plan.

(k)   The Trust's payment to a Litigation Claimant that has recovered a judgment or settlement does not affect, diminish or impair the Trust's right to collect the policy proceeds respecting such Class 3 or Class 4B Claim from any Non-Settling Insurer, nor does it affect, diminish or impair the Trust's right to bring any claims against the Non-Settling Insurer that have been assigned to the Trust or that belong to the Trust by operation of law.

(l)   If a Non-Settling Insurer has refused to defend a Protected Party with respect to any Litigation Claim, the Trust will advance or reimburse the Protected Party for reasonable and necessary attorneys' fees and other expenses incurred in defending the Litigation Claim. If any Non-Settling Insurer has refused to indemnify a Protected Party with respect to any settlement or judgment of a Litigation Claim, the Trust will advance or reimburse the Protected Party for any judgment or settlement incurred by the Protected Party on such Litigation Claim incurred, provided the Trust has consented in advance to any such settlement, such consent not to be withheld unreasonably. If all insurers that could potentially have responsibility to defend and/or indemnify for a Tort Claim have denied coverage, that Litigation Claimant  must sign a covenant not to execute against  that Protected Party's assets (other than Non-Settling Insurer Policies or proceeds or other assigned rights or interests), under which the Litigation Claimant will agree to seek recovery only from Non-Settling Insurers for any judgment the Litigation Claimant obtains against any Protected Party, in exchange for a stipulated judgment and assignment of insurance rights, as authorized by law. If any judgment on any Tort Claim is within the retention of any Non-Settling Insurer Policy, and all insurers have denied indemnity for such judgment, then the Trust will fund the judgment. The Trust's advancement or reimbursement of the Protected Party for such defense costs and/or judgment or settlement payments, and any distributions made by the Trust to the Litigation Claimant and other Class 3 claimants, will not affect, diminish or impair the Trust's right to bring any claims against any Non-Settling Insurers for refusing to defend and/or indemnify the Protected Party, including but not limited to claims for payment of policy proceeds, bad faith, wrongful failure to settle, and extra-contractual damages authorized by law.

- 39 -

(m)     As of the Effective Date, the Trustee will be deemed to have the right to join or intervene into the Insurance Coverage Adversary Proceeding and to pursue recoveries against any Non-Settling Insurers.

(n)     Nothing in the Plan, Confirmation Order or any Plan Document shall impose any obligation on any Non-Settling Insurer to provide a defense for, settle, or pay any judgment with respect to, any Tort Claim, or grant to any Person any right to sue any Non-Settling Insurer directly, in connection with a Tort Claim. All such rights with respect to Non-Settling Insurers shall be determined by and in accordance with the terms of the Non-Settling Insurer Policies and with applicable non-bankruptcy law. Nothing provided for in this Plan, the Trust Agreement, or the Trust Distribution Plan constitutes an endorsement of a Class 3 or Class 4B Claimant's right to pursue their remedies under Minn. Stat. § 60A.08.

(o)     If the Litigation Claimant fails to prosecute his Litigation Claim to final judgment or settlement of the claim, or a Final Order is entered finding that no Protected Party has liability to such Tort Claimant on account of his Tort Claim, any reserve maintained by the Trust on account of such Tort Claim shall revert to the non-reserved assets of the Trust and the Litigation Claimant shall have no recourse against the Trustee, the Trust, any Protected Party, or any Settling Insurer.

(p)     **OBJECTIONS AND LITIGATION AFTER THE EFFECTIVE DATE**.

1.  Regardless of whether a Class 3 or Class 4B claimant elects treatment as a Distribution Plan Claimant or a Litigation Claimant, the Trustee may object to that Class 3 or Class 4B claimant's Claim.  The Trustee's right to object to a Class 3 or Class 4B claimant's Claim after the Effective Date will not affect or impair any right the Diocese, the Reorganized Debtor, other Protected Parties, and/or Non-Settling Insurers may have under the Non-Settling Insurer Policies or applicable law to object to such Class 3 and Class 4B Claims.

2.  The Protected Parties will comply with all obligations under the Non-Settling Insurer Policies and applicable law. The Trustee, to the extent required by the Non-Settling Insurer Policies implicated by such Tort Claims and applicable law, shall also cooperate with the Non-Settling Insurer in the defense of such judicial proceeding contemplated in Section 6.13(p)(1). In the event of a dispute between a Non-Settling Insurer and the Trustee regarding whether the Trustee must allow such Non-Settling Insurer to control the defense of such Tort Claim, or the extent of anyone's duty to cooperate, such dispute shall be resolved by the Bankruptcy Court and the Bankruptcy Court shall retain jurisdiction over such disputes. In the event the Non-Settling Insurer fails to seek a determination from the Bankruptcy Court over the existence and extent of the Trustee's obligation to cooperate, or the Non-Settling Insurer's right to control the defense, the Non-Settling Insurer shall be deemed to have waived such claim.

(q)     **CLAIM WITHDRAWAL**. A Tort Claimant may withdraw his or her Tort Claim at any time on written notice to the Trustee. If withdrawn, (a) the Tort Claim will be

CORE/3515029.0002/164850489.1
Bodman_17458003_4

withdrawn with prejudice and may not be reasserted, and such Tort Claimant shall still be subject to Section 13.2 of the Plan, the Channeling Injunction, and the Supplemental Settling Insurer Injunction as provided by this Plan; and (b) any reserve maintained by the Trust on account of such Tort Claim shall revert to the Trust as a Trust Asset for distribution in accordance with the Plan and Trust Distribution Plan. Each Protected Party, Non-Settling Insurer, Settling Insurer, and the Trust shall retain any and all defenses that may exist in respect to such Tort Claim.

## ARTICLE VII
## SETTLING INSURERS

**7.1    INSURANCE SETTLEMENT AGREEMENTS**. Insurance Settlement Agreements approved by the UCC and the Court shall automatically be, and hereby are, incorporated by reference and made part of the Plan as if set forth fully herein.  Upon the Confirmation Order becoming a Non-Appealable Order, such Insurance Settlement Agreements are fully binding on the Trust, Protected Parties, the Reorganized Debtor, the UCC, Settling Insurers, the Tort Claimants, and parties in interest, and any of the foregoing Persons' successors. The Insurance Settlement Agreements shall survive the confirmation, effectiveness, and consummation of the Plan.

**7.2    SALE FREE AND CLEAR OF INTERESTS OF SETTLING INSURER POLICIES**. To the extent provided in each of the Insurance Settlement Agreements and effective on the later of (i) the Effective Date of the Plan or (ii) the payment by the Settling Insurer of the settlement payment(s) due under such agreement, each and every Settling Insurer Policy shall be sold to the issuing Settling Insurer pursuant to Sections 105, 363, and 1123 of the Bankruptcy Code, free and clear of all liens, Claims and Interests of the Diocese, Diocesan Parishes, and Tort Claimants.  As set forth in the Insurance Settlement Agreements and the corresponding Approval Orders, the Settling Insurers are good faith purchasers of such insurance policies and certificates of insurance within the meaning of Section 363(m) of the Bankruptcy Code, the consideration exchanged constitutes a fair and reasonable settlement of the Parties' disputes and of their respective rights and obligations relating to each such Settling Insurer Policy and constitutes reasonably equivalent value, the releases in such Insurance Settlement Agreements and the policy buyback comply with the Bankruptcy Code and applicable non-bankruptcy laws, and each such Settling Insurer Policy shall be terminated and be of no further force and effect with the issuing Settling Insurer having fully and completely performed any and all obligations under each such Settling Insurer Policy, including any performance owed to the Diocese and Diocesan Parishes, and all limits of liability of each such Settling Insurer Policy shall be exhausted.

**7.3    RESOLUTION OF CLAIMS INVOLVING SETTLING INSURERS**. The Confirmation Order shall provide that within 20 days of the Effective Date, the Diocese and the Settling Insurers shall effect dismissal with prejudice of their Claims against each other in the Insurance Coverage Adversary Proceeding, and shall be prohibited from pursuing the claims therein against each other at any time, with each side to bear its own fees and costs. The Diocese shall not be required to dismiss the Insurance Coverage Adversary Proceeding as against any Non-Settling Insurers.

**7.4    THE SETTLING INSURERS' PAYMENTS**. The Settling Insurers will pay to the Trust the sums set forth in their respective Insurance Settlement Agreements within the time set forth in their respective Insurance Settlement Agreements.

**7.5    JUDGMENT REDUCTION**.

(a)    In any proceeding, suit, or action, including the Insurance Coverage Adversary Proceeding, to recover or obtain insurance coverage or proceeds from a Non-Settling Insurer for a Tort Claim, the following shall apply:

(1) If a Non-Settling Insurer has asserted, asserts, or could assert, any Contribution Claim against a Settling Insurer, then any judgment or award obtained by any Protected Party, the Trust, or a Tort Claimant against such Non-Settling Insurer shall be automatically reduced by the amount, if any, that such Settling Insurer would have been liable to pay such Non-Settling Insurer as a result of its Contribution Claim, so that the Contribution Claim is thereby satisfied and extinguished entirely ("Reduction Amount"). In any action by a Protected Party, the Trust or a Tort Claimant against a Non-Settling Insurer to obtain insurance coverage or proceeds for a Tort Claim, where the Settling Insurers are not parties, the Non-Settling Insurer's Contribution Claim may be asserted as a defense, and, to the extent the Non-Settling Insurer' Contribution Claim against a Settling Insurer is determined to be valid by the court presiding over such action, the liability of the Non-Settling Insurer shall be reduced dollar for dollar by the amount so determined.

In the event that such a reduction is not made as described above, then any Contribution Claim by any Non-Settling Insurer against any Settling Insurer shall be reduced by the Reduction Amount, as determined by the court or arbitrator(s) in which such Contribution Claim is filed. No Settling Insurer shall be required to answer or otherwise respond to a complaint alleging a Contribution Claim against such Settling Insurer until such Reduction Amount is determined by such court or arbitrator(s).   If, notwithstanding the foregoing, a court refuses to reduce the liability of the Non-Settling Insurer, then once the order establishing the Settling Insurer's liability for the Contribution Claim is a Final Order, the Trust shall promptly indemnify and hold harmless the Settling Insurer for such amount of such Contribution Claim.

(2) If a Protected Party, the Trust or Tort Claimant and a Non-Settling Insurer enter into an agreement settling one or more Tort Claims, such agreement shall include a provision whereby such Non-Settling Insurer releases Contribution Claims against all Settling Insurers so long as the Settling Insurers release contribution claims against such Non-Settling Insurer.   If such settlement agreement fails to include such a release provision, then any settlement amount in such settlement agreement shall be deemed automatically reduced by the Reduction Amount. In such event, the Non-Settling Insurer shall obtain a finding from the applicable court or arbitrator(s) of the Reduction Amount.   If (a) the settlement agreement was entered into without litigation or arbitration such that no judge or arbitrator can determine the Reduction Amount, or (b) such a reduction is not

- 42 -

otherwise made as described above, then any Contribution Claim by any Non-Settling Insurer against any Settling Insurer shall be reduced by the Reduction Amount, as determined by the court or arbitrator(s) in which such Contribution Claim is filed.

(b)    As provided in the Insurance Settlement Agreements, each Settling Insurer agrees that it will not pursue any contribution claim that it might have against any other insurer.

**7.6    FURTHER ASSURANCES; NON-MATERIAL MODIFICATIONS**. From and after the Effective Date, the Reorganized Debtor and the Settling Insurers shall be authorized to enter into, execute, adopt, deliver, or implement all notes, contracts, security agreements, instruments, releases, and other agreements or documents necessary to effectuate or memorialize the settlements contained in this Article without further order of the Bankruptcy Court. Subject to the reservation of consent rights in Sections ___ and ___ the Reorganized Debtor and the Settling Insurers may make technical or immaterial alterations, amendments, modifications, waivers, or supplements to the terms of any Insurance Settlement Agreement. A class of Claims that has accepted the Plan shall be deemed to have accepted the Plan, as altered, amended, modified, or supplemented under this Section, if the proposed alteration, amendment, modification, or supplement does not materially and adversely change the treatment of the Claims within such class. An order of the Bankruptcy Court approving any amendment or modification made pursuant to this Section shall constitute an order in aid of consummation of the Plan and shall not require the re-solicitation of votes on the Plan.

**7.7    INDEMNIFICATION OBLIGATIONS**.

(a)    With respect to the indemnification obligations of the Trust or the Reorganized Debtor, including with respect to Tort Claims made by Persons over whom the Diocese or Diocesan Parishes do not have control, including any other Person who asserts Tort Claims against or right to coverage under the Settling Insurer Policies, the Settling Insurers may undertake the defense of any Claim on receipt of such Claim without affecting such indemnification obligations. The Settling Insurers shall notify the Trust or Reorganized Debtor, as applicable, as soon as practicable of any such Claims identified in this section and of their choice of preferred counsel. The obligation of the Trust or Reorganized Debtor, as applicable, to indemnify the Settling Insurer under this Section 7.7 shall not exceed the Settlement Amount set forth in the Insurance Settlement Agreement as actually paid by the corresponding Settling Insurer. In defense of any such Claims, the Settling Insurers may settle or otherwise resolve a Claim consistent with the terms of this Plan and with the prior consent of the indemnifying party, which consent shall not be unreasonably withheld. Any such indemnification obligations with respect to Tort Claims will be channeled to and paid by the Trust.

**7.8    WAIVER/ CONSENT/ FEES**.

(a)    In consideration of the releases and Channeling Injunction, the Supplemental Settling Insurer Injunction, and other covenants set forth herein, subject to the occurrence of the Effective Date, each of the Protected Parties:

- 43 -

1. Irrevocably and unconditionally, without limitation, releases, acquits, forever discharges, and waives any Claims and/or Interests it has or might have now or in the future against the other Protected Parties and the Settling Insurers with respect to any contribution, subrogation, indemnification, or other similar Claim arising from or relating to released Tort Claims covered or alleged to be covered under the Settling Insurer Policies, and any Settling Insurer Policies; and

2. Consents to the sale of the Protected Parties' Claims and/or Interests, if any, in the Settling Insurer Policies in accordance with the Insurance Settlement Agreements and to the contribution of the proceeds from such sale and settlement to the Trust, as provided in the Plan.

**(b)**    Nothing in this Section 7.8 shall be construed to bar either (i) a Claim based on Abuse against a Person who is not a Protected Party or a Settling Insurer or (ii) a Claim by such Person for insurance coverage in connection with a Claim described in the foregoing subsection (i) under an insurance policy other than the Settling Insurer Policies.

## 7.9    DEBTOR WAIVER AND RELEASE OF CLAIMS.

In consideration of any payments to be made by the Settling Insurers and other consideration provided by each Settling Insurer, upon payment by the Settling Insurers of their respective settlement amounts under the corresponding Insurance Settlement Agreements, the Diocese irrevocably and unconditionally, without limitation, releases, acquits, forever discharges, and waives any Interests it has or might have now or in the future (i) under the Settling Insurer Policies to the extent those Settling Insurer Policies are bought back under any Insurance Settlement Agreement and this Plan; (ii) against the Settling Insurers with respect to any Tort Claim; and (iii) against the other Protected Parties with respect to any Channeled Claim. For the avoidance of doubt, the Diocese irrevocably and unconditionally, without limitation, releases, acquits, forever discharges, and waives any Interests it has or might have now or in the future under the Settling Insurer Policies issued by, subscribed to, or underwritten by certain Underwriters at Lloyd's, London, and certain London Market Insurance Companies (collectively, "London Market Insurers") and/or Interstate Fire & Casualty ("Interstate"), which are bought back under the terms of Insurance Settlement Agreements and this Plan.

## 7.10    SUPPLEMENTAL SETTLING INSURER INJUNCTION

**(a)**    **Supplemental Injunction Preventing Prosecution of Claims Against Settling Insurers. Pursuant to Sections 105(a) and 363 of the Bankruptcy Code and in consideration of the undertakings of the Settling Insurers pursuant to the Insurance Settlement Agreements, including the Settling Insurers' purchases of insurance policies or Interests in insurance policies free and clear of all interests pursuant to Section 363(f) of the Bankruptcy Code:**

- 44 -

(b)      Any and all Persons who have held, now hold or who may in the future hold any Interests (including all debt holders, all equity holders, governmental, tax and regulatory authorities, lenders, trade and other creditors, Tort Claimants, perpetrators, and all others holding Interests of any kind or nature whatsoever, including those Claims released or to be released pursuant to the Insurance Settlement Agreements) against any of the Settling Insurers, or any other Person covered or allegedly covered under the Settling Insurer Policies, including Contribution Claims, Extra-Contractual Claims, and Indirect Claims, are hereby permanently stayed, enjoined, barred, and restrained from taking any action, directly or indirectly, to assert, enforce or attempt to assert or enforce any such Interest against the Settling Insurers or the Settling Insurer Policies:

1. Commencing or continuing in any manner any action or other proceeding against the Settling Insurers or the property of the Settling Insurers;

2. Enforcing, attaching, collecting, or recovering, by any manner or means, any judgment, award, decree or order against the Settling Insurers or the property of the Settling Insurers;

3. Creating, perfecting, or enforcing any lien of any kind against the Settling Insurers or the property of the Settling Insurers;

4. Asserting or accomplishing any setoff, right of indemnity, subrogation, contribution, or recoupment of any kind against any obligation due the Settling Insurers or the property of the Settling Insurers; and

5. Taking any action, in any manner, in any place whatsoever, that does not conform to, or comply with, the provisions of the Plan.

For the avoidance of doubt, this Settling Insurer Injunction bars only the above-referenced actions against the Settling Insurers or the Settling Insurer Policies. The foregoing injunctive provisions are an integral part of this Plan and are essential to its implementation.

## ARTICLE VIII
## NON-SETTLING INSURERS

### 8.1    PRESERVATION OF RIGHTS AND OBLIGATIONS.

(a)      In the event: (i) a Tort Claim is pursued in state or federal court by a Tort Claimant against a Protected Party or Non-Settling Insurer, or (ii) the Trust asserts an objection to or otherwise seeks a determination of liability as to a Tort Claim, then the Protected Parties, the Trust and each Non-Settling Insurer shall retain any and all legal and factual defenses that may exist in respect to such Tort Claim and, except as set forth in this Section 8.1,  all coverage defenses. The rights, duties and obligations of each Non-Settling Insurer under the Non-Settling Insurer Policies with respect to Tort Claims are not impaired, altered, reduced, or diminished by: (a) the discharge in bankruptcy of the Debtor; (b) any distribution to Tort Claimants pursuant to this Plan, the Trust Agreement, and the Trust Distribution Plan; (c) the transfer of the Protected Parties' Transferred Insurance Interests; (d) protections granted to Protected Parties and Settling Insurers under the

- 45 -

Plan; or (e) any other provision of this Plan, the Trust Agreement, or the Trust Distribution Plan. Non-Settling Insurers retain any defenses that they would be able to raise if the claim for coverage were brought by the Diocese, the Reorganized Debtor, or any other Protected Party, except any defense (1) related to the transfer of Transferred Insurance Interests to the Trust; (2) effected by operation of bankruptcy law as a result of confirmation; or (3) based on facts determined by the Bankruptcy Court in connection with the confirmation.

(b)     The rights and obligations of the Diocese, the Reorganized Debtor, and other insureds and every Non-Settling Insurer under the terms of the Non-Settling Insurer Policies and at law shall not be affected by the assessment of any Tort Claim (including without limitation any duty of an insured to cooperate), and shall be treated as if the Tort Claim had never been assessed for distribution purposes by the Trust.

(c)     Each Non-Settling Insurer shall be entitled to all rights as are provided under the terms of its Non-Settling Insurer Policies as if the Tort Claim had never been assessed for distribution purposes by the Trust.

(d)     After the Effective Date, upon consent of the Trustee, a Person may become a Settling Insurer if the Bankruptcy Court, after notice and hearing, approves the agreement between the Person and the Trustee. After the Effective Date, the Trustee shall have the exclusive authority to seek approval of such agreement. Upon the Bankruptcy Court's entry of a Final Order approving such agreement, Exhibit N shall be amended by the Trustee to include such Person. Any such Person shall have all of the rights, remedies and duties of a Settling Insurer notwithstanding that such Person originally may have been a Non-Settling Insurer under any provision of the Plan. Such rights, remedies and duties shall include the terms and conditions of the Channeling Injunction and Supplemental Settling Insurer Injunction. The Bankruptcy Court's retained jurisdiction to approve an agreement under this Article shall include jurisdiction to determine the adequacy of notice of a motion to approve such an agreement.

8.2     **ESTIMATIONS/ASSESSMENTS ARE NOT BINDING**. Estimations of Class 3 and Class 4B Claims for purposes of voting, and the determination of qualification, assignment of points, and payment of distributions of Tort Claims under the Trust Distribution Plan:

(a)     Shall not (i) constitute an admission of liability by any Person with respect to such Claims; (ii) have any res judicata or collateral estoppel effect on any Person; (iii) constitute a settlement, release, accord, satisfaction, or novation of such Claims; (iv) be used by any third-party as a defense to any alleged joint liability; or (v) otherwise prejudice any rights of the Trust, Protected Parties, Settling Insurers, Non-Settling Insurers, and Claimants in all other contexts or forums;

(b)     Shall be without prejudice to any and all rights of the Trust, the Diocese, the Reorganized Debtor, other Protected Parties, the Non-Settling Insurers and Tort Claimants in all other contexts and forums and shall not be deemed to be a determination of liability of the Diocese or a determination of whether, or the extent to which, such claim is covered under any Non-Settling Insurer Policy. The fact that a claim has been estimated for distribution purposes has no res judicata or collateral estoppel effect and is not a binding determination on any issue or the creation of a liquidated non-bankruptcy claim. The

- 46 -

assessment by the Tort Claims Reviewer under the Trust Distribution Plan shall have no effect upon any "no action" provisions contained in any Non-Settling Insurer Policy to the extent any such provision remains enforceable by a Non-Settling Insurer under applicable law. Rather, the liability of the Diocese, the Reorganized Debtor, or any other Protected Party and the amount owed by the Diocese, the Reorganized Debtor, other Protected Parties, and any Non-Settling Insurer on any Class 3 or Class 4B Claim, shall be determined by: (i) the amount of any court judgment obtained by the Class 3 or Class 4B claimant; or (ii) through a settlement agreement either to which such Non-Settling Insurer has consented or, if such Non-Settling Insurer has not consented, a settlement agreement which does not breach any duty of the Trust, Trustee, Diocese, the Reorganized Debtor, or any other Protected Party to the Non-Settling Insurer under the respective Non-Settling Insurer Policy or applicable law.

**8.3    RIGHTS UNDER INSURANCE SETTLEMENT AGREEMENTS.** The rights of the parties under any Insurance Settlement Agreements shall be determined exclusively under the applicable Insurance Settlement Agreements and those provisions of the applicable Approval Order approving such Insurance Settlement Agreements, the Plan and the Confirmation Order.

**8.4    THE PLAN IS NEUTRAL AS TO NON-SETTLING INSURER POLICIES**. For the avoidance of doubt, solely with respect to the Non-Settling Insurers, nothing in the Plan, the Trust Agreement, the Trust Distribution Plan, the Confirmation Order, or any other order of the Bankruptcy Court to the contrary (including any other provision that purports to be preemptory or supervening or grants a release): (i) shall affect, impair, or prejudice the rights and defenses of any Non-Settling Insurer, any Protected Party, the Trust, or any other insureds under Non-Settling Insurer Policies in any manner, including any defenses to any claim for insurance; (ii) shall constitute a settlement or resolution of any Protected Party's liability to a Tort Claimant; (iii) shall in any way operate to, or have the effect of, impairing or having any res judicata, collateral estoppel, or other preclusive effect on, any party's legal, equitable, or contractual rights or obligations under any Non-Settling Insurer Policy; or (iv) shall otherwise determine the applicability or nonapplicability of any provision of any Non-Settling Insurer Policy and any such rights and obligations shall be determined under the Non-Settling Insurer Policy and applicable law.

**8.5    THE DIOCESE'S OBLIGATIONS SURVIVE**. Notwithstanding the transfer of the Transferred Insurance Interests to the Trust, the Diocese shall not be relieved of its duties or obligations under any Non-Settling Insurer Policies (except as provided to the contrary in any subsequent Insurance Settlement Agreement), and shall continue to perform such duties as required by such Non-Settling Insurer Policies and applicable law. If the Trust asserts any claim that the Diocese has breached such duties or obligations under the Non-Settling Insurer Policies resulting in a loss of coverage, it shall give the Diocese notice and an opportunity to cure any alleged breach, and in any event, the Diocese shall not be liable for any alleged breach resulting in a loss of coverage except to the extent that (i) the breach relates to post-Effective Date conduct of the Diocese, and (ii) the Diocese willfully or intentionally fails to comply with its continuing

obligations under the Non-Settling Insurer Policies.  In addition, any such claim will not be automatically allowed; the Diocese will have the right to defend against such claim.

**8.6     TRUST POWERS WITH RESPECT TO TORT CLAIMS AND NON-SETTLING INSURERS**.

**(a)**     A Tort Claimant or the Trust, as applicable, may enter into a settlement of a Tort Claim allowed by applicable non-bankruptcy law including but not limited to settlements consistent with *Miller v. Shugart*, 316 N.W.2d 729 (Minn. 1982) or *Drake v. Ryan*, 514 N.W.2d 785 (Minn. 1994), and may enter into an arrangement with Tort Claimant's counsel providing such counsel will receive reasonable compensation from any recovery from a Non-Settling Insurer as provided in Section 4.3

**(b)**     The Trustee may use the Trust Assets to prosecute litigation against the Non-Settling Insurers.

**(c)**     If the Trust successfully resolves an insurance coverage dispute with a Non-Settling Insurer or otherwise receives a recovery of insurance proceeds relating to Tort Claim(s) from a Non-Settling Insurer, such proceeds shall become Trust Assets available to pay, and shall increase the amount available to pay, Tort Claims, pursuant to the Trust Distribution Plan. In such event, and on a periodic basis accumulating all such recoveries, the Trust shall make supplemental payments to Tort Claimants in accordance with the Trust Agreement and Trust Distribution Plan.

**ARTICLE IX**
**INSURANCE POLICIES**

**9.1     CONTINUATION OF INSURANCE POLICIES**. Except to the extent any Diocese Entity Insurance Policies are bought back as set forth in and pursuant to any Insurance Settlement Agreements or as otherwise provided by the terms of the Plan, all Diocese Entity Insurance Policies (including, without limitation, any Non-Implicated Insurance Policies) shall, as applicable, either be deemed assumed by the Reorganized Debtor pursuant to Sections 365, 1123(a)(5)(A), and 1123(b)(2) of the Bankruptcy Code to the extent such Diocese Entity Insurance Policy is or was an executory contract of the Diocese, or continued in accordance with its terms pursuant to Section 1123(a)(5)(A) of the Bankruptcy Code, to the extent such Diocese Entity Insurance Policy is not an executory contract of the Diocese, such that each of the parties' contractual, legal, and equitable rights under each such Diocese Entity Insurance Policy shall remain unaltered. All known Diocese Entity Insurance Policies are listed on Exhibit I. To the extent that any or all such Diocese Entity Insurance Policies are considered to be executory contracts, then the Plan shall constitute a motion to assume such Diocese Entity Insurance Policies in connection with the Plan. Subject to the occurrence of the Effective Date, the Confirmation Order shall approve such assumption pursuant to §§ 365(a), 1123(a)(5)(A), and 1123(b)(2) of the Bankruptcy Code and include a finding by the Bankruptcy Court that each such assumption is in the best interest of the Debtor, the Estate, and all parties in interest in this Chapter 11 case. Unless otherwise determined by the Bankruptcy Court pursuant to an order which becomes a Non-Appealable Order or agreed to by the parties thereto prior to the Effective Date, no payments are required to cure any defaults of the Diocese existing as of the Effective Date with respect to any

- 48 -

Diocese Entity Insurance Policy. The Diocese reserves the right to seek rejection of any Diocese Entity Insurance Policy or other available relief prior to the Effective Date.

**9.2    THE PLAN IS NEUTRAL AS TO NON-IMPLICATED INSURANCE POLICIES**. For the avoidance of doubt, solely with respect to the Non-Implicated Insurer, nothing in the Plan, the Trust Agreement, the Trust Distribution Plan, the Confirmation Order, or any other order of the Bankruptcy Court to the contrary (including any other provision that purports to be preemptory or supervening or grants a release): (i) shall affect, impair, or prejudice the rights and defenses of the Non-Implicated Insurer, any Protected Party, or any other insureds under Non-Implicated Insurance Policies in any manner, including any defenses to any claim for insurance; (ii) shall constitute a settlement or resolution of any Protected Party's liability to a Class 4A Claimant; (iii) shall in any way operate to, or have the effect of, impairing or having any res judicata, collateral estoppel, or other preclusive effect on, any party's legal, equitable, or contractual rights or obligations under any Non-Implicated Insurance Policy; or (iv) shall otherwise determine the applicability or nonapplicability of any provision of any Non-Implicated Insurance Policy and any such rights and obligations shall be determined under the Non-Implicated Insurance Policy and applicable law.

## ARTICLE X
## PROCEDURES FOR GENERAL CLAIMS ADMINISTRATION

**10.1    RESERVATION OF RIGHTS TO OBJECT TO NON-TORT CLAIMS**. Unless a Claim is expressly described as an allowed Claim pursuant to or under the Plan, or otherwise becomes an allowed Claim prior to the Effective Date, upon the Effective Date, the Reorganized Debtor or the Trustee, as applicable, shall be deemed to have a reservation of any and all rights, Interests, and objections of the Diocese, the UCC, or the Estate to any and all Claims and motions or requests for the payment of or on account of Claims, whether administrative expense, priority, secured, or unsecured, including any and all rights, Interests and objections to the validity or amount of any and all alleged Claims, Liens, and Interests, whether under the Bankruptcy Code, other applicable law, or contract. The failure to object to any Claim in this Chapter 11 case shall be without prejudice to the Reorganized Debtor's or the Trustee's, as applicable, right to contest or otherwise defend against such Claim in the Bankruptcy Court as set forth in this Section when and if such Claim is sought to be enforced by the holder of such Claim.

**10.2    OBJECTIONS TO NON-TORT CLAIMS**. Prior to the Effective Date, the Diocese shall have the authority to pursue any objection to the allowance of any non-Tort Claim. From and after the Effective Date, the Reorganized Debtor will retain responsibility for administering, disputing, objecting to, compromising, or otherwise resolving and making distributions, if any, with respect to non-Tort Claims (including those Claims that are subject to objection by the Diocese as of the Effective Date); provided, however, that nothing in this Section shall affect the right of any party-in-interest (including the Reorganized Debtor and the Trustee) to object to any non-Tort Claim to the extent such objection is otherwise permitted by the Bankruptcy Code, the Bankruptcy Rules, and this Plan. Unless otherwise provided in the Plan or by order of the Bankruptcy Court, any objections to non-Tort Claims will be filed and served not later than thirty (30) days after the later of: (i) the Effective Date, or (ii) the date such Claim is filed. Such deadline or any Bankruptcy Court approved extension thereof, may be extended upon request by the Reorganized Debtor by filing a motion without any requirement to provide notice

- 49 -

to any Person, based upon a reasonable exercise of the Reorganized Debtor's business judgment. A motion seeking to extend the deadline to object to any Claim shall not be deemed an amendment to the Plan.  Notwithstanding the foregoing, there shall be no deadline for the Reorganized Debtor to object to Class 4A or Class 6A Claims.

10.3    **DETERMINATION OF CLAIMS**. From and after the Effective Date, any Claim that is not a Tort Claim, and as to which a Proof of Claim or motion or request for payment was timely filed in this Chapter 11 case, or deemed timely filed by order of the Bankruptcy Court, may be determined and (so long as such determination has not been stayed, reversed, or amended, as to which determination (or any revision, modification, or amendment thereof) the time to appeal or seek review or rehearing has expired, (and as to which no appeal or petition for review or rehearing was filed or, if filed, remains pending)), liquidated pursuant to: (i) an order of the Bankruptcy Court; (ii) applicable bankruptcy law; (iii) agreement of the parties without the need for Bankruptcy Court approval; (iv) applicable non-bankruptcy law; or (v) the lack of (a) an objection to such Claim, (b) an application to equitably subordinate such Claim, and (c) an application to otherwise limit recovery with respect to such Claim, filed by the Diocese, the Reorganized Debtor, or any other party in interest on or prior to any applicable deadline for filing such objection or application with respect to such Claim. Any such Claim so determined and liquidated shall be deemed to be an allowed Claim for such liquidated amount and shall be satisfied in accordance with the Plan. Nothing contained in this Section shall constitute or be deemed a waiver of any Claims, rights, Interests, or Causes of Action that the Debtor or the Reorganized Debtor may have against any Person in connection with or arising out of any Claim or Claims, including any rights under 28 U.S.C. § 157.

10.4    **NO DISTRIBUTIONS PENDING ALLOWANCE**. No payments or distributions will be made with respect to a Disputed Claim, or any portion thereof, unless and until all objections to such Disputed Claim have been settled or withdrawn or have been determined by an order which has become a Non-Appealable Order, and the Disputed Claim has become an allowed Claim.

10.5    **CLAIM ESTIMATION**. To effectuate distributions pursuant to the Plan and avoid undue delay in the administration of the Chapter 11 case, with respect to Disputed Claims, the Diocese (if prior to the Effective Date) and the Reorganized Debtor (on and after the Effective Date), after notice and a hearing (which notice may be limited to the holder of such Disputed Claim), shall have the right to seek an order of the Bankruptcy Court or the District Court, pursuant to Section 502(c) of the Bankruptcy Code, estimating or limiting the amount of: (i) property that must be withheld from or reserved for distribution purposes on account of such Disputed Claim(s), (ii) such Claim for allowance or disallowance purposes, or (iii) such Claim for any other purpose permitted under the Bankruptcy Code; provided, however, that the Bankruptcy Court or the District Court, as applicable, shall determine: (y) whether such Claims are subject to estimation pursuant to Section 502(c) of the Bankruptcy Code, and (z) the timing and procedures for such estimation proceedings, if any, such matters being beyond the scope of the Plan.

- 50 -

## ARTICLE XI
## DISTRIBUTIONS UNDER THE PLAN

**11.1    PAYMENT DATE**. Whenever any payment or distribution to be made under the Plan shall be due on a day other than a business day, such payment or distribution shall instead be made, without interest, on the immediately following business day.

**11.2    UNDELIVERABLE DISTRIBUTIONS**. If payment or distribution to the holder of an allowed non-Tort Claim under the Plan is returned for lack of a current address for the holder or otherwise, the Reorganized Debtor shall file with the Bankruptcy Court the name, if known, and last known address of the holder and the reason for its inability to make payment. All allowed Claims paid as provided in this Section shall be deemed addressed to the same extent as if payment or distribution had been made to the holder of the allowed Claim with no recourse to the Reorganized Debtor or property of the Reorganized Debtor. If, after the passage of six (6) months, the payment or distribution still cannot be made, the Reorganized Debtor shall make the payment to the Trust. All allowed Claims paid as provided in this Section shall be deemed satisfied and released, with no recourse to the Reorganized Debtor or property of the Reorganized Debtor upon payment to the Trust, to the same extent as if payment or distribution has been made to the holder of the allowed Claim.

**11.3    SETOFFS**. The Reorganized Debtor or the Trustee, as applicable, may, to the extent permitted under applicable law, set off against any allowed Claim and the distributions to be made pursuant to the Plan on account of such allowed Claim, the Claims, rights and Causes of Action of any nature that the Reorganized Debtor or the Trustee, as applicable, may hold against the holder of such allowed Claim that are not otherwise waived, released or compromised in accordance with the Plan; provided, however, that neither such a setoff nor the allowance of any Claim hereunder shall constitute a waiver or release by the Reorganized Debtor or the Trustee, as applicable, of any such Claims, rights, and Causes of Action that the Reorganized Debtor or the Trustee, as applicable, possesses against such holder.

**11.4    NO INTEREST ON CLAIMS**. Unless otherwise specifically provided for in the Plan, the Confirmation Order, or a post-petition agreement in writing between a claimant and the Diocese, the Reorganized Debtor, or the Trust, and approved by an order of the Bankruptcy Court, postpetition interest shall not accrue or be paid on any Claim, and claimants shall not be entitled to interest accruing on or after the Petition Date on any Claim. In addition, and without limiting the foregoing or any other provision of the Plan, Confirmation Order, or Trust Agreement, interest shall not accrue on or be paid on any Disputed Claim in respect of the period from the Effective Date to the date a final distribution is made when and if such Disputed Claim becomes an allowed Claim.

**11.5    WITHHOLDING TAXES**. The Reorganized Debtor and the Trust shall comply with all withholding and reporting requirements imposed by any federal, state, local, or foreign taxing authority, and all distributions hereunder shall be subject to any such withholding and reporting requirements. As a condition to making any distribution under the Plan, the Reorganized Debtor and the Trust may require that the holder of an allowed Claim provide such holder's taxpayer identification number and such other information and certification as may be deemed necessary to comply with applicable tax reporting and withholding laws.

- 51 -

## ARTICLE XII
## EFFECTIVENESS OF THE PLAN

**12.1    CONDITIONS TO OCCURRENCE OF EFFECTIVE DATE**. The Plan shall not become effective unless and until each of the following conditions shall have been satisfied in full in accordance with the provisions specified below:

(a)    **Entry of Confirmation Order**. The Confirmation Order has become a Non-Appealable Order;

(b)    **Plan Documents.** All Schedules and Exhibits to the Plan shall have been duly completed by the Plan Proponents and filed with the Court and all agreements and releases referred to in the Plan shall have been duly executed by all parties thereto and filed with the Court, in each case in form and substance satisfactory to the Debtor, the Committee, and the Settling Insurers.

(c)    **The Trust**. The Trust shall have been formed; and

(d)    **Plan Payment**. The payments set forth in Subsections 5.1(b)(2)(i)(a) and 5.1(b)(2)(ii) shall have been received by the Trust.

**12.2    NOTICE OF EFFECTIVE DATE**. The Plan Proponents shall file a Notice of Effective Date with the Bankruptcy Court within three (3) days after the occurrence of the Effective Date. Such notice will include all relevant deadlines put into effect by the occurrence of the Effective Date.

**12.3    EFFECT OF NON-OCCURRENCE OF CONDITIONS**. If substantial consummation of the Plan does not occur, the Plan will be null and void in all respects and nothing contained in the Plan or the disclosure statement will: (i) constitute a waiver or release of any Claims by or against the Protected Parties or the Settling Insurers; (ii) prejudice in any manner the rights of the Protected Parties, the Trust or the Settling Insurers; or (iii) constitute an admission, acknowledgement, offer, or undertaking by the Protected Parties or the Settling Insurers in any respect, including but not limited to, in any proceeding or case against the Debtor; or (iv) be admissible in any action, proceeding or case against the Protected Parties or Settling Insurers in any court or other forum.

## ARTICLE XIII
## EFFECTS OF CONFIRMATION

**13.1    DISSOLUTION OF UCC**. On the Effective Date, the UCC shall dissolve automatically, whereupon their members, Professionals and agents shall be released from any further duties and responsibilities in this Chapter 11 case and under the Bankruptcy Code, except that such parties shall continue to be bound by any obligations arising under confidentiality agreements, joint defense/common interest agreements (whether formal or informal), and protective orders entered during this Chapter 11 case, including any orders regarding confidentiality issued by the Bankruptcy Court or mediators, which shall remain in full force and effect according to their terms, provided that such parties shall continue to have a right to be heard with respect to any and all applications for Professional Claims.

- 52 -

**13.2    DISCHARGE AND INJUNCTION**.

Except as otherwise expressly provided in the Plan or in the Confirmation Order, on the Effective Date, the Diocese will be discharged from, and its liability will be extinguished completely in respect to, any Claim and debt, whether reduced to judgment or not, liquidated or unliquidated, contingent or noncontingent, asserted or unasserted, fixed or not, matured or unmatured, disputed or undisputed, legal or equitable, known or future, based on conduct occurring before the Confirmation Date, including, without limitation, all interest, if any, on any such Claims and debts, whether such interest accrued before or after the Petition Date, and including all Claims and debts of the kind specified in Bankruptcy Code Sections 502(g), 502(h), and 502(i), whether or not a Proof of Claim is filed or is deemed filed under the Bankruptcy Code Section 501, such Claim is allowed under Bankruptcy Code Section 502, or the holder of such Claim has accepted the Plan.

Tort Claimants and the Trust shall be permitted to name the Diocese in any proceeding to resolve whether the Diocese has liability for Tort Claims and the amount of any such liability, solely for the purpose of obtaining insurance coverage from Non-Settling Insurers. The discharge hereunder shall not limit in any way the obligations of Non-Settling Insurers to defend and pay the Diocese's liability for Tort Claims under Non-Settling Insurer Policies.

**13.3    CHANNELING    INJUNCTION**.    **Channeling    Injunction    Preventing Prosecution of Channeled Claims Against Protected Parties and Settling Insurers.**

**(a)    In consideration of the undertakings of the Protected Parties and Settling Insurers under the Plan, their contributions to the Trust, and other consideration, and pursuant to their respective settlements with the Debtor and to further preserve and promote the agreements between and among the Protected Parties and any Settling Insurers, and pursuant to Section 105 of the Bankruptcy Code:**

**1.    any and all Channeled Claims are channeled into the Trust and shall be treated, administered, determined, and resolved under the procedures and protocols and in the amounts as established under the Plan and the Trust Agreement as the sole and exclusive remedy for all holders of Channeled Claims; and**

**2.    all Persons who have held or asserted, hold or assert, or may in the future hold or assert any Channeled Claims are hereby permanently stayed, enjoined, barred and restrained from taking any action, directly or indirectly, for the purposes of asserting, enforcing, or attempting to assert or enforce any Channeled Claim against the Protected Parties or Settling Insurers, including:**

**(i)    commencing or continuing in any manner any action or other proceeding of any kind with respect to any Channeled Claim against any of the Protected Parties or Settling Insurers or against the property of any of the Protected Parties or Settling Insurers;**

- 53 -

(ii)    **enforcing, attaching, collecting or recovering, by any manner or means, from any of the Protected Parties or Settling Insurers, or the property of any of the Protected Parties or Settling Insurers, any judgment, award, decree, or order with respect to any Channeled Claim against any of the Protected Parties, Settling Insurers, or any other Person;**

(iii)   **creating, perfecting or enforcing any lien of any kind relating to any Channeled Claim against any of the Protected Parties or the Settling Insurers, or the property of the Protected Parties or the Settling Insurers;**

(iv)    **asserting, implementing or effectuating any Channeled Claim of any kind against:**

1.      **any obligation due any of the Protected Parties or Settling Insurers;**

2.      **any of the Protected Parties or Settling Insurers; or**

3.      **the property of any of the Protected Parties or Settling Insurers.**

(v)     **taking any act, in any manner, in any place whatsoever, that does not conform to, or comply with, the provisions of the Plan; and**

(vi)    **asserting or accomplishing any setoff, right of indemnity, subrogation, contribution, or recoupment of any kind against an obligation due to any of the Protected Parties, the Settling Insurers, or the property of any of the Protected Parties or the Settling Insurers.**

**Notwithstanding anything to the contrary in this Article or the Plan, Tort Claimants and the Trust shall be permitted to name the Diocese and any other Protected Party in any proceeding to resolve whether the Diocese or such other Protected Party has liability for a Tort Claim, and the amount of any such liability, for the purpose of obtaining insurance coverage from Non-Settling Insurers under the Non-Settling Insurer Policies.**

**The Channeling Injunction is an integral part of the Plan and is essential to the Plan's consummation and implementation.  It is intended that the channeling of the Channeled Claims as provided in this Section 13.3 shall inure to the benefit of the Protected Parties and Settling Insurers. In a successful action to enforce the injunctive provisions of this Section in response to a willful violation thereof, the moving party may seek an award of costs (including reasonable attorneys' fees) against the non-moving party, and such other legal or equitable remedies as are just and proper, after notice and a hearing.**

- 54 -

**13.4     EXCULPATION; LIMITATION OF LIABILITY.   From and after the Effective Date, none of the Exculpated Parties shall have or incur any liability for, and each Exculpated Party shall be released from, any Claim, Cause of Action or liability to any other Exculpated Party, to any holder of a Claim, or to any other party in interest, for any act or omission that occurred during and in connection with this Chapter 11 case or in connection with the preparation and filing of this Chapter 11 case, the formulation, negotiation, or pursuit of confirmation of the Plan, the consummation of the Plan, and the administration of the Plan or the property to be distributed under the Plan, except for Claims, Causes of Action or liabilities arising from the gross negligence, willful misconduct, fraud, or breach of the fiduciary duty of loyalty of any Exculpated Party, in each case subject to determination of such by Non-Appealable Order of a court of competent jurisdiction and provided that any Exculpated Party shall be entitled to reasonably rely upon the advice of counsel with respect to its duties and responsibilities (if any) under the Plan. Without limiting the generality of the foregoing, the UCC and the Diocese and their respective officers, board and committee members, employees, attorneys, financial advisors, and other Professionals shall be entitled to and granted the benefits of Section 1125(e) of the Bankruptcy Code and the Channeling Injunction.**

**13.5     TIMING**. The injunctions, releases, and discharges to which any Settling Insurer is entitled pursuant to such Insurance Settlement Agreement, the Plan, the Confirmation Order, the Approval Orders, and the Bankruptcy Code shall only become effective when the Trust receives payment in full from the corresponding Settling Insurer pursuant to the terms of such Settling Insurer's Insurance Settlement Agreement, and the other provisions set forth in Section 12.1 are fully met.

**13.6     NO BAR ON CERTAIN CLAIMS**. Notwithstanding the foregoing, nothing in this Plan shall be construed to bar either (a) a Claim based on Abuse against a Person who is not a Protected Party or a Settling Insurer or (b) a Claim by such Person for insurance coverage in connection with a Claim described in the foregoing clause under an insurance policy other than the Settling Insurer Policies.

**ARTICLE XIV
INCORPORATION OF CHILD PROTECTION PROTOCOLS**

**14.1     CHILD PROTECTION PROTOCOLS**. The Child Protection Protocols are incorporated into the Plan.

**ARTICLE XV
THE REORGANIZED DEBTOR**

**15.1     CONTINUED CORPORATE EXISTENCE**. The Diocese will, as the Reorganized Debtor, continue to exist after the Effective Date as a separate entity in accordance with Minn. Stat. Section 315.16 having tax-exempt status under 26 U.S.C. § 501(c)(3) under applicable law and without prejudice to any right to alter or terminate such existence under applicable state law, except as such rights may be limited and conditioned by the Plan and the documents and instruments executed and delivered in connection therewith.

- 55 -

**15.2    VESTING OF ASSETS**. In accordance with Sections 1141 and 1123(a)(5) of the Bankruptcy Code, and except as otherwise provided in the Plan or the Confirmation Order, the Reorganization Assets shall vest in the Reorganized Debtor (or such other entity or entities specified by the Debtor in a Supplemental Plan Document, and subject to approval by the Bankruptcy Court at the confirmation hearing) on the Effective Date free and clear of all liens, Claims, and Interests of creditors, including successor liability Claims. On and after the Effective Date, the Reorganized Debtor may operate and manage its affairs and may use, acquire, and dispose of property without notice to any Person, and without supervision or approval by the Bankruptcy Court and free of any restrictions imposed by the Bankruptcy Code, Bankruptcy Rules, or the Bankruptcy Court, other than those restrictions expressly imposed by the Plan and the Confirmation Order. The Reorganized Debtor is expressly authorized, as of the Effective Date, to transfer legal title to the Inadvertently Titled Real Property to the respective equitable title owners of such properties without further order of the Bankruptcy Court.

**15.3    IDENTITY OF OFFICERS OF REORGANIZED DEBTOR**. In accordance with § 1129(a)(5) of the Bankruptcy Code, the identities and affiliations of the Persons proposed to serve as the corporate Members of the Reorganized Debtor and the persons proposed to serve as directors and officers of the Reorganized Debtor on and after the Effective Date are set forth on Exhibit J.

**15.4    FURTHER AUTHORIZATION**. The Reorganized Debtor shall be entitled to seek such orders, judgments, injunctions, rulings, and other assistance as it deems necessary to carry out the intentions and purposes, and to give full effect to the provisions, of the Plan.

**ARTICLE XVI**
**MISCELLANEOUS PROVISIONS**

**16.1    RETENTION OF JURISDICTION**.

(a)      By the Bankruptcy Court. Pursuant to Sections 105, 1123(a)(5), and 1142(b) of the Bankruptcy Code, and 28 U.S.C. Sections 1334 and 157, on and after the Effective Date, the Bankruptcy Court shall retain: (i) original and exclusive jurisdiction over this Chapter 11 case, (ii) original, but not exclusive, jurisdiction to hear and determine all core proceedings arising under the Bankruptcy Code or arising in this Chapter 11 case, and (iii) original, but not exclusive, jurisdiction to hear and make proposed findings of fact and conclusions of law in any non-core proceedings related to this Chapter 11 case and the Plan, including matters concerning the interpretation, implementation, consummation, execution, or administration of the Plan. Subject to, but without limiting the generality of the foregoing, the Bankruptcy Court's post-Effective Date jurisdiction shall include jurisdiction:

1.   over disputes concerning the ownership of Claims;

2.   over disputes concerning the distribution or retention of assets under the Plan;

3.   over objections to Claims, motions to allow late-filed Claims, and motions to estimate Claims;

- 56 -

4.  over proceedings to determine the extent, validity, or priority of any Lien asserted against property of the Diocese, the Estate, or Trust, or property abandoned or transferred by the Diocese, the Estate, or the Trust;

5.  over motions to approve Insurance Settlement Agreements entered into after the Effective Date by the Trustee;

6.  over matters related to the assets of the Estate or of the Trust, including the terms of the Trust, or the recovery, liquidation, or abandonment of Trust Assets;

7.  the removal of the Trustee and the appointment of a successor Trustee;

8.  over matters relating to the subordination of Claims;

9.  to enter and implement such orders as may be necessary or appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified or vacated;

10. to consider and approve modifications of or amendments to the Plan, to cure any defects or omissions or to reconcile any inconsistencies in any order of the Bankruptcy Court, including the Confirmation Order;

11. to issue orders in aid of execution, implementation, or consummation of the Plan, including the issuance of orders enforcing any and all releases and injunctions issued under or pursuant to this Plan and any Insurance Settlement Agreement;

12. over disputes arising from or relating to the Plan, the Confirmation Order, or any agreements, documents, or instruments executed in connection therewith;

13. over requests for allowance of payment of Claims entitled to priority under Sections 507(a)(2) and 503(b)(9) of the Bankruptcy Code and any objections thereto;

14. over all Fee Applications;

15. over matters concerning state, local, or federal taxes in accordance with Sections 346, 505, and 1146 of the Bankruptcy Code;

16. over conflicts and disputes among the Trust, the Reorganized Debtor, and holders of Claims, including holders of Class 3, Class 4A or Class 4B Claims;

17. over disputes concerning the existence, nature, or scope of the Diocese's discharge, including any dispute relating to any liability arising out of the termination of employment or the termination of any employee or retiree benefit program, regardless of whether such termination occurred prior to or after the Effective Date;

- 57 -

18. to issue injunctions, provide declaratory relief, or grant such other legal or equitable relief as may be necessary or appropriate to restrain interference with the Plan, the Diocese or its property, the Reorganized Debtor or its property, the Estate or its property, the Trust or its property, Trustee, the Professionals, or the Confirmation Order;

19. to enter a Final Decree closing the Chapter 11 case;

20. to enforce all orders previously entered by the Bankruptcy Court; and

21. over any and all other suits, adversary proceedings, motions, applications, and contested matters that may be commenced or maintained pursuant to this Chapter 11 case or the Plan, including, but not limited to, disputes arising out of or related to the Transferred Insurance Interests or the rights and obligations of the Non-Settling Insurers on and after the Effective Date.

**(b)**     By the District Court. Pursuant to Sections 105, 1123(a)(5), and 1142(b) of the Bankruptcy Code, and 28 U.S.C. Section 1334, on and after the Effective Date, the District Court shall retain original, but not exclusive, jurisdiction to hear and determine all matters arising under the Bankruptcy Code or arising in or related to this Chapter 11 case.

**(c)**     Actions to Collect Amounts Owed Pursuant to the Plan. Notwithstanding anything to the contrary in this Section, the Diocese, the Reorganized Debtor and the Trustee may, but are not required to, commence an adversary proceeding to collect amounts owed pursuant to the Plan for any settlements embodied in the Plan or later approved by the Bankruptcy Court, which are not paid in accordance with this Plan. Any such action may be commenced by filing a motion in aid of confirmation with the Bankruptcy Court.

**(d)**     Case Closure. The existence and continued operation of the Trust shall not prevent the Bankruptcy Court from closing this Chapter 11 case. In an action involving the Trust, any costs incurred in reopening the Chapter 11 case, including any statutory fees will be paid by the Trustee from the Trust Assets in accordance with an order of the Bankruptcy Court.

**16.2    ASSUMPTION OF EXECUTORY CONTRACTS**. On the Effective Date, except for any executory contract: (i) that was previously rejected by an order of the Bankruptcy Court or otherwise pursuant to Section 365 of the Bankruptcy Code; or (ii) that is subject to a pending motion to reject before the Bankruptcy Court, and except as otherwise provided in the Plan, Confirmation Order, or Insurance Settlement Agreements, each executory contract entered into by the Debtor prior to the Petition Date that has not previously expired or terminated pursuant to its own terms, shall be assumed pursuant to Sections 365 and 1123 of the Bankruptcy Code, effective as of the Confirmation Date with no cure amount due. The Confirmation Order shall constitute an order of the Bankruptcy Court approving such assumption pursuant to Sections 365 and 1123 of the Bankruptcy Code as of the Effective Date.

**16.3    INDEMNIFICATION OF MEMBERS, MANAGERS, OFFICERS, AND EMPLOYEES**. The obligation of the Diocese to indemnify any individual serving at any time on or prior to the Effective Date, as one of its officers, employees, council members, or volunteers by

- 58 -

reason of such individual's service in such capacity, to the extent provided in any of the Diocese's constituent documents or by a written agreement with the Debtor or under the laws of the State of Minnesota pertaining to the Diocese, will be deemed and treated as executory contracts that are assumed by the Reorganized Debtor, pursuant to the Plan and Bankruptcy Code Section 365 as of the Effective Date, with no cure amount due. Notwithstanding the foregoing, under no circumstances will the Diocese, the Trust, or the Reorganized Debtor assume or be responsible for any alleged indemnification of any Person against whom the Diocese has determined or may, in the future, determine, that there are credible allegations of Abuse asserted against such Person or such Person has or may have engaged in some other conduct that would excuse the Reorganized Debtor from providing any indemnification to such Person.

**16.4    DEFENSE AND INDEMNITY FOR COVERED NON-TORT CLAIMS**. After the Effective Date, the Reorganized Debtor will defend and indemnify any Protected Party with respect to any Covered Non-Tort Claim and, if so required by any Insurance Settlement Agreements, will defend and indemnify the Settling Insurers with respect to any Covered Non-Tort Claims.  As to any Claim against the Trust that qualifies as a Covered Non-Tort Claim, the Reorganized Debtor will also undertake on behalf of the Trust the enforcement of the injunctions set forth in Articles VII and XIII, will defend the Covered Non-Tort Claim, and, if judgment is entered on such Claim, will indemnify the Trust for any liability for such Claim.  The Reorganized Debtor may not seek insurance coverage for the Claims defended or indemnified under this Section from the Settling Insurers under any Settling Insurer Policy. Nothing in this provision or any other Plan provision is intended to suggest that any Person is entitled to obtain a judgment on a Covered Non-Tort Claim or Channeled Claim, that such judgment would be covered under any Settling Insurer Policy, or that any Person is entitled to seek coverage for such judgment against any Protected Party or Settling Insurer in violation of the discharge, Channeling Injunction, or Supplemental Settling Insurer Injunction, as applicable. For the avoidance of doubt, nothing contained in this Section or the Plan is intended to provide, expand, modify or add coverage for the Diocese or any other Protected Party under any Settling Insurer Policy to cover the Diocese's indemnification of any Covered Non-Tort Claims.

**16.5    RESERVATION OF RIGHTS**. In accordance with the provisions of this Plan, the Diocese reserves the right to sell property of the Estate or compromise Causes of Action on behalf of the Estate at any time prior to the Effective Date, subject to Bankruptcy Court approval. Notice of any such sale or compromise sought as part of the Plan shall be filed as a Supplemental Plan Document, and approval of such sale or settlement shall be considered at the confirmation hearing or as soon thereafter as is practicable.

**16.6    NON-APPEALABLE ORDER**. Except as otherwise expressly provided in the Plan, any requirement in the Plan for a Non-Appealable Order may be jointly waived by the Plan Proponents upon written notice to the Bankruptcy Court provided that Plan Proponents first obtain the consent of all Diocesan Settling Insurers.

**16.7    AMENDMENTS AND MODIFICATIONS**. The Plan Proponents may jointly modify the Plan at any time prior to the confirmation hearing in accordance with Section 1127(a) of the Bankruptcy Code. After the Confirmation Date and prior to substantial consummation, the Plan Proponents may jointly modify the Plan in accordance with Section 1127(b) of the Bankruptcy Code by filing a motion on notice as required under the applicable Bankruptcy Rules,

- 59 -

and the solicitation of all creditors and other parties in interest shall not be required unless directed by the Bankruptcy Court. Notwithstanding any provision of this Plan to the contrary, the provisions of Article VII and Sections 13.2 through 13.4 are intended to be an integrated set of provisions that implement and supplement the Insurance Settlement Agreements that may not be severed, waived, amended, deleted, or otherwise modified without the prior written approval of all of the Settling Insurers affected by such severance, waiver, amendment, deletion, or modification.

**16.8    U.S. TRUSTEE REPORTS**. From the Effective Date until the case is closed, the Reorganized Debtor shall, within thirty (30) days of the end of each fiscal quarter, file with the Bankruptcy Court and submit to the U.S. Trustee, quarterly reports setting forth all receipts and disbursements as required by the U.S. Trustee guidelines. The Reorganized Debtor will not be required to file monthly operating reports or provide copies of bank account statements.

**16.9    NO WAIVER**. The failure of the Diocese to object to any Claim for purposes of voting shall not be deemed a waiver of the Diocese's, the Reorganized Debtor's, or the Trustee's right to object to such Claim, in whole or in part.

**16.10    TAX EXEMPTION**. Pursuant to Section 1146 of the Bankruptcy Code, the delivery or recording of an instrument of transfer on or after the Confirmation Date shall be deemed to be made pursuant to and under the Plan, including any such acts by the Diocese (if prior to the Effective Date), and the Reorganized Debtor (if on or after the Effective Date), including any subsequent transfers of property by the Reorganized Debtor, including without limitation the transfer by the Reorganized Debtor of title to the Inadvertently Titled Real Property as referenced in Section 15.2 above, and shall not be taxed under any law imposing a stamp tax, transfer tax, state deed tax, or similar tax or fee. Consistent with the foregoing, each recorder of deeds or similar official for any county, city, or governmental unit in which any instrument hereunder is to be recorded shall, pursuant to the Confirmation Order and the Plan, be ordered and directed to accept such instrument, without requiring the payment of any documentary stamp, tax, deed stamps, stamp tax, transfer tax, intangible tax, or similar tax.

**16.11    NON-SEVERABILITY**. Except as specifically provided herein, the terms of the Plan constitute interrelated compromises and are not severable, and no provision of the Plan may be stricken, altered, or invalidated, except by amendment of the Plan by the Plan Proponents.

**16.12    REVOCATION**. The Plan Proponents reserve the right to revoke and withdraw the Plan prior to the Confirmation Date.

**16.13    CONTROLLING DOCUMENTS**. In the event and to the extent that any provision of the Plan or Trust Agreement is inconsistent with any provision of the disclosure statement, the provisions of the Plan or Trust Agreement, as applicable, shall control and take precedence. In the event and to the extent that any provision of the Trust Agreement (other than provisions relating to the Trustee's authority to act) is inconsistent with any provision of this Plan, this Plan shall control and take precedence. In the event and to the extent that any provision of the Confirmation Order is inconsistent with any provision of the Plan or the Trust Agreement, the provisions of the Confirmation Order shall control and take precedence.

- 60 -

**16.14   GOVERNING LAW**. Except to the extent a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and the Bankruptcy Rules), and unless specifically stated, the rights, duties, and obligations arising under the Plan, any agreements, documents, and instruments executed in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreements shall control) shall be governed by, and construed and enforced in accordance with, the laws of the State of Minnesota, without giving effect to conflicts of law principles.

**16.15   NOTICES**. Any notices or requests by parties in interest under or in connection with the Plan shall be in writing and served either by: (i) certified mail, return receipt requested, postage prepaid, (ii) hand delivery, or (iii) reputable overnight delivery service, all charges prepaid, and shall be deemed to have been given when received by the following parties:

If to the Diocese or the Reorganized Debtor:

Diocese of Winona-Rochester
c/o Andrew D. Brannon, COO/CFO
55 West Sanborn Street
Winona, MN 55987

with a copy to:

Restovich Braun & Associates
c/o Thomas R. Braun
117 East Center Street
Rochester, MN 55904

and

Bodman PLC
c/o Robert J. Diehl, Jr.
6th Floor at Ford Field
1901 St. Antoine Street
Detroit, MI 48226

If to the Trust or the Trustee:

[CONTACT INFORMATION]

**16.16   FILING OF ADDITIONAL DOCUMENTS**. At any time before substantial consummation, the Diocese, the Trust, or the Reorganized Debtor, as appropriate, may file with the Bankruptcy Court or execute, as appropriate, such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan, or otherwise to comply with applicable law.

CORE/3515029.0002/164850489.1
Bodman_17458003_4

**16.17  POWERS OF OFFICERS**. The officers of the Diocese or the Reorganized Debtor, as the case may be, shall have the power to enter into or execute any documents or agreements that they deem reasonable and appropriate to effectuate the terms of the Plan.

**16.18  DIRECTION TO A PARTY**. On and after the Effective Date, the Trust or the Reorganized Debtor, as applicable, may apply to the Bankruptcy Court for entry of an order directing any Person to execute or deliver or to join in the execution or delivery of any instrument or document reasonably necessary or reasonably appropriate to effect a transfer of properties dealt with by the Plan, and to perform any other act (including satisfaction of any lien or security interest) that is reasonably necessary or reasonably appropriate for the consummation of the Plan.

**16.19  SUCCESSORS AND ASSIGNS**. The Plan shall be binding upon and inure to the benefit of the Diocese and its successors and assigns, including the Reorganized Debtor. The rights, benefits, and obligations of any entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator successor, or assign of such entity.

**16.20  CERTAIN ACTIONS**. By reason of entry of the Confirmation Order, prior to, on or after the Effective Date (as appropriate), all matters provided for under the Plan that would otherwise require approval of the officers of the Diocese under the Plan, including: (a) the adoption, execution, delivery, and implementation of all contracts, leases, instruments, releases, and other agreements or documents related to the Plan, and (b) the adoption, execution, and implementation of other matters provided for under the Plan involving the Diocese or organizational structure of the Diocese shall be deemed to have occurred and shall be in effect prior to, on or after the Effective Date (as appropriate), pursuant to applicable non-bankruptcy law, without any requirement of further action by the officers of the Diocese.

**16.21  FINAL DECREE**. Once the Estate has been fully administered, as referred to in Bankruptcy Rule 3022, the Reorganized Debtor, Trustee or such other party as the Bankruptcy Court may designate in the Confirmation Order, shall file a motion with the Bankruptcy Court to obtain a Final Decree to close the Chapter 11 case.

**16.22  PLAN AS SETTLEMENT COMMUNICATION**. The Plan furnishes or offers or promises to furnish (or accepts or offers or promises to accept) valuable consideration in compromising or attempting to compromise Claims and Causes of Action that are Disputed as to validity or amount (including Tort Claims and the Insurance Litigation), except as otherwise provided above. Accordingly, the Plan, the disclosure statement, and any communications regarding the Plan or the disclosure statement are subject in all respects to Federal Rule of Evidence 408 and any comparable provision(s) of applicable state law precluding their use as evidence of liability for, or the validity or invalidity of, any Disputed Claim or Cause of Action. Nothing herein or in any confirmed Plan is intended to constitute a compromise of Tort Claims.

**16.23  OTHER RIGHTS**. Except as expressly set forth in this Plan, nothing in the Plan shall preclude any Person from asserting in any proceeding, or against any award or judgment entered in such proceeding, any and all rights that may be accorded under Minnesota law, or any other applicable statutory or common law, of contribution, indemnity, reduction, credit, or setoff, arising from the settlement and resolution of the Tort Claims.

- 62 -

**ARTICLE XVII**
**BANKRUPTCY RULE 9019 REQUEST**

Pursuant to Bankruptcy Rule 9019 and through the Plan, the Plan Proponents request approval of all compromises and settlements included in the Plan.

**ARTICLE XVIII**
**CONFIRMATION REQUEST**

The Plan Proponents request confirmation of the Plan under Section 1129 of the Bankruptcy Code with respect to any impaired class that does not accept the Plan or is deemed to reject the Plan.

CORE/3515029.0002/164850489.1
Bodman_17458003_4

[Signature page for Plan of Reorganization]

**THE DIOCESE OF WINONA-ROCHESTER**

Very Rev. William D. Thompson

**RESTOVICH BRAUN & ASSOCIATES**

/e/ Thomas R. Braun
Thomas R. Braun (#350631)
Christopher W. Coon (#390083)
117 East Center Street
Rochester, MN 55904
(507) 216-8652
thomas@restovichlaw.com
christopher@restovichlaw.com

and

**BODMAN PLC**

/e/ Robert J. Diehl, Jr.
Robert J. Diehl, Jr. (P31264)
Brian R. Trumbauer (P57747)
Jaimee L. Witten (P70068)
6th Floor at Ford Field
1901 St. Antoine Street
Detroit, Michigan 48226
(313) 259-7777
rdiehl@bodmanlaw.com
btrumbauer@bodmanlaw.com
jwitten@bodmanlaw.com

[Signature page for Plan of Reorganization]

Respectfully submitted,

**THE OFFICIAL COMMITTEE OF
UNSECURED CREDITORS**

 James W. Keenan  2/8/2021

By:
Its: Chairperson

and

/e/ Robert T. Kugler
**STINSON, LLP**
Robert T. Kugler (#194116)
Edwin H. Caldie (#388930)
Andrew J. Glasnovich (#398366)
50 South Sixth Street, Suite 2600
Minneapolis, MN 55402
robert.kugler@stinson.com
ed.caldie@stinson.com
drew.glasnovich@stinson.com

Telephone: 612-335-1500
Facsimile: 612-335-1657

**ATTORNEYS FOR THE OFFICIAL
COMMITTEE OF UNSECURED CREDITORS
FOR THE DIOCESE OF WINONA-
ROCHESTER**

**EXHIBIT B**

**<u>Non-Settling Insurers</u>**

21st Century Centennial Insurance Company (f/k/a Colonial Penn Insurance Company)

CX Reinsurance Company Ltd.

Northwestern National Insurance Company of Milwaukee, Wisconsin

Stronghold Insurance Co. Ltd.

United States Fire Insurance Company

**EXHIBIT G**

**Inadvertently Titled Real Property**

St. Thomas Moore Student Parish
1502 Warren Street
Mankato, Minnesota 56001
Blue Earth County
Parcel #: R01.09.19.277.003

St. Casimir's Cemetery - Wells
SW corner of 1st St. NW and Half Moon Rd.
Wells, MN 56097
Faribault County
Parcel #: 300081130, 300080140, 300080150

St. Mary's Cemetery - Geneva
W. end of Twp. Rd. No. T-269A
Ellendale, MN 56026
Freeborn County
Parcel #: 160190030

Agricultural parcel on east side of street
St. Mary's Geneva
Ellendale, MN 56026
Freeborn County
Parcel #: 160180060, 169180010

St. Patrick Cemetery
east of Kubitz Rd. on County Rd. 5
northwest of New Albin, IA
Houston County
Parcel #: 070174000

Cavalry Cemetery-Caledonia
West end of County Rd. 249 near S. Winnebago St.
Caledonia, MN 55921
Houston County
Parcel #: 211122000, 211127000

Sts. Peter & Paul Cemetery
22032 County Rd 18
Kellogg, MN 55945
Wabasha County
Parcel #: R06.00095.00

St. Joseph Cemetery
26185 627th St.
Theilman, MN 55945
Wabasha County
Parcel #: R16.00339.00, R16.00390.00, R16.00385.00

St. Joseph's Church (closed)
62683 261St. Ave.
Theilman, MN 55945
Wabasha County
Parcel #: R16.00375.03

Condominium
600 4th St. SW, #535
Rochester, MN 55902
Olmsted County
Parcel #: 64.02.21.064175

Holy Redeemer Cemetery
2451 110th Ave SE
Eyota, MN 55934
Olmsted County
Parcel #: 62.16.14.032722

Holy Spirit Parish (parsonage)
4916 Wild Grass Ln NW
Rochester, MN 55901
Olmsted County
Parcel #: 74.17.22.055483

St. Bernard Cemetery - Stewartville
460 10th St. NW
Stewartville, MN 55976
Olmsted County
Parcel #: 54.34.22.030559

Corpus Christi Church
9052 66th St. NW
Deerfield MN 55049
Steele County
Parcel #: 130083301

St. Joachim Cemetery
10th St. NW and 7th Ave. NW
Plainview, MN 55964
Wabasha County
Parcel #: R26.00003.00

St. Agnes Catholic Church
135 W. Belvidere
Kellogg, MN 55945
Wabasha County
Parcel #: R21.00017.00, R21.00018.03

All Saint's Church
307 1st St SW
New Richland, MN 56072
Waseca County
Parcel #: 157770180

Calvary Cemetery - Waseca
NE Corner of 336th Ave. & 128th St.
Waseca, MN 56093
Waseca County
Parcel #: 120301000

St. Mary's Cemetery - Preble
18441 455th Ave.
Preble Township, MN 55345
Fillmore County
Parcel #: 030265010

St. Kilian Cemetery - Wykoff
19675 County Rd. 117
Wykoff, MN 55990
Fillmore County
Parcel #: 290333010 (1/2 portion of parcel)

St. Nicholas Cemetery - Freeburg
N of residence located at 5588 County Rd. 249
approx. 6 miles E of Caledonia, MN
Houston County Parcel #: 040179000
(1/5 portion of parcel)

St. Patrick Cemetery - Ridgeway
S corner of County Rd. 8 and County Rd. 11
1.5 miles S of Ridgeway, MN
Winona County
Parcel #:100002120

Ss. Peter and Paul Cemetery - Hart
24898 Hartwood Dr.
appox. 5 miles N of Rushford, MN
Winona County
Parcel #:040000530